UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIRNA E. SERRANO, et al.,

                           Plaintiffs,

                                                                       CIVIL CASE NO. 04-40132

v.

                                                                        HONORABLE SEAN F. COX

CINTAS CORPORATION,                                U.S. DISTRICT COURT

                           Defendant.

*Consolidated for pre-trial proceedings with:*

BLANCA NELLY AVALOS, et al.,

                                                                        CIVIL CASE NO. 06-12311

                           Plaintiffs,

                                                                        HONORABLE SEAN F. COX
v.                                                                        U.S. DISTRICT COURT

CINTAS CORPORATION,

                           Defendant.
_____/

## **ORDER DENYING PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION**

Before the Court are two motions for class certification filed by the two sets of plaintiffs in the following companion cases which have been consolidated for pretrial purposes: *Serrano v. Cintas Corp.*, Case No. 04-40132, and *Avalos v. Cintas Corp.*, Case No. 06-12311. The parties have conducted extensive discovery and have fully briefed the issues before the Court. A hearing on the motions for class certification was held on February 5, 2009, and continued on February 6, 2009. For the reasons set out below, the Court denies the two motions for class certification.

**I.      Background**

The plaintiffs in both of the above-captioned cases have brought discrimination suits against

Defendant Cintas Corporation ("Cintas"), alleging class-wide violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. In the *Serrano* case, the putative plaintiff class consists of all women who unsuccessfully applied for a position as a Service Sales Representative ("SSR") with Cintas's Rental and First Aid & Safety Divisions at any time on or after June 12, 1999, at any Cintas facility located in Michigan. In the *Avalos* case, the putative plaintiff class consists of all women and all African-American or Hispanic persons who unsuccessfully applied for a SSR position with Cintas's Rental Division at any time on or after January 20, 2002, at any Cintas location nationwide. Though the putative classes contain different class members, the nature of the allegations brought by the plaintiffs against Cintas are essentially identical. For purposes of this Order, the Court will treat both sets of plaintiffs together (collectively known as "Plaintiffs"). In addition, the analysis for class certification based on gender is similar to that of class certification based on race; accordingly, the Court will treat both requests for class certification together.

Cintas is a national company that provides uniforms and supplies for various businesses. It operates several hundred facilities across the country. These facilities operate in essentially the same manner with the same governing structure, employing SSRs as entry-level sales and customer service representatives. The SSR position has a broad range of duties and responsibilities, including selling, delivering, and replenishing products to Cintas's clients. In each facility, SSRs are supervised by Service Managers, who in turn report to the General Manager controlling the operations of each facility. In addition to a common corporate structure, Cintas uses common orientation manuals and policy statements throughout its facilities. Cintas has standard courses and training sessions for managers and SSRs. What is particularly relevant to Plaintiffs' allegations is the fact that Cintas has a standard system for hiring SSRs. This hiring process includes an initial screening of the

application, a series of interviews, a route ride with another SSR, standardized tests, an exchange of information among hiring managers, and a final hiring decision made by the General Manager of the Cintas facility. The hiring process has both objective and subjective components; some of the criteria considered in hiring are objective or "must have" considerations such as having a GED or high school diploma, while other criteria are subjective or "preferred" considerations such as having previous sales experience.

Plaintiffs allege that they unsuccessfully applied for the SSR position and that they suffered discrimination on the basis of their gender and race when Cintas failed to hire them. Much of Plaintiffs' case for discrimination rests on a statistical analysis of the percentage of women and racial minorities in the available labor market from which SSRs are hired. Plaintiffs claim that women and racial minorities were hired at levels significantly below reasonable measures of availability and that this underhiring has been consistent at hundreds of Cintas locations across the country. Plaintiffs argue that this dearth of minority hiring is a result of Cintas's highly subjective hiring process and Cintas's common corporate culture, which perpetuates a belief that a white male is the best candidate for the SSR job position. Accordingly, Plaintiffs argue that there is a nationwide practice of discrimination against women and racial minorities in SSR hiring and that class action relief is merited. Plaintiffs allege both disparate impact and disparate treatment theories of liability, and seek, among other things, injunctive and declaratory relief, back pay and front pay, nominal compensatory damages, and punitive damages.

