UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIRNA E. SERRANO, *et al.*,

      Plaintiffs,

    and                                       Case No. 04-40132

EQUAL EMPLOYMENT OPPORTUNITY            HONORABLE SEAN F. COX
COMMISSION,                                 United States District Judge

      Plaintiff-Intervenor,

v.

CINTAS CORPORATION,

      Defendant.

*Consolidated for Pre-Trial Proceedings With*

BLANCA NELLY AVALOS, *et al.*,

      Plaintiffs,

    and                                       Case No. 06-12311

EQUAL EMPLOYMENT OPPORTUNITY            HONORABLE SEAN F. COX
COMMISSION,                                 United States District Judge

      Plaintiff-Intervenor

v.

CINTAS CORPORATION,

      Defendant.
_____/

OPINION & ORDER GRANTING DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS [Doc. No. 662]

1

On December 23, 2005, the Equal Opportunity Employment Commission ("EEOC") filed complaints as an intervening plaintiff in two cases that have been consolidated for pretrial purposes - *Mirna E. Serrano, et al. v. Cintas Corp.* [Case No. 04-40132]; and *Blanca Nelly Avalos, et al. v. Cintas Corp.* [Case No. 06-12311] - alleging that Defendant Cintas Corporation ("Cintas") engaged in discriminatory hiring practices against female applicants.[1]  The matter is before the Court on Defendant Cintas's "Motion for Judgment on the Pleadings With Respect to Plaintiff-Intervenor's Pattern or Practice Discrimination Claim" [Doc. No. 662].  Both parties have fully briefed the issues, and a hearing was held on January 21, 2009.  For the reasons that follow, the Court **HOLDS** that the EEOC is precluded from advancing its claims against Cintas under the *Teamsters* "pattern or practice" framework.  The Court therefore **GRANTS** the Defendant's Motion [Doc. No. 662].

BACKGROUND

These causes of action have already suffered through a long, complex factual and procedural history - a history already discussed by the Court in previous orders.  Therefore, only those facts of particular relevance to the instant motion are included below.

On December 23, 2005, the EEOC filed complaints as an intervening plaintiff in both the *Seranno* and *Avalos* cases.  The EEOC then amended both complaints on August 20, 2009.  [*See* Doc. No. 650, Case No. 04-40132; Doc. No. 503, Case No. 06-12311].  The first numbered paragraph of each complaint reads as follows, in pertinent part:

---

[1] As the EEOC's two complaints are mirror images of one another, for ease of reference all further citations to document numbers in this motion will refer to the 04-40132 case, unless otherwise noted.

This action is authorized and instituted pursuant to Sections 705(g)(6) and 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-4 and -f(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

[Doc. No. 650, ¶1, Case No. 04-40132; Doc. No. 503, ¶1, Case No. 06-12311].  Again, the EEOC brought this action, in part, as a "Section 706" action under 42 U.S.C. § 2000e-5, and not as a "Section 707" action under 42 U.S.C. § 2000e-6.[2]  It is the distinction between Section 706 actions and Section 707 actions that is the subject of this motion.

Lawsuits under § 706

Section 706 permits the EEOC to sue a private employer on behalf of a "person or persons aggrieved" by an employer's unlawful employment practice.  42 U.S.C. § 2000e-5(f)(1). The EEOC may file a § 706 lawsuit against a private employer, after the filing of a charge of unlawful employment discrimination with the EEOC, if the EEOC finds "reasonable cause" to believe that the employer violated Title VII.  *See, e.g., Occidental Life Ins. Co. of Calif. v. EEOC*, 432 U.S. 355, 359-60 (1977).  In *General Tel. Co. of the Northwest, Inc. v. EEOC* - regarded as "the seminal § 706 case," *EEOC v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918, 929 (N.D. Iowa 2009) - the Supreme Court explained as follows:

Title VII. . . authorizes the procedure that the EEOC followed in this case.  Upon finding reasonable cause to believe that [a private employer] had discriminated. . . the EEOC filed suit. . . . [T]he EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, *of securing relief for a group of aggrieved individuals*.

*General Telephone*, 446 U.S. at 324 (emphasis added).

_____

[2] Actions pursuant to either 42 U.S.C. § 2000e-5 or 42 U.S.C. § 2000e-6 are commonly referred to as "706 Actions" or "707 Actions" - a reference to those statutory sections' placement in the Civil Rights Act of 1964.

