UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIRNA E. SERRANO, et al.,

    Plaintiffs,

v.

CINTAS CORPORATION,

    Defendant.

_____/

CIVIL ACTION NO. 04-40132

DISTRICT JUDGE SEAN F. COX

MAGISTRATE JUDGE DONALD A. SCHEER

## ORDER GRANTING DEFENDANT CINTAS CORPORATION'S MOTION TO COMPEL PRODUCTION OF PLAINTIFF-INTERVENOR'S DOCUMENTS AND RESPONSES TO DEFENDANT'S DISCOVERY REQUESTS

Defendant Cintas Corporation's Motion to Compel Production of Plaintiff-Intervenor's Documents and Responses to Defendant's Discovery Requests, or, in the Alternative, Motion for Evidentiary Sanctions was referred to the undersigned magistrate judge for hearing and determination. The parties appeared, by counsel, for hearing on February 4, 2010. Having reviewed Defendant's Motion, together with Plaintiff-Intervenor EEOC's Response and Defendant's Reply, and having had the benefit of oral argument, I find that the Motion should be granted, as follows.

The parties submitted a List of Unresolved Issues. Four questions remain in dispute: A) whether the EEOC must identify at this stage in the case the women on whose behalf it will be pursuing damages from Cintas; B) whether the EEOC must identify the women to whom it sent questionnaires; C) whether the EEOC must produce copies of all completed questionnaires returned to it; and D) whether the EEOC must produce summaries of all witness statements obtained by it.[1]

---

[1] The List of Unresolved Issues contained a fifth category relating solely to the character of relief, if any, appropriate in the circumstances.

**A.   Whether the EEOC Must Identify at this Stage in the Case the Women on Whose Behalf it Will be Pursuing Damages from Cintas.**

Cintas maintains that it has the right to know the identity of each individual who has agreed to participate in this action, and who the EEOC alleges is entitled to back pay and other damages. The relevance of that information is self evident, and not contested by the EEOC. Cintas relies upon <u>EEOC v. CRST Van Expedited, Inc.</u>, 257 F.R.D. 513, 518 (N.D. Iowa 2008). In that gender discrimination case, the court ordered the EEOC to identify all persons for whom it intended to seek relief. The EEOC initially identified all women whom it had then discovered who met its definition criteria for the class for which relief was sought. While acknowledging the defendant's right to seek discovery at the appropriate time, EEOC declined to update its initial disclosure. The court, while acknowledging that the EEOC was "the master of its own case," relied upon its inherent case management authority in ordering EEOC to immediately file a corrected list identifying all the individual persons on whose behalf if sought damages, and to make each person identified available for deposition. The order was entered in order to avoid unfair prejudice to the defendant employer in facing a "moving target" of prospective plaintiffs. I am satisfied that the same analysis applies to the instant case.

The EEOC has offered no case authority supporting its refusal to produce the requested information. It merely asserts that its pattern or practice case against Cintas is to be bifurcated into separate class and individual stages, though the exact nature of the bifurcation is uncertain at this point. EEOC declares its intent to identify the individual victims of discrimination during the second stage of trial. I find that proposal unsatisfactory. Cintas is entitled to contest the issue of gender discrimination in both stages of a bifurcated

case. Defendant quite reasonably seeks to focus its attention upon the specific women on whose behalf the EEOC intends to seek damages. The information sought is relevant to the issues in controversy in both stages, and the EEOC has no principled reason to withhold it.

### B.     Whether the EEOC Must Identify the Women to Whom it Sent Questionnaires.

The EEOC first intervened in this matter of December 23, 2005, when it filed its Complaint in Intervention alleging that Cintas had engaged in a nationwide pattern or practice of sex discrimination in relation to hiring for service sales representative ("SSR") positions. Cintas asserts, and the EEOC does not deny, that, in the fall of 2009, it began contacting women who applied to work as SSR's at Cintas' Michigan locations. The EEOC sent a cover letter, accompanied by a questionnaire. The cover letter generally described the EEOC Complaint against Cintas. The letter further stated that the recipient had been "identified as a possible claimant in the lawsuit." EEOC declared in the letter that the recipient should return the completed questionnaire if she wished "to be considered for any type of relief or to participate in the litigation by the EEOC." A return envelope was provided to each addressee.