## II. Motions to Strike

As a preliminary matter and before addressing the issue of class certification, the Court considers the following motions to strike filed by the parties: (1) Cintas's motion to strike the expert

report prepared by Dr. Barbara Reskin as being inadmissible under Federal Rule of Evidence 702 and the *Daubert* analysis; (2) Cintas's motion to strike certain portions of declarations submitted by various individual plaintiffs; and (3) Plaintiffs' motion to strike certain portions of declarations submitted by various Cintas employees. These motions attempt to limit the evidence that the Court can consider in determining whether class certification is warranted.

The expert report at issue in Cintas's first motion to strike is a report prepared by Plaintiffs' expert sociologist, Dr. Barbara Reskin. The expert report purports to show that the discretion and subjectivity inherent in Cintas's hiring methods permits Cintas's managers to be influenced by a culture of stereotyping, and accordingly, leads the managers to make biased and discriminatory hiring decisions. Cintas argues that the expert report fails a *Daubert* analysis and should be stricken.

Currently, this case is at the class certification stage. A *Daubert* analysis at this stage of litigation is unnecessary. *See Bacon v. Honda of Am. Mfg.*, 205 F.R.D. 466, 470 (S.D. Ohio 2001) (hereinafter *Bacon I*) ("Courts have declined to engage in a *Daubert* analysis at the class certification stage of the action on the ground that an inquiry into the admissibility of the proposed expert testimony under *Daubert* would be an inappropriate consideration of the merits of the plaintiff's claims.") (citations omitted). The expert report has been offered as evidence supporting class certification, and as such, the Court will carefully consider this evidence and will give it as much weight as is appropriate under the circumstances. *See id.* at 470-71; *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323 (3d Cir. 2008). Accordingly, the Court denies the motion to strike the expert report.

In the other two motions to strike, both Plaintiffs and Cintas request that the Court strike certain portions of the declarations, arguing that the declarations are inadmissible under the Federal

4

Rules of Evidence. Just as with the motion to strike the expert report, the Court denies the motions to strike portions of the declarations. At this stage of litigation, the Court should consider all the evidence presented in support of and in opposition to class certification, and grant to the evidence the weight that the Court finds is most appropriate. *See Bacon I*, 205 F.R.D. at 469-70.

In so ruling, the Court makes no determination regarding the future admissibility of the expert report or of the declarations at trial. *See, e.g.*, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 324 ("A court's determination that an expert's opinion is persuasive or unpersuasive on a Rule 23 requirement does not preclude a different view at the merits stage of the case."). The parties are permitted to file renewed motions to strike at a later date, if they so desire. *See, e.g.*, *Bacon I*, 205 F.R.D. at 469-71.

### III. Motions for Class Certification

#### A. Legal Standard

Federal Rule of Civil Procedure 23 governs the granting of class certification:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
    (1) the class is so numerous that joinder of all members is impracticable;
    (2) there are questions of law or fact common to the class;
    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
    (1) prosecuting separate actions by or against individual class members would create a risk of:
        (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
        (B) adjudications with respect to individual class members that, as a

practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23. "The party seeking the class certification bears the burden of proof." *In re American Medical Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Accordingly, Plaintiffs have the burden of first showing that all the prerequisites in subsection (a) of Rule 23 are satisfied. Once the Rule 23(a) prerequisites are established, Plaintiffs must then show that one of the three subsections of Rule 23(b) is also met. *Id.* "[A] district court may not certify any class without 'rigorous analysis' of the requirements of Rule 23." *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998) (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).

**B.     Rule 23(a) Analysis**

**1.     Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs note that the proposed class would contain thousands of members. Cintas does not dispute this and concedes that Plaintiffs have satisfied the first element of numerosity.