The EEOC is "master of its own case" when bringing suits on behalf of aggrieved persons in a § 706 lawsuit, and may bring such suits with or without the consent of the aggrieved persons. *EEOC v. Waffle House*, 534 U.S. 279, 291-92 (2002). "Nonetheless, it is axiomatic that *the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all the elements of their [discrimination] claims to obtain individual relief for them*." *CRST*, 611 F.Supp.2d at 629 (emphasis added).

Plaintiffs in a § 706 action pursue their claims under the familiar burden-shifting scheme outlined in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998). Under the *McDonnell-Douglas* framework, plaintiffs must first establish a *prima facie* case of discrimination. *McDonnell-Douglas*, 422 U.S. at 802. Once the plaintiff has established a *prima facie* case of discrimination, the burden of production shifts to the employer to rebut the plaintiff's *prima facie* case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer articulates such a legitimate, nondiscriminatory reason, the plaintiff bears the burden of proving that the employer's articulated reason is a pretext for discrimination. *Id.*

If the EEOC prevails in a § 706 action, the EEOC is entitled to equitable relief for the individuals upon whose behalf the EEOC brought suit, 42 U.S.C. § 2000e-5(g), and may also pursue compensatory and punitive damages, 42 U.S.C. § 1981a(a)(l).

Lawsuits Under § 707

Section 707 permits the EEOC to bring suit against employers whom it has reasonable cause to believe are engaged in a "pattern or practice" of unlawful employment discrimination. 42 U.S.C. § 2000e-6; *see also General Telephone*, 446 U.S. at 327 n.9 ("If, for any reason, [the]

EEOC. . . believes a pattern or practice of discrimination exists in [a private employer], its recourse is to file a suit under § 707." (citations and emphasis omitted)). "A pattern or practice case seeks to eradicate systemic, company-wide discrimination and focuses on an objectively verifiable policy or practice of discrimination by a private employer against its employees." *EEOC v. Mitsubishi Motor Mfg. of America, Inc.*, 990 F.Supp. 1059, 1070 (C.D. Ill. 1998).

Like § 706, § 707 grants the EEOC the right to seek equitable relief - such as an injunction - against employers found to have engaged in a pattern or practice of unlawful employment discrimination. 42 U.S.C. § 2000e-6(a). Unlike § 706, however, the EEOC is not authorized to seek compensatory or punitive damages under § 707 - 42 U.S.C. § 1981a only authorizes the recovery of compensatory and punitive damages "in an action brought by a complaining party under [ § 706]." 42 U.S.C. § 1981a(a)(l).

As *General Telephone* is regarded as the seminal § 706 case, the U.S. Supreme Court's holding in *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977) is regarded as the seminal § 707 case. To prove a pattern or practice claim under § 707, the EEOC must "establish by a preponderance of the evidence that racial discrimination was the company's standard operating procedure - the regular rather than the unusual practice." *Id*. at 336. That is, the EEOC is required "to prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Id*. A pattern or practice is:

> . . . present only where the denial or rights consists of something more than an isolated, sporadic incident, but is repeated, routine, or of a generalized nature. There would be a pattern or practice if, for example, a number of companies of persons in the same industry or line of business discriminated, if a chain of motels or restaurants practiced racial discrimination through all or a significant part of its system, or if a company repeatedly and regularly engaged in acts prohibited by the statute. The point is that single, insignificant, isolated acts of discrimination by a

single business would not justify a finding of a pattern or practice. . . .

*Id.* (internal citations and quotations omitted).

*Teamsters* also adopted a burden-shifting framework for § 707 actions, separate and distinct from the *McDonnell-Douglas* burden-shifting framework utilized in § 706 actions, as explained below:

> The plaintiff in a pattern-or-practice action is the Government, and its initial burden is to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers. *At the initial, "liability" stage of a pattern or practice suit[,]* the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its *burden is to establish a prima facie case that such a policy existed*. The burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the Government's proof is either inaccurate or insignificant. An employer might show, for example, that. . . during the period it is alleged to have pursued a discriminatory policy it made too few employment decisions to justify the inference that it had engaged in a regular practice of discrimination.

> *If an employer fails to rebut the inference that arises from the Government's prima facie case, a trial court may then conclude that a violation has occurred and determine the appropriate remedy*. Without any further evidence from the Government, a court's finding of a pattern or practice justifies an award of prospective relief. Such relief might take the form of an injunctive order. . . or any other order "necessary to ensure the full enjoyment of the rights" protected by Title VII.