Cintas' Interrogatories Numbered 8 and 9 sought the identity of each individual whom the EEOC had contacted or attempted to contact in connection with this lawsuit (Interrogatory No. 8), or who had made any statement to EEOC or its counsel regarding Cintas' recruitment, selection or non-selection of SSR candidates (Interrogatory No. 9). The EEOC responded to each Interrogatory by referring Cintas to its initial disclosures under Fed.R.Civ.P. 26(a)(1), dated May 17, 2006. Those disclosures, however, predate the EEOC's issuance of the letters and questionnaires to prospective class members. They

do not provide the information at issue here. Specifically, the responses do not identify the persons to whom the EEOC sent questionnaires.

The EEOC argues that the individuals to whom it issued letters and questionnaires are among those persons identified by Cintas as having applied for SSR positions during the relevant time frame and, thus, Defendant already has the requested information. Cintas responds, however, that its disclosure of applicants included persons whose names did not clearly indicate their gender. It also produced to the EEOC applications submitted by persons who did not make clear whether or not an SSR position was sought. Those documents were produced in an effort to avoid omitting any potential class members. For its part, the EEOC does not contend that a letter or questionnaire was sent to each person whose application was produced by Cintas. Rather, it is apparent that a winnowing process was employed. Having expended time and effort in selecting the persons who would receive questionnaires, the EEOC wishes to impose a similar burden on Defendant. There appears to be no purpose for that position other than to increase the difficulty and expense of the defense of this action by Cintas. Fed.R.Civ.P. 1 provides that the rules are to be construed and administered to secure the just, speedy and inexpensive determination of every action and proceeding. The information sought by Cintas is relevant to the issues in the case. The EEOC offers no legal justification for denying access to it.

Although the EEOC's written responses to Interrogatories 8 and 9 did not include an objection, its counsel suggested in oral argument that attorney-client privilege and/or attorney work product protections would justify withholding the identity of the person who received letters/questionnaires. Such objections are untimely, and thus waived, at this stage. They are also without merit.

4

Setting aside, for the moment, the issue of whether persons who responded to the EEOC's inquiry by returning completed questionnaires became, by that reason alone, its clients, it is well established that the existence of the attorney/client relationship and the identity of the "client" are not encompassed within the privilege. Humphries, Hutcheson and Moseley v. Donovan, 755 F.2d 1211, 1219 (6th Cir. 1985).

Attorney work product protections typically apply to tangibles, and whether a party must disclose work product in answer to questions is governed by the doctrine of Hickiman v. Taylor, 329 U.S. 495 (1947). The essence of that holding is that an attorney's mental impressions and legal analysis are entitled to protection from discovery. The EEOC has not made a showing that the mere identity of persons contacted for possible inclusion in a class action lawsuit betrays the mental impressions or legal analysis of its attorneys. The EEOC's position, as stated in the List of Unresolved Issues, is simply that "all women who applied and were not hired for driver positions in Michigan . . . are potential class members," and that the EEOC "has sent and/or will send a questionnaire to each woman who Cintas identifies as having applied for and being denied driver positions during the relevant time frame." The information developed at the hearing, however, indicates that the job applicants identified by Cintas may include applicants for positions other than SSR, and may even include male applicants. It is apparent that the EEOC has not contacted all persons listed by Cintas. The EEOC prefers that Cintas blindly contact all job applicants whose applications it produced to the EEOC, whether or not Plaintiff-Intervenor has done so. Understandably, Cintas prefers to expend its discovery resources on persons most likely to be called upon to provide information relevant to the claims before the court. Once again, Fed.R.Civ.P. 1 counsels that the Rules are to be "construed and administered to

5

secure the just, speedy and inexpensive determination of every action and proceeding."
I am satisfied that Cintas' Interrogatories Numbered 8 and 9 seek relevant information, and that the EEOC's failure to provide the information in issue here should not be countenanced.

### C. Whether the EEOC Must Produce Copies of All Questionnaires Completed and Returned by Prospective Class Members and/or Summaries of all Witness Statements Taken by the EEOC.