6

**2.    Commonality**

To satisfy commonality, the second element of Rule 23(a), Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs argue that commonality is satisfied because Cintas has a common set of hiring policies and procedures leading to the discrimination of women and racial minorities. Plaintiffs note that Cintas's business is structured in a common manner throughout all of Cintas's facilities nationwide, that the job descriptions and job functions of the SSR position are standardized, and that Cintas uses common hiring practices. Plaintiffs argue that Cintas managers have broad discretion in hiring and that there is a strong corporate culture common to all Cintas locations that perpetuates the image of a white male as being the ideal candidate for the SSR position. Plaintiffs allege that the broad hiring discretion and corporate culture leads to biases and stereotypes in hiring, resulting in favoring white males over women and racial minorities. In support, Plaintiffs base much of their case on a statistical analysis that purportedly shows that women and racial minorities are underhired as SSRs at Cintas facilities nationwide. Consequently, Plaintiffs argue that there is a pattern of discrimination across all of Cintas's facilities and that there are common questions of law and fact appropriate for class certification.

In opposition, Cintas contends that commonality is not satisfied. Cintas argues that the hiring decisions for SSR positions are made by thousands of individual facility-level managers at hundreds of Cintas facilities. Cintas also argues that the hiring process involves many different factors, has varied over time and by facility, and depends on the market-driven needs of the particular facility and the available applicant pools.

After carefully considering the arguments and evidence presented by both sides, the Court

finds that Plaintiffs have failed to demonstrate "questions of law or fact common to the class" that are sufficient to support class certification under either disparate impact or disparate treatment theories. Fed. R. Civ. P. 23(a)(2).

> Class certification is "particularly appropriate" when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. [*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 154-56 (1982)]. . . .
>
> "It is not every common question that will suffice, however;" rather, it must be "a common issue the resolution of which will advance the litigation." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Conclusory allegations of commonality or across-the-board discrimination will not satisfy the burden of proof on certification. *Falcon*, 457 U.S. at 157 (there is a wide gap between an individual plaintiff's claim of race discrimination, coupled with an unsupported allegation of a company policy of discrimination, and the existence of a class of persons who have suffered the same injury as the individual plaintiff); [*In re American Medical Sys.*, 75 F.3d 1069, 1081 (6th Cir. 1996)] (conclusory allegations on commonality not sufficient).

*Bacon I*, 205 F.R.D. at 476-77 (affirmed by *Bacon v. Honda of Am. Mfg.*, 370 F.3d 565 (6th Cir. 2004) (hereinafter *Bacon II*)).

In this case, the hiring process is not entirely subjective, but involves objective components such as requiring a high school diploma or its equivalent, having a valid driver's license and a good driving record, or having no criminal record. Some courts have found that only an entirely subjective decision making process, unlike the one in the instant case, can support a finding of "a general policy of discrimination." *See Bacon I*, 205 F.R.D. at 477 (citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 159, n.15 (1982) and *Appleton v. Deloitte & Touche LLP*, 168 F.R.D. 221, 228 (M.D. Tenn. 1996)). More importantly, the hiring process in this case is conducted by thousands of Cintas managers at hundreds of Cintas facilities. Hiring decisions are made for a diverse range of reasons and depend on widely differing circumstances at each facility, such as the available applicant pools

and the hiring needs at a particular facility. Courts in similar circumstances have found that commonality is not established. *See Bacon I*, 205 F.R.D. at 479; *Rhodes v. Cracker Barrel Old Country Store, Inc.*, 213 F.R.D. 619, 676 (N.D. Ga. 2003) (listing several cases finding that commonality is not satisfied where "geographic diversity or an absence of centralized decision-making exists, or where different decision-makers made the challenged decisions"). Furthermore, Cintas has presented evidence that many of the individual members of the proposed class were not hired by Cintas for legitimate, nondiscriminatory reasons. In fact, previously in this case, summary judgment has been granted in Cintas's favor regarding two individual plaintiffs who did not suffer discrimination as a matter of law. *See* Order Granting Summary Judgment as to Plaintiff Avalos (docket entry #267, June 19, 2008); Order Granting Summary Judgment as to Plaintiff Jones (docket entry #366, Oct. 7, 2008). Cintas has also presented evidence of instances where a putative class member was not hired for an open job position but was passed over for a woman or a racial minority, thereby undermining a credible claim of discrimination. Moreover, the hiring process has many different steps, including an application screening, background checks, interviews, and a route ride. Several of Cintas's managers involved in the hiring process are women or racial minorities themselves. Putative class members would have suffered the alleged discrimination in different ways at different stages of the hiring process, and depending on the different Cintas employees involved at each hiring stage. For all these reasons, the Court concludes that these individual circumstances surrounding the non-hiring of each proposed member of the class preclude a finding that commonality is satisfied.