> *When the Government seeks individual relief for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief*. [A]s is typical of Title VII pattern-or-practice suits, the question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination. The force of that proof does not dissipate at the remedial state of the trial. The employer cannot, therefore, claim that there is no reason to believe that its individual employment decisions were discriminatorily based; it has already been shown to have maintained a policy of discriminatory decision-making.

> The proof of the pattern or practice supports an inference that any particular

employment decision, during the period in which the discriminatory policy was in force, was made in pursuant of that policy. *The Government need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination. The burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons.*

*Teamsters*, 431 U.S. at 360-62 (footnotes and citations omitted) (emphasis added).

<u>Differences Between § 706 Actions and § 707 Actions</u>

"There is a significant distinction between §§ 706 and 707 claims." *EEOC v. Scolari Warehouse Markets, Inc.*, 488 F.Supp.2d 1117, 1143 (D. Nev. 2007). As the Supreme Court has recognized:

A Commissioner [of the EEOC] may file a charge in either of two situations. First, when a victim of discrimination is reluctant to file a charge. . . because of fear of retaliation, a Commissioner may file a charge on behalf of the victim. [42 U.S.C. § 2000e-5]. Second, when a Commissioner has reason to think that an employer has engaged in a "pattern or practice" of discriminatory conduct, he may file a charge on his own initiative. [42 U.S.C.] § 2000e-6.

*EEOC v. Shell Oil Co.*, 466 U.S. 54, 62 (1984). Similarly, the Central District of Illinois noted as follows:

[A] § 706 case is based on one or more individual charges or complaints of unlawful discrimination by an employer, and a § 707 case is based on a pattern or practice of systemic discrimination by an employer. Although both a § 706 case and a § 707 case can be filed by the EEOC in its own name and initiated by a "Commissioner's charge," rather than an individual charge, the converse is not true. A § 707 case cannot be initiated by an individual charge, and it cannot be filed as a civil suit by an individual. A § 707 case is a "pattern or practice" case that challenges systemic, wide-spread discrimination by an employer. Conversely, a § 706 case seeks to vindicate. . . the rights of aggrieved individuals who are challenging an unlawful employment practice by an employer. The distinction is subtle and not immediately apparent from the language of Title VII, but it is, nonetheless, an important distinction.

*Mitsubishi Motor*, 990 F.Supp. at 1084 (citation and footnote omitted). Finally, as explained

*supra*, § 706 actions and § 707 actions have the following distinctions directly pertinent to this motion: Section 706 actions proceed under the *McDonnell-Douglas* burden-shifting framework, and if the EEOC prevails, it may secure equitable and/or legal damages (including punitive damages); Section 707 actions, however, proceed under the *Teamsters* burden-shifting framework, and may only seek equitable, as opposed to legal, damages.

The Instant Motion

Cintas's motion for judgment on the pleadings [Doc. No. 662] argues as follows, in pertinent part:

> The EEOC purports under § 706 of Title VII to assert a claim that the statute does not permit: a pattern or practice claim seeking compensatory and punitive damages from Cintas. The EEOC further claims that it can prove a pattern or practice by applying the minimal Teamsters' prima facie proof model that would shift the burden to Cintas to disprove discrimination. The EEOC can do none of these things under the § 706 claim that it has asserted. First, a pattern or practice claim can be asserted by the EEOC only under § 707 of Title VII - not here pled. Second, compensatory and punitive damages are not available in pattern or practice cases; the only remedy is injunctive relief. Third, the Teamsters' burden-shifting proof model applies only in § 707 cases.

> By alleging a pattern or practice claim under § 706, the EEOC is attempting to manipulate the clearly-defined contours of Title VII so that it may take advantage of the lower burden of proof that is available for a § 707 pattern or practice claim [under *Teamsters*, as opposed to under *McDonnell-Douglas*], while still seeking to recover compensatory and punitive damages, which are only available under § 706.

[Def.'s Br., Doc. No. 662, p.2].

While the EEOC's complaint does not specifically allege that it is pursuing a "pattern or practice" claim against Cintas, the EEOC readily admits as much in its response brief [Doc. No. 664]. The EEOC argues, however, that it may bring a pattern or practice claim under § 706. [*See, e.g.*, EEOC's Br., Doc. No. 664, p.2 ("Since the 1972 amendments to Title VII, the [EEOC]

8

may sue under § 706 and obtain damages for a class of aggrieved individuals pursuant to the proof scheme outlined in [*Teamsters*].")].