Cintas' Request for Production of Documents Numbered 6 sought "all documents constituting, evidencing, related or reflecting communications with any putative class member or current or former Cintas employee." Cintas' Request for Production of Documents Numbered 7 sought production of "all communications with any members of the 'class of women'" described in Paragraph 9 of the Complaint. Request for Production Numbered 26 asked for "all documents constituting, evidencing or related to any communication with any putative class member or current or former Cintas employee regarding this lawsuit or regarding the facts giving rise to or related to the allegations in this lawsuit." The EEOC responded to each request with an objection based upon attorney/client privilege and/or attorney work product protection. The documents at issue on this Motion are questionnaires sent by the EEOC to prospective class members, and which were subsequently completed and returned by the addressees.[2]

It is well established that civil discovery is wide ranging and that the permissible scope of inquiry is broad. That policy supports the essential objective of the discovery rules to make trial "less a game of blind man's bluff and more a fair contest with the basic issues

---

[2] Counsel for Defendant stated at the hearing that the request for "summaries" of witness statements taken by the EEOC is now reduced to a request only for identification information regarding the declarents.

and facts disclosed to the fullest extent possible," United States v. Proctor and Gamble Co., 356 U.S. 677 (1958), and to narrow and clarify the issues in dispute, Hickman v. Taylor, 329 U.S. 495 (1947).

The EEOC has produced completed questionnaires returned by three women who have declined to participate in this suit. Cintas seeks the production of all returned questionnaires. Based upon my review of the questionnaires which have been produced, I am satisfied that the withheld documents are likely to contain information relevant to the issues in this case. A party resisting discovery has the burden of establishing that a requested disclosure should not be allowed. Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998); Nestle Foods Corp. v. Etna Casualty and Surety Co., 135 F.R.D. 101, 104 (D. N.J. 1990). I am satisfied as well that neither attorney-client privilege nor attorney work product protection justified the EEOC's refusal to produce the requested documents.

### **Attorney-Client Privilege**

The essential purpose of the attorney-client privilege is to encourage candid communications between client and counsel. See Upjohn v. United States, 449 U.S. 383, 390-91 (1981). Because the effect of the privilege is to withhold relevant information from the fact-finder, well established policy dictates that the privilege should be narrowly construed, so as not to unduly undermine the search for truth. See Weil v. Investment/Indicators, Research and Mgmt., Inc., 647 F.2d 18, 24-25 (9th Cir. 1981).

Four elements are generally essential to the existence of attorney-client privilege: a) a communication; b) made between privileged persons; c) in confidence; and d) for the purpose of seeking, obtaining or providing legal assistance to a client. Epstein, The

Attorney-Client Privilege and the Work-Product Doctrine (Fifth Edition), American Bar Association (2007). Each party has cited case authority to support its position as to whether the elements have been met in this case.

The primary case authority relied upon by the EEOC is Bauman v. Jacobs Suchard, Inc., 136 F.R.D. 460 (N.D. Ill. 1990). In that case, the EEOC had intervened in an age discrimination action brought by former employees of the defendant. The EEOC sent letters and questionnaires to former employees of Jacobs Suchard who were not plaintiffs in the reported case. Persons who responded indicating they wanted to be represented by the EEOC became plaintiffs in a second lawsuit subsequently filed by the EEOC on their behalf. The employer argued that, even if a privileged relationship came into existence, the protection did not apply to the questionnaires in dispute because those communications occurred prior to the filing of the second lawsuit. The court observed that the right of a person to bring suit under the ADEA is terminated when a suit is brought by the EEOC. See 29 U.S.C. §626(c)(1) and 29 U.S.C. §216(b), (c). The EEOC is then authorized to receive damages on behalf of the individual employees, and the employees are precluded from bringing any subsequent action. While acknowledging that there did not appear to be a formal attorney-client relationship with the EEOC at the time the questionnaires were returned, the court determined that the EEOC was "essentially acting as de facto counsel for the employees." 136 F.R.D. at 461.