The Court finds that the cases cited by Plaintiffs in support of commonality are not persuasive. Plaintiffs' most authoritative case, the Sixth Circuit Court of Appeals case of *Senter v.*

9

*GMC*, 532 F.2d 511 (6th Cir. 1976), is distinguishable on the facts. The class in *Senter* consisted of African-American employees at a single facility who were denied promotions while having objective qualifications equivalent to white employees. *Senter*, 532 F.2d at 523. In contrast, the class in this case consists of employees with differing objective qualifications who were denied employment at hundreds of different facilities with varied applicant pools, hiring needs, and hiring managers. The Sixth Circuit Court of Appeals itself has distinguished the *Senter* case on similar grounds in the *Bacon v. Honda of Am. Mfg* case. *See Bacon II*, 370 F.3d at 572. The remainder of Plaintiffs' cases applicable to the current situation and cited in support of commonality involve challenges against employment practices that are much more limited in scope and geography than the practices of Cintas here.

In an attempt to show a common, class-wide discriminatory impact, Plaintiffs rely extensively on an analysis of certain statistical evidence allegedly indicating under-representation of women and racial minorities in SSR positions at Cintas locations. The Court has closely considered the statistical evidence presented by both parties. After such consideration, the Court is not persuaded by Plaintiffs' statistical analysis. Cintas has its own statistical experts who contest the methods, statistical models, and relevant applicant pools used by Plaintiffs' experts in interpreting the data. Cintas also observes that even assuming Plaintiffs' own interpretation of the statistical data, although some Cintas locations under-hired women and racial minorities, other locations over-hired women and racial minorities during the same time period. In addition, when using Plaintiffs' own statistical analysis, some Cintas locations which under-hired women over-hired racial minorities, creating an inherent conflict among the proposed classes. Moreover, not only did the hiring patterns fluctuate between particular Cintas locations, but even at individual locations,

patterns of under-hiring and over-hiring fluctuated from year to year. These discrepancies undermine a conclusion that the statistics are sufficient to demonstrate that there is a common, class-wide discriminatory impact against the putative class members.

Plaintiffs also rely on the expert testimony of Dr. Barbara Reskin, a sociologist who submitted a report purporting to show that a common white male business culture at Cintas tends to perpetuate its culture by discriminating against women and racial minorities. Cintas contests the validity of Dr. Reskin's scientific methods and conclusions. After a close consideration of the parties' respective positions, the Court comes to the conclusion that Dr. Reskin's report is not persuasive. First, the Court is skeptical of the scientific reliability of Dr. Reskin's report. Second, Dr. Reskin's observations that people tend to have personal biases is entirely insufficient to support the claim that in this particular case, Cintas managers acted on their biases and discriminated against women and racial minorities. If the Court were to give Dr. Reskin's report any substantial weight, it would vitiate the clear requirement in law and public policy that a plaintiff present more than mere allegations and conjecture in order to support a claim of discrimination. *See, e.g.*, *Bacon II*, 370 F.3d at 571 ("Conclusory allegations and general assertions of discrimination are not sufficient to establish commonality.")

In fact, contrary to Dr. Reskin's position that Cintas has a white male business culture, Cintas has presented evidence of sincere attempts to achieve greater diversity in its company. Cintas has a company policy in favor of diversity and personnel devoted to diversity considerations in the company. Internal memoranda and statements by Cintas's CEO at Cintas's annual meeting demonstrate endeavors to target women and racial minorities in the interests of increasing diversity. Plaintiffs' attempt to turn these examples of Cintas's commitment to diversity into evidence that

Cintas has a problematic culture of discrimination that requires remedying and, thus, into evidence that Cintas discriminated against the putative class members is entirely unpersuasive.