STANDARD OF REVIEW

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)(internal citations and quotations omitted). The Sixth Circuit, in *Streater v. Cox*, 2009 WL 1872471, *3 (6th Cir. June 30, 2009), recently elaborated upon the pleading requirements necessary to survive a Rule 12(c) motion for judgment on the pleadings:

> In *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of 'his entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level. . . ." In *Erickson v. Pardus*, 550 U.S. - - - (2007), decided two weeks after *Twombley*, however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short a plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the. . . claim is and the grounds upon which it rests.' The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." We read the *Twombley* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Streater*, 2009 WL 1872471, *3, quoting *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008) (internal citations omitted).

ANALYSIS

Cintas asks this Court to preclude the EEOC from prosecuting the instant § 706 action under the *Teamsters* "pattern or practice" framework used in § 707 actions. The Court agrees for the reasons that follow, and therefore **GRANTS** Cintas's motion [Doc. No. 662].

I. The Procedural History of the EEOC's Involvement in These Actions.

The individual plaintiffs in the *Seranno* action filed their original charge of discrimination with the EEOC on or about April 7, 2000 - *almost a decade ago at this point*. [*See Seranno* Complaint, Doc. No. 1, ¶7]. It took the EEOC *over two years* - until roughly June of 2002 [*See* Doc. No. 1, Ex. A] to issue a determination that reasonable cause existed to believe Cintas had engaged in discriminatory hiring practices.

Despite this finding in June of 2002, the *Seranno* individual plaintiffs were *still* seeking a right to sue letter from the EEOC *another two years later*, and it was only in May of 2004 - *over four years from when the original charge was filed* - that the EEOC formally declined to issue a right to sue letter. The *Seranno* individual plaintiffs then filed their lawsuit in this action on May 10, 2004 [*See* Doc. No. 1].

It took *another year and a half* for the EEOC to *again* change its posture regarding this action: on December 23, 2005, the EEOC - who over a year and a half beforehand had not even been willing to grant the *Seranno* individual plaintiffs a right to sue letter - apparently became convinced that Cintas's alleged discrimination warranted the EEOC's intervention as a third-party plaintiff. [*See* EEOC's Complaint, Doc. No. 98].

The EEOC's original Complaint brought actions under §§ 705 and 706 - not § 707 [*See* Doc. No. 98, ¶4] - and *nowhere* within the EEOC's original Complaint does the EEOC allege

10

that Cintas engaged in a "pattern or practice" of discrimination, *nor* does the EEOC give *any* indication that it sought to prove its claims pursuant to the *Teamsters* framework.

*Almost four years after that* - and *over nine years* since the *Seranno* individual plaintiffs filed their original charge of discrimination - the EEOC amended its original Complaint on August 20, 2009. [*See* EEOC's First Amended Complaint, Doc. No. 650]. As was the case with its first Complaint, the EEOC alleged actions under §§ 705 and 706 - not § 707 [*See* Doc. No. 650, ¶4] - and *nowhere* within the EEOC's amended Complaint does the EEOC allege that Cintas engaged in a "pattern or practice" of discrimination, *nor* does the EEOC give *any* indication that it sought to prove its claims pursuant to the *Teamsters* framework.

Against this procedural backdrop, Cintas filed the instant motion on October 21, 2009 [*See* Doc. No. 662], seeking to preclude the EEOC from proceeding under a *Teamsters* framework in this action brought under § 706. It was only upon filing its *response brief* to the instant motion on November 4, 2009 - *almost four years* after intervening in this action - that the EEOC formally announced to the Court its intention to proceed under the *Teamsters* framework.

At oral argument before the Court on January 27, 2010, counsel for the EEOC admitted that its Complaint is devoid of any mention of the *Teamsters* framework - again, traditionally utilized in § 707 actions, as opposed to the *McDonnell-Douglas* framework typically utilized in § 706 actions. Further, when asked at oral argument to direct the Court to paragraphs in the Complaint supporting the EEOC's contention that Cintas engaged in a "pattern or practice" of discrimination, counsel for the EEOC first remarked that "pattern or practice" is not generally

regarded by the EEOC as being a term of art.[3]  When pressed on the subject, counsel for the EEOC admitted that a "pattern or practice" allegation could only be generally inferred from the other allegations in the EEOC's Complaint.