The EEOC also cites EEOC v. Bill Hurd Chevrolet Corp., 2009 U.S. Dist. LEXIS 74613. In a complaint filed September 5, 2007, the EEOC claimed that defendant had subjected its employees to class-wide sex harassment, discrimination and retaliation. On April 9, 2009, defendant learned that the EEOC was sending a questionnaire to potential

8

class members and former employees of the defendant. The employer served a request for production of documents which sought copies of the questionnaire responses. Defendant had also served interrogatories requesting information about persons with knowledge of the facts of the case concerning any alleged discrimination, harassment and retaliation, and the substance of that knowledge. The court denied a motion to compel production of the completed questionnaires. Citing Bauman, the judge observed that "[c]ourts have also applied this privilege specifically to communications between prospective class members and EEOC counsel." The judge further found, however, that "the attorney-client privilege does not protect the disclosure [of] facts communicated to an attorney" and the EEOC was ordered to supplement its interrogatory responses with any factual information it may have learned from the questionnaire responses.

The Bauman decision was also cited by the court in EEOC v. International Profit Associates, Inc., 206 F.R.D. 215 (N.D. Ill. 2002), for the proposition that "questionnaires returned to the EEOC by prospective claimants in an age discrimination suit were protected by a de facto attorney-client privilege."

Cintas relies upon EEOC v. Collegeville/Imagineering Ent., et al., 2007 U.S. Dist. LEXIS 3764. In that case the defendant employer sought an opportunity to settle separately with five members of the plaintiff class, on the theory that the individualized nature of their claims warranted separate treatment. The EEOC argued that it had established an attorney-client relationship with the class members and that defense contact with them would violate Model Rule of Professional Conduct 4.2, which prohibits ex parte contact with represented parties.

9

The court observed that the EEOC bore the burden of showing an attorney-client relationship with each relevant class member. The court observed that "[t]he fact that the individuals were disclosed as a class does not show that an attorney-client relationship exists." The court concluded that the filing of charges with the EEOC by three of the targeted class members, along with the EEOC's subsequent filing of the suit against defendants, constituted sufficient evidence of an attorney-client relationship between the three individuals and the EEOC. Because the EEOC had not carried its burden of demonstrating an attorney-client relationship with the other two class members, the court permitted the defendant to communicate with them ex parte. Essential to that holding is the conclusion that an attorney-client relationship is not formed between the EEOC and potential class members unless and until "the aggrieved individuals take action to manifest their intent to enter the relationship." 2007 U.S. Dist. LEXIS 3764 at *3.

Cintas also relies upon EEOC v. ABM Industries, Inc., 2009 U.S. Dist. LEXIS 97646 (E.D. Cal. Oct. 6 2009). That case is similar on its facts to the case at bar. The EEOC had filed suit against ABM, alleging that it had subjected a named employee and others similarly situated to sexual harassment and other gender based unlawful employment practices. The court determined the scope of the class, and the defendant produced a list of 4,000 current and former ABM employees who might fit into the parameters of that class. The EEOC sent the named individuals a letter and questionnaire. The letter contained information regarding the suit, and invited the recipient to contact the EEOC if he/she felt that he/she was sexually harassed while employed by ABM. The questionnaire solicited factual information relevant to the claims in suit. One recipient of the letter and questionnaire was a current employee of the defendant, who turned the documents over to an ABM supervisor.

ABM served the EEOC with a document request for the letters and questionnaires sent to current and former employees of ABM, as well as any responses received to the questionnaires. The EEOC objected to the request on attorney-client privilege, attorney work product, relevance and vagueness/overbreadth grounds. The documents withheld were described in a log appended to the discovery response. The names of the individuals who responded to the questionnaire were listed in the log. ABM filed a motion to compel.

The court considered the purpose of discovery, the broad scope of inquiry generally permitted in civil cases, the purposes of the attorney-client privilege and attorney work product protections, and the need for precise application of those protections in order to preserve the truth seeking function of litigation.