Actual direct evidence of discrimination against individual applicants is scant. Plaintiffs submit some testimonial evidence consisting of statements made to female applicants by Cintas employees during the hiring process. These statements include references to the fact that the SSR position involves heavy lifting, going into male locker rooms, and dealing with dirty laundry. Plaintiffs argue that these statements reveal that the Cintas managers had biases against women applicants and were trying to dissuade them from pursuing a job as a SSR. The Court does not find that these statements are compelling instances of discrimination against women. These statements could be interpreted as instances of Cintas managers giving applicants full disclosure of the demands and duties of the SSR position. Even assuming that these statements constituted particular instances of discrimination, commonality is not satisfied; on the contrary, these statements illustrate that the circumstances of discrimination are highly individualized and cannot be adequately treated in a generalized class action setting. The Court also notes that for the *Avalos* case alleging class-wide discrimination based on race, there is a noticeable lack of similar statements by Cintas managers or any other evidence supporting particular instances of racial discrimination.

In conclusion, after considering all the evidence presented by the parties, the Court finds that Plaintiffs have failed to show that "there are questions of law or fact common to the class," sufficient to support class certification. Fed. R. Civ. P. 23(a)(2).

### 3. Typicality

The Court also finds that Plaintiffs have failed to satisfy the third Rule 23(a) prerequisite, typicality. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As the Sixth Circuit has stated in the *Reeb* case:

> [T]he typicality requirement is not met if the named plaintiffs do not represent an adequate cross-section of the claims asserted by the rest of the class. Employment discrimination claims require proof that particular managers took particular employment actions and that either the managers were motivated by a discriminatory animus or the actions resulted in a disparate impact upon the class; the district court is therefore required to examine the incidents, people involved, motivations, and consequences regarding each of the named plaintiffs' claims to determine the typicality element of Rule 23(a).

*Reeb v. Ohio Dep't of Rehab. & Corr., Belmont Corr. Inst.*, 435 F.3d 639, 645 (6th Cir. 2006).

Here, as discussed above, thousands of managers at hundreds of Cintas locations made hiring decisions based on widely differing objective and subjective factors and based on the particular available applicant pool and particular hiring needs of each facility. Each putative class member's claim of discrimination would require an individualized and fact-intensive inquiry into the particular circumstances of the decision not to hire the SSR applicant. A plaintiff who proves his own discrimination claim against Cintas would not necessarily have proven someone else's claim of discrimination. Thus, one class member's claim would not necessarily be typical of another class member's claim.

In addition, Cintas has provided evidence demonstrating that some purported class members do not have a valid discrimination claim because their employments applications were rejected for legitimate, nondiscriminatory reasons. As mentioned above, Cintas has previously prevailed on summary judgment on two occasions against two named members of the class who did not suffer discrimination as a matter of law. Moreover, since Cintas has unique defenses against each class member's individual claim, the case is unsuitable for class action. "Where a class definition

13

encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members, *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006), the typicality premise is lacking, for – under those circumstances – it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members." *Romberio v. UnumProvident Corp.*, 2009 WL 87510 (6th Cir. Jan. 12, 2009) (unpublished).

For each group of plaintiffs (the *Serrano* female plaintiffs, the *Avalos* female plaintiffs, and the *Avalos* racial minority plaintiffs), Cintas persuasively argues that the claims and defenses of the named plaintiffs are not typical of the unnamed class members. Cintas accomplishes this by referencing individual applicants by name and by contrasting their situations with those of other applicants. In so doing, Cintas shows that applicants were not hired at different stages of the hiring process: some applicants were rejected at the initial application screening stage, other applicants were rejected after their interviews, and others were rejected after their route rides. In addition, applicants were rejected for a variety of reasons, including making false disclosures on the application, having insufficient work experience, and having disqualifying felony convictions. Moreover, Cintas notes that in many cases where there was a rejected application, either the position was later filled by another woman or racial minority or there was not an open position to be filled in the first place.