On these procedural facts alone, sufficient justification exists for the Court to grant Cintas's instant motion - Despite *more than ample opportunity* to express its intention to prosecute this action under the *Teamsters* framework, the EEOC only chose to formally raise the issue and inform the Court - and Cintas - of its intentions at the eleventh hour in this litigation. Even if these procedural facts did not justify granting the motion, however, the EEOC's claims still fail on their merit.

II. *Monarch Machine Tool* is Not Controlling of the Issues in This Motion.

The narrow issue involved in this motion, whether the EEOC may bring a § 706 action for compensatory and punitive damages under the *Teamsters* pattern or practice framework, has not yet been decided by *any* circuit courts of appeal, and only a handful of district courts - arriving at differing outcomes - have addressed the issue.[4]  As such, this is an issue of first impression for this Court.

A preliminary matter bears comment, however.  The EEOC cites to the Sixth Circuit's opinion in *EEOC v. Monarch Machine Tool Co.*, 737 F.2d 1444 (6th Cir. 1984), for the proposition that the Sixth Circuit has already sanctioned the use of the *Teamsters* framework for

---

[3] This, despite federal courts around the country repeatedly referring colloquially to § 707 actions as "pattern or practice" actions in their written opinions.

[4] Other federal courts have, however, allowed the EEOC to proceed in a "hybrid" fashion - bringing actions under §§ 706 and 707 *concurrently*, and allowing the entire "hybrid" action to proceed under the *Teamsters* framework.  This, however, is not the case in the instant litigation, where the EEOC has not pled an action under § 707.

§ 706 actions.  The EEOC's reliance upon *Monarch* is limited to the following footnote:

> Although we realize the Supreme Court in *Teamsters* was discussing the proper
> procedure for the district court to follow in a section 707 pattern-and-practice suit,
> it adopted this procedural framework from *Franks* [*v. Bowman Transp. Co.*, 424
> U.S. 747 (1967)] which dealt with class actions under section 706.

*Monarch*, 737 F.2d at 1449, n.3.  Thus, the EEOC argues that "[i]n other words, while noting

that Rule 23 does not apply to an EEOC suit, *Monarch* advised courts to use the *Teamsters*

framework in a Commission pattern-or-practice case under § 706." [EEOC's Br., Doc. No. 664,

pp.6-7].

As *dicta*, however, an extraneous footnote in a sixteen year old case does not constitute

binding precedent for the issues involved in this motion.  The Sixth Circuit in *Monarch* reversed

and remanded for a new trial due to the fact that, just prior to the Supreme Court's holding in

*General Telephone*, the trial court limited relief to the charging plaintiffs due to the fact that the

EEOC did not pursue class certification under FED. R. CIV. P. 23.  *Monarch*, 737 F.2d at 1447

("Because it is most apparent that had the trial judge possessed the advantage of the Supreme

Court's ruling in [*General Telephone*] at the time of trial, he would have proceeded with the

class action aspects of the suit in the manner sought by the Commission, we note at the outset

that a general remand is necessary for that purpose").  Furthermore, the above-quoted material

from the *Monarch* opinion, included within a footnote, is merely dicta.  *See, e.g., Royal Ins. Co.*

*of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 417 (6th Cir. 2008) (holding

footnoted material to be mere dicta); *Scotty's Contracting and Stone, Inc. v. United States*, 326

F.3d 785, 790 (6th Cir. 2003) (same).

Since the *Monarch* holding was published in 1984, not once has the Sixth Circuit - or any

other federal court, for that matter - cited to *Monarch* for the proposition in question. More importantly, since *Monarch*, the Sixth Circuit has never explicitly stated that the EEOC may prosecute a § 706 action under the *Teamsters* pattern or practice framework. Rather, the Sixth Circuit has since *reaffirmed* the distinction between § 706 and § 707 actions: ". . .the [Supreme] Court has noted that there is a 'manifest' and 'crucial' difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination." *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004). Therefore, this Court regards the above-quoted *Monarch* footnote as merely unpersuasive *dicta*.