The EEOC argued in ABM Industries that the documents sought were protected from disclosure by the attorney-client privilege because: a) they were between EEOC counsel and potential claimants and b) disclosure of the contents could reveal the motive of the potential class members in seeking representation, litigation strategy, or the specific nature of the services provided. A threshold issue in the court's analysis was the professional relationship between the EEOC and the ABM employees to whom the cover letter and questionnaire were mailed. Relying upon EEOC v. Collegeville/Imagineering Ent., the court found that the "mere fact that the letter and questionnaire was sent to a group of potential claimants (and/or witnesses) does not suffice to create the privileged professional relationship." 2009 U.S. Dist. LEXIS 97646 at *15-16 (E.D. CA 2009). "[W]hen the EEOC brings a Title VII suit, '[a]n attorney-client relationship does not exist across an entire potential class merely when the EEOC file[s] a case and identifi[es] a class'." Id. (Citations omitted).

The court distinguished the situation before it from that presented in EEOC v. International Profit Associates, Inc., 206 F.R.D. 215 (N.D. Ill.), noting that contacts subsequent to the return of questionnaires to the EEOC in that case established the intent to enter an attorney-client relationship. The simple return of the questionnaires did not, in itself, create that relationship. Similarly, the court distinguished the situation before it from that in Bauman v. Jacobs Suchard, 136 F.R.D. 460 (N.D. Ill. 1990), in that the employees who had returned completed questionnaires were not parties to the Bauman suit, but persons on whose behalf the EEOC had brought its own separate ADEA action. "The primary purpose of the sought-after letter from the EEOC to this group . . . was to ask if they wished to be represented by the EEOC in its separate action and, if so, to complete the questionnaire." 2009 Dist. LEXIS 97646, at *16). (Citations omitted). The judge further noted two additional distinguishing facts critical to the court's ruling in Bauman. First, the letters and questionnaires whose production was sought were from those persons who had expressed a desire to be represented, and, second, in an ADEA action, an individual's right to bring his own suit for age based discrimination ends when the EEOC files suit. Id. at 16-17.

Title VII does not preclude an aggrieved party's right to sue for the same alleged discrimination as might be alleged by the EEOC in a separate class action. The court in ABM Industries found that the EEOC had made no adequate showing that its cover letter or questionnaire expressly offered the recipient the agency's legal services. Furthermore, in seeking to invoke the attorney-client privilege, the EEOC bore the burden of establishing how the information contained in the documents fit within the privilege. The court determined that a complete and cogent argument had not been offered on that critical

12

point. That conclusion was supported by the court's finding that the information in the cover letter amounted to little more than a general description of the pending lawsuit and a broad explanation of the EEOC's role in prosecuting such actions. "Although it appears undisputed that the cover letter was sent, at least in part, to flesh out the group of claimants seeking relief through the EEOC . . ., a fair reading of the letter shows that neither the letter itself nor the questionnaire explicitly offers legal representation to those who respond." 2009 U.S. Dist. LEXIS 97646 at 20-21. In similar fashion, the court noted that "nothing in the questionnaire offers, let alone assures, the respondent that he or she would be legally represented by the EEOC if he or she completed and returned the questionnaire or even that the responses would be kept confidential." Id. at *21. "Privilege attaches only if the communications constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." Id. The court concluded that the questionnaire did not promise or intimate that information disclosed in it would remain confidential. He further found that the questions did not disclose strategies, theories, or confidential client information such that disclosure could be reasonably held to have a chilling effect on the full and frank exchange of information between attorney and client. The court granted ABM's motion to compel the production of all cover letters and questionnaires sent to current and former ABM employees, as well as any responses thereto, except for those responses made by individuals who had taken affirmative steps to enter into an attorney-client privilege with the EEOC in that action.

Having reviewed the language of the EEOC letter in the case at bar (Exhibit 1 to EEOC Response Brief), I conclude that the analysis applied by the court in ABM Industries is fully applicable. EEOC has produced to Cintas completed questionnaires received from

13

recipients who declined to participate in this lawsuit (Exhibit A to Cintas Brief). I find that the ABM Industries analysis applies to all of the questionnaires returned in the instant case. The EEOC has not produced evidence that the recipients took affirmative steps to enter into an attorney-client relationship in this action. The completed questionnaires contain only unprivileged identification information, and there is no indication that the responses were intended to remain confidential. I conclude, therefore, that neither the letters nor the questionnaires sought by Cintas are protected by attorney-client privilege.