Plaintiffs respond by contesting Cintas's characterizations of the circumstances surrounding the rejected applicants. In fact, at the February 5, 2009 hearing, the parties argued about the circumstances surrounding the non-hiring of some particular applicants, and were required to later submit supplemental briefing about the contested applicants. Plaintiffs also argue that many of the

disqualifiers for female and racial minority applicants cited by Cintas as legitimate defenses to the rejected applications were not disqualifiers for some successful white male applicants. These disputes between the parties regarding the specifics of particular applicants to the SSR position tend to support the Court's conclusion that individualized and fact-intensive inquiries are required in order to determine discrimination, that the elements of commonality and typicality are lacking, and that this case is not suited for class certification.

Consequently, for the above reasons, the Court concludes that the claims of the named class members are not typical of those of the unnamed class members. Plaintiffs have failed to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," sufficient to support class certification. Fed. R. Civ. P. 23(a)(3).

### 4. Adequacy of Representation

The final Rule 23(a) prerequisite is adequacy of representation which requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this prerequisite, "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re American Medical Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996). Plaintiffs argue that this prerequisite is satisfied because the class representatives have common interests with the unnamed class members, namely ending discrimination, and because the class counsel is qualified and prepared to vigorously pursue the class interests.

In this case, the Court finds that the named class members may not have common interests with the other unnamed members of the class and, thus, are not adequate class representatives.

15

Plaintiffs have limited the compensatory damages of absent class members to a nominal amount, even though there is indication that some of those class members believe that they may be entitled to a full award of compensatory damages, including emotional damages. A class action suit may preclude the ability of certain members of the class from pursuing compensatory damages to which they have a legitimate right. This creates a conflict between the interests of the named and unnamed class members and, consequently, the class representatives would be unable to fairly and adequately protect the interests of the class. *See O'Neal v. Wackenhut Servs.*, 2006 WL 1469348 (E.D. Tenn. May 25, 2006) (unpublished).

Accordingly, the Court finds that Plaintiffs have failed to satisfy the fourth Rule 23(a) prerequisite, adequacy of representation.

### C.     Rule 23(b) Analysis

Though Plaintiffs' cases for class certification fail because the Rule 23(a) prerequisites have not been satisfied, the Court also finds that Plaintiffs have failed to satisfy one of the conditions set out in Rule 23(b).

#### 1.     Rule 23(b)(2)

Plaintiffs seek certification of their disparate impact claim under Rule 23(b)(2). Certification under Rule 23(b)(2) is proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs seek injunctive and declaratory relief, including a decree ending Cintas's discriminatory practices and implementation of a reporting, record-keeping, and monitoring system. Plaintiffs also seek, among other things, back pay and front pay. Plaintiffs argue that Rule 23(b)(2) is proper because Cintas has

16

acted in ways generally applicable to the class (by a hiring policy and a corporate culture that discriminates against women and racial minorities) and that the primary relief they are seeking is declarative and injunctive.

The Court disagrees with Plaintiffs. First, Plaintiffs have failed to show that Cintas acted in a manner "that appl[ies] generally to the class." Fed. R. Civ. P. 23(b)(2). As discussed above in the sections on commonality and typicality, Plaintiffs are contesting a hiring process that involved thousands of managers at hundreds of Cintas locations making highly individualized decisions based on objective and subjective criteria.

Second, the damages sought by Plaintiffs would require individualized determinations inappropriate for a class action sought pursuant to Rule 23(b)(2), which is used to pursue injunctive or declaratory relief. Monetary relief in Rule 23(b)(2) class actions should be incidental to the requested injunctive or declaratory relief. *Reeb*, 435 F.3d at 647 (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998)). If the nature of the damages calculations is individualized and if the proposed class members have an ability to bring individual actions, the damages claims "necessarily predominate over requested declaratory or injunctive relief" and the requested damages cannot be recovered pursuant to Rule 23(b)(2). *Reeb*, 435 F.3d at 651. In this case, Plaintiffs are seeking back pay and front pay. After a review of the parties' arguments, the Court finds Cintas's position to be more persuasive and concludes that back pay and front pay would require individualized determinations for each class member.