III. <u>Precedent From Other District Courts On Point With the Issue in the Instant Motion</u>

The briefing provided by both parties to this motion makes the issues involved appear far more complex than they are in reality - a sentiment shared by several other district courts considering similar issues.[5] Both parties' briefs cite almost every major federal court opinion discussing § 706 actions, § 707 actions, and even hybrid actions under both § 706 and § 707 - the vast majority of which are not controlling of the issues involved in this motion. Further, many of these holdings by other federal courts "have blurred the line" between § 706 and § 707 claims, the consequence of which, in the opinion of another district court, has led to "widely divergent analyses that are impossible to reconcile or even tidily summarize." *EEOC v. CRST Van*

_____

[5] *See, e.g., EEOC v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918, 933 (N.D. Iowa 2009) (". . .courts have blurred the line between class-wide claims. . . and pattern or practice claims. . . Not surprisingly, it appears much confusion has already crept into this case. The EEOC is pursuing matters in this case that it did not plead or allege in the EEOC's Complaint"); *EEOC v. Int'l Profit Assocs., Inc.*, 2007 WL 844555 (N.D. Ill. March 16, 2007) ("The parties' briefs are hopelessly confused, and demonstrate that a controlling issue with regard to IPA's motions is not factual, but rather centers on the parties' differing conceptions of what type of case this is, what methods of proof apply, and how it should be tried").

*Expedited, Inc.*, 615 F.Supp.2d 867, 877 (N.D. Iowa 2009).

Only three district courts have considered the exact, narrow issue encompassed in this motion - whether the EEOC may utilize the *Teamsters* framework in prosecuting its case *solely under a § 706 action*. One of these three opinions - albeit in *dicta* - ruled against the EEOC, while the other two opinions allowed the EEOC to pursue a § 706 action under the *Teamsters* framework. Each of these opinions will be discussed in turn.

A. *International Profit Associates*

In *EEOC v. Int'l Profit Associates, Inc.*, 2007 WL 844555 (N.D. Ill. March 16, 2007), the EEOC alleged that the employer had "engaged in an ongoing pattern or practice of unlawful employment activities at its business facilities in Illinois," and brought a § 706 action seeking "injunctive relief as well as compensatory and punitive damages." *IPA*, 2007 WL 844555 at *1. When the employer objected to the EEOC's attempt at prosecuting its § 706 action under the *Teamsters* framework, the employer filed a motion for summary judgment.

Despite noting the "distinction between a suit brought under section 706 and a suit brought under section 707," the Northern District of Illinois nonetheless allowed the EEOC to proceed with its § 706 action under the *Teamsters* framework. *Id*. at *9. The district court based its holding on the following reasoning:

> However, the EEOC may still rely on the pattern or practice theory when it sues under section 706. In fact, the current version of section 707 provides that the EEOC "shall have authority to investigate and act on a *charge or a pattern or practice* of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the [EEOC]. *All such actions shall be conducted in accordance with the procedures set forth in section 2000e-5 of this title*." 42 U.S.C. § 2000e-6(e) (emphasis added). Thus, section 707 itself contemplates that when a charge is filed with the EEOC, and the charge (or the EEOC's subsequent investigation of it) gives the EEOC reasonable cause to believe that the employer

15

is engaging in an unlawful pattern or practice of discrimination, the EEOC will bring the pattern or practice suit on behalf of the group of persons affected pursuant to section 706.

*Id*. (emphasis in original).  No other reasoning was provided by the *International Profit Associates* court in support of its holding.

A reference to "the procedures set forth in section 2000e-5" in § 707 simply does not justify importing the *Teamsters* framework into a § 706 action.  The only "procedures" outlined in § 706 deal with matters relevant to the *filing* and *institution* of a civil action in district court, not the manner of proof required to be followed in such an action.  *See, e.g.,* 42 U.S.C. § 2000e-5(f) (outlining the procedures by which the EEOC or a private actor may file suit in district court, the jurisdiction of the district courts over such matters, and the assignment of the case for hearing).

The language of § 706 does not contain a congressional mandate to apply the *McDonnell-Douglas* framework to such actions - nor does § 707 itself require proofs to be submitted under the *Teamsters* framework.  If anything, the reference to "the procedures set forth in section 2000e-5" within § 707 supports an argument that § 707 actions should be tried under the framework for a § 706 action - the *McDonnell-Douglas* framework - not the other way around.  For these reasons, the Court respectfully declines to follow the reasoning set out by the Northern District of Illinois in *International Profit Associates*.

### B.  *Scolari Warehouse Markets*

The second district court to consider this issue - *EEOC v. Scolari Warehouse Markets, Inc.*, 488 F.Supp.2d 1117 (D. Nev. 2007) - also held that the EEOC could utilize the *Teamsters* framework in an action solely brought under § 706.  In *Scolari*, however, the EEOC sought to

bring a pattern or practice case through *concurrent* charges under *both* § 706 *and* § 707. Despite

this "hybrid" procedural posture, the *Scolari* court nonetheless analyzed the more narrow issue of

whether the EEOC could bring a pattern or practice claim *solely* under § 706 - an issue not

directly before that court. *Scolari*, 488 F.Supp.2d at 1144.

Noting that "[t]he Court is not aware of any circuits that have decided the narrow issue of

whether pattern-or-practice claims may be brought pursuant to § 706 for the purpose of seeking

punitive or compensatory damages. . . ," *Id*., the *Scolari* court then immediately expressed doubt

about the propriety of the EEOC's arguments:

> Allowing pattern-or-practice claims to proceed according to § 706 when Congress
> specifically created another avenue to bring such claims creates an apparent
> redundancy in the law that troubles the Court.

*Id*. Despite what that court deemed a "troubling redundancy," however, *Scolari* allowed the

EEOC to nonetheless pursue a pattern or practice claim under § 706:

> Title VII, as remedial legislation, has long been construed liberally, and any
> ambiguities in the statutes generally have been resolved in favor of the
> complainants. As a "prophylactic" piece of legislation, the Court is hesitant to
> limit remedies that would serve Title VII's purpose. Indeed, allowing punitive
> and compensatory damages for class-wide claims and not for pattern-or-practice
> claims, when both are equally severe in magnitude, would disrupt Title VII's
> purpose to eradicate wide-spread discrimination and to make persons whole again.
> Precluding district courts from awarding punitive and compensatory damages in
> pattern-or-practice cases also would interfere with a court's broad discretion to
> determine appropriate relief.

*Scolari*, 488 F.Supp.2d at 1144-45 (internal citations omitted).

That Title VII is generally seen as being "remedial" or "prophylactic" in nature - as the

*Scolari* court so found - does not justify a holding contrary to the plain language of §§ 706 and

707. Similarly, that allowing punitive and compensatory damages in § 706, but not § 707,

actions may "disrupt Title VII's purpose" is also irrelevant - Congress apparently did not think

so, as the 1992 amendments to 42 U.S.C. § 1981a *only extended punitive and compensatory*

*damages to § 706 actions, not § 707 actions*. The *Scolari* court's personal opinion that § 706

actions and § 707 actions "both are equally severe in magnitude" is also beside the point - again,

Congress apparently did not think so in drafting Title VII, or in amending Title VII in 1992.

So to is *Scolari*'s reliance on the "court's broad discretion to determine appropriate

relief" similarly unjustified. While district courts *do* have broad *equitable* powers to remedy

Title VII violations, *see, e.g., Local 28 of Sheet Metal Workers Int'l Ass'n v. EEOC*, 478 U.S.

421, 422 (1986), a district court may not afford *legal remedies* in direct contravention to the

statute's plain language. For these reasons, the Court respectfully declines to follow the

reasoning set out by the District of Nevada in *Scolari*.

### C. *CRST Van Expedited*

The third and final district court to consider whether the EEOC may bring a § 706 claim

pursuant to the *Teamsters* framework was the Northern District of Iowa in *EEOC v. CRST Van*

*Expedited, Inc.* - though in that case the court only discussed the issue in *dicta*, as the employer

had not directly raised the issue:

> Fortunately, the court need not cut through this cloud of confusion to rule on the
> Motion. CRST does not argue that the EEOC's Complaint fails to state a "pattern
> or practice claim." Indeed, CRST filed the instant Motion to seek its dismissal;
> presumably, CRST does not seek to dismiss what it does not believe to exist.

*CRST*, 611 F.Supp.2d 918, 934 (N.D. Iowa 2009). Despite not directly ruling on the propriety of

the EEOC's attempt to bring a pattern or practice suit under § 706, the *CRST* Court was not

receptive to the EEOC's arguments on the subject - arguments similar to those made by the

EEOC before this Court in the instant motion:

> In sum, it would appear that the EEOC is attempting to have its cake and eat it too. That is, the EEOC is attempting to avail itself of the *Teamsters* burden-shifting framework yet still seek compensatory and punitive damages under § 706. Complicating matters further, it is important to remember that the Supreme Court designed the *Teamsters* burden-shifting framework with only equitable relief in mind.

*Id.* In another opinion from later that same year, the *CRST* Court again expressed hostility to the

EEOC's attempts to broaden its remedial powers beyond the text of Title VII:

> The EEOC's proposed construction of its powers is inconsistent with its statutory mandate. The district court in [*EEOC v.*] *Burlington* [*Med. Supplies, Inc.*, 536 F.Supp.2d 647, 659 (E.D. Va. 2008)] aptly observed:
>
> The EEOC's special statutory mandate does not entitle it to "expand substantive rights, such as reviving state claims" that would not otherwise be actionable under Title VII. *On the contrary, the EEOC's ability to secure enforcement of Title VII on behalf of the public is primarily served through its ability to secure injunctive relief, not bootstrapping individual damage claims into the EEOC's enforcement action.*

*CRST*, 615 F.Supp.2d 867, 878 (emphasis added).

   IV. <u>The EEOC May Not Pursue a § 706 Action Under the *Teamsters* Pattern or Practice Framework</u>.

As noted by the District of Nevada in *Scolari*, "[t]he Court is not aware of any circuits

that have decided the narrow issue of whether pattern-or-practice claims may be brought pursuant

to § 706 for the purpose of seeking punitive or compensatory damages." *Scolari*, 488 F.Supp.2d

at 1144. In the instant case, the EEOC has alleged that Cintas engaged in discriminatory conduct

in violation of § 706, but not under § 707, of Title VII. The EEOC further argues that it may

pursue this § 706 action under the *Teamsters* pattern or practice framework - a framework

designed for § 707 claims. The Court disagrees.

Much of the case law cited by the EEOC in support of its instant arguments - and by the *Scolari* court as well - deals with cases brought by the EEOC under *both* § 706 and § 707 *simultaneously*. As the EEOC has not brought an action under both of these sections in the instant case, the Court reserves judgment on the propriety of allowing the EEOC to "blur the lines" - in the words of the *Scolari* Court - between the two statutory sections in this manner. Even *if* the EEOC may bring such an action under *both* sections, however, this does not support the EEOC's claim here that this action can proceed under *Teamsters* solely under § 706. Aside from the opinions in *International Profit Associates* and *Scolari* - both of which this Court declines to follow - no federal court has held that the EEOC may forgo filing a § 707 action and proceed under the *Teamsters* framework solely on a § 706 claim.

For all of the "line blurring" between § 706 and § 707 claims - engaged in not only by the EEOC in response to this motion, but by other federal courts as well - which have led to "widely divergent analyses that are impossible to reconcile or even tidily summarize," *CRST*, 615 F.Supp.2d at 877, this motion amounts to little more than a simple exercise in statutory interpretation. Section 706 actions are - and have always been - adjudicated under the burden-shifting framework announced in *McDonnell-Douglas*, while "pattern or practice" actions - outlined in section 707 - are unequivocally subject to the *Teamsters* burden shifting framework.

In the instant case, the EEOC made the decision - perhaps strategic, perhaps simply in error; it matters not for purposes of this motion - to forgo filing a § 707 claim and simply file a § 706 claim. Section 706, as outlined *supra*, unequivocally refers to claims by *individual plaintiffs* who allege they were discriminated against by their employer; nowhere within the text of §706 can the EEOC find authority to bring a so-called "pattern or practice" action. That authority is

instead couched within § 707, to which Congress chose not to extend compensatory or punitive damages to when amending 42 U.S.C. § 1981a in 1992.

As a result of its failure to plead a § 707 claim, the EEOC is limited to pursuing § 706 claims on behalf of those individuals it identifies, and cannot rely on the *Teamsters* paradigm to establish Cintas' alleged liability. Therefore, the Court **HOLDS** that the EEOC is precluded from advancing its claims against Cintas in the instant action under the *Teamsters* framework, but instead must proceed under the framework announced in *McDonnell-Douglas*.

To hold otherwise would, as noted by Cintas in their brief, render § 707 superfluous:

> If the EEOC can state a claim for pattern or practice discrimination under § 706, and potentially recover both equitable and monetary relief under that provision, there would be no reason to ever bring a claim under § 707. The EEOC would invariably choose to pursue pattern or practice claims under § 706 in order to take advantage of its more comprehensive range of remedies. This interpretation of Title VII would clearly render § 707 superfluous, and, in most cases, entirely insignificant.

[Def.'s Br., Doc. No. 662, p.16]. The Court agrees. Federal courts are admonished to "construe statutes, where possible, so as to avoid rendering superfluous any parts thereof." *Astoria Fed. Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991).

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Defendant's Motion [Doc. No. 662], and **HOLDS** that the EEOC is precluded from advancing its claims against Cintas in the instant action under the *Teamsters* framework, but instead must proceed under the framework in

*McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973).

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  February 9, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 9, 2010, by electronic and/or ordinary mail.

s/Jennifer Hernandez
Case Manager