## **Attorney Work Product Protection**

It is well established that the proponent of a claim of attorney work product protection also bears the burden of establishing the right to withhold information, and must supply the court with sufficient information to permit a reasoned determination that the protection applies. Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980). In the case at bar, the EEOC relies upon the same case authority offered by it in support of its attorney-client privilege claims.

Fed.R.Civ.P. 26 provides qualified protection to attorney work product from discovery in a civil action. The protection is afforded to documents and tangible things otherwise discoverable which are prepared by or for another party, or by or for that other party's representative, in anticipation of litigation or for trial. It is not implausible to suppose that a letter or questionnaire drafted by a party, or its counsel, to define a class for purposes of litigation might be entitled to work product protection. In this case, however, the EEOC has voluntarily produced the text of the letter sent by it to prospective class members. Further, the Plaintiff has produced to Cintas three identical questionnaires containing the responses produced by recipients who subsequently declined to participate

14

in this action. To the extent that the language employed in these standard letters and questionnaires might tend to disclose the mental impressions or tactical theory of the EEOC in this case, its voluntary production of that material would serve as a waiver of the Rule 26 protections. See Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P., 9 F.3d 230, 234-35 (2nd Cir. 1993) (Disclosure of attorney work product protected materials to an adversary waives the protection).

     Even if no waiver had occurred, Plaintiff's attorney work product protection is qualified, and may be overcome by a showing of substantial need. In this case, the information solicited in the questionnaires was limited to the identification of the recipient by name, age and location. When work product has minimal substantive content, and presents none of the dangers that the rule is designed to avoid, a party's need to avoid time and effort in obtaining the information elsewhere is sufficient to defeat the effects of the attorney work product protection. See United States v. Amerada Hess Corp., 619 F.2d 980 (3rd Cir. 1980). Furthermore, the identity of persons on whose behalf the EEOC will claim damages will certainly be disclosed at trial. Under such circumstances, courts have held that a sufficient need for the information has been demonstrated. See Wheeling-Pittsburgh Steel Corp. v. Underwriters Lab., Inc., 81 F.R.D. 8, 11-12 (N.D. Ill. 1978). I am satisfied that the EEOC's right to attorney work product protection of the language employed by it in the letters and questionnaires has been waived. I further conclude that, even absent a waiver, the information contained in the completed questionnaires is not of a type likely to betray the mental impressions or tactics of Plaintiff's counsel, and that it is of a character which is likely to be revealed in the course of this litigation. The EEOC has offered no substantial justification for delay in the production of the material sought beyond its desire to disadvantage Cintas in defending this case.

### D. Whether the EEOC Must Produce Summaries of All Witness Statements Taken by the EEOC.

The fourth question presented in the List of Unresolved Issues was whether the EEOC must produce summaries of all witness statements taken by it in this action. The agency has declared that no summaries of witness statements exist. Further, counsel for Cintas stated at oral argument that Defendant sought only clerical information relating to the identities of witnesses with whom the EEOC did not have an attorney-client relationship. Insofar as the witnesses in question are class members, I am satisfied that production of the information and materials pertinent to the first three issues in controversy will suffice.

I find that the arguments and cases relied upon by Cintas more faithfully reflect the goals and policies served by the attorney-client privilege, the attorney work product doctrine and the Federal Rules of Civil Procedure. For all of the above reasons, Defendant Cintas Corporation's Motion to Compel Production of Plaintiff-Intervenor's Documents and Responses to Defendant's Discovery Requests is granted. Plaintiff is ordered to produce to counsel for Cintas, within twenty-one (21) days of the date of this Order the following information:

a) the identities of the women on whose behalf the EEOC will be pursuing damages from Cintas in this action;

b) the identity of the persons to whom Cintas sent the letter and questionnaire at issue in this motion; and

c) copies of all completed questionnaires returned to the EEOC.

s/Donald A. Scheer  
DONALD A. SCHEER  
UNITED STATES MAGISTRATE JUDGE

DATED: March 2, 2010

## CERTIFICATE OF SERVICE

      I hereby certify on March 2, 2010 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on March 2, 2010: **None.**

                                    s/Michael E. Lang
                                    Deputy Clerk to
                                    Magistrate Judge Donald A. Scheer
                                    (313) 234-5217