In addition, the *Avalos* plaintiffs are seeking punitive damages against Cintas. The request for punitive damages would also require individualized determinations and, thus, is not suitable for Rule 23(b)(2) certification.

In conclusion, even if Plaintiffs had met all the requirements of Rule 23(a), the Court finds that Rule 23(b)(2) certification is not appropriate under the current circumstances.

### 2. Rule 23(b)(3)

Plaintiffs also seek certification of their class action pursuant to Rule 23(b)(3). Certification under Rule 23(b)(3) is proper where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is a more demanding requirement than the finding of commonality in Rule 23(a)(2), as it requires that common issues "predominate" over individual issues. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-23 (1997). Plaintiffs argue that class issues do predominate, and that a class action is the superior method for handling all the claims fairly and efficiently. The Court disagrees with Plaintiffs' position.

As discussed above in the sections on commonality and typicality, this case requires individualized inquiries into the actions of thousands of Cintas managers and the particular circumstances surrounding the non-hiring of each particular class member. Assuming that particular class members can put forward *prima facie* cases of discrimination, Cintas has the opportunity to rebut the cases with unique defenses by demonstrating that there were legitimate, nondiscriminatory reasons for the non-hirings, which would necessitate individualized examinations into the circumstances of each class member's job application. Accordingly, individual liability issues would predominate over any common issues.

Furthermore, individual damages issues predominate over common issues. Plaintiffs seek nominal compensatory damages, punitive damages, and back pay and front pay. Assuming that

liability is shown, a determination of damages necessitates considerations into the particular circumstances of discrimination against each individual class member. *See Allison*, 151 F.3d at 419.

These individualized issues undermine Plaintiffs' argument that a class action is the superior method for handling all claims fairly and efficiently. For example, inquiries into whether Cintas had legitimate, nondiscriminatory reasons to reject particular applicants would require thousands of individual proceedings for each individual class member. Plaintiffs' proposal for bifurcating the liability and damages portions of the trial would not remedy this situation, as there are individualized issues of both liability and damages. A class action would not fairly and efficiently adjudicate the claims currently before the Court. Accordingly, even assuming that the Rule 23(a) prerequisites were satisfied, class certification pursuant to Rule 23(b)(3) would not be appropriate under the circumstances.

## IV.    Conclusion

For the reasons stated above, the Court finds that Plaintiffs have failed to demonstrate that the commonality, typicality, and adequacy of representation prerequisites of Rule 23(a) are satisfied. In addition, even assuming that the Rule 23(a) prerequisites are satisfied, the Court finds that class certification would not be appropriate under either Rule 23(b)(2) or (b)(3). These conclusions by the Court apply to the plaintiffs alleging gender discrimination in the *Serrano* case, the plaintiffs alleging gender discrimination in the *Avalos* case, and the plaintiffs alleging racial discrimination in the *Avalos* case. The class action claims by these putative class members all suffer from the same deficiencies discussed above, precluding certification of their respective classes.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Cintas's motion to strike the expert report prepared by Dr. Barbara Reskin as being inadmissible under Federal Rule of Evidence 702

and the *Daubert* analysis [docket entry #484 of Case No. 04-40132; docket entry #340 of Case No. 06-12311]; (2) Cintas's motion to strike certain portions of declarations submitted by various individual plaintiffs [docket entry #492 of Case No. 04-40132; docket entry #348 of Case No. 06-12311]; and (3) Plaintiffs' motion to strike certain portions of declarations submitted by various Cintas employees [docket entry #596 of Case no. 04-40132; docket entry #450 of Case No. 06-12311] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motions for class certification [docket entries #411, #418 of Case No. 04-40132; docket entries #268, #275 of Case No. 06-12311] are **DENIED**.

**SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: March 31, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager