UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                        Case Nos. 04-40132; 06-12311

       Plaintiff- Intervenor                    HONORABLE SEAN F. COX
                                                  United States District Judge

v.

CINTAS CORPORATION,

       Defendant.

_____/

OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT re: SUSAN MAJEWSKI HARRINGTON [Doc. No. 856]

On December 23, 2005, the Equal Employment Opportunity Commission ("EEOC") filed

complaints as an intervening plaintiff in two cases that were consolidated for pretrial purposes -

*Mirna E. Serrano, et al. v. Cintas Corp.* [Case No. 04-40132]; and *Blanca Nelly Avalos, et al. v.*

*Cintas Corp.* [Case No. 06-12311] - alleging that Defendant Cintas Corporation ("Cintas")

engaged in discriminatory hiring practices against female applicants in violation of 42 U.S.C. §

2000e-5, also known as a "Section 706" action.[1]  In March of 2010, the EEOC identified Ms.

Susan Majewski Harrington ("Harrington") as one of thirteen individuals upon whose behalf the

EEOC brought this § 706 action.  The matter is before the Court on Cintas' motion for summary

judgment [Doc. No. 856] with respect to Ms. Harrington's claims.  The parties have fully briefed

the issues, and the Court declines to hear oral argument pursuant to E.D. MICH. L.R. 7.1(f)(2).

_____

[1] For ease of reference, all further citations to document numbers in this motion will refer to the
04-40132 case unless otherwise noted.

1

For the reasons that follow, the Court **GRANTS** Cintas' motion [Doc. No. 856], and

**DISMISSES WITH PREJUDICE** the EEOC's claim brought on behalf of Ms. Harrington.

BACKGROUND

These causes of action have already suffered through a long, complex factual and

procedural history - a history already discussed by the Court in previous orders. Therefore, only

those facts of particular relevance to the instant motion are included below.

<u>Background to this Litigation</u>

The individual plaintiffs in the *Serrano* action filed their original charge of discrimination

with the EEOC on or about April 7, 2000 - over a decade ago. [*See Serrano* Complaint, Doc. No.

1, ¶7]. Two years later, in June of 2002 - the EEOC issued a determination that reasonable cause

existed to believe Cintas had engaged in discriminatory hiring practices. [*See* Doc. No. 1, Ex. A].

After two more years, in May of 2004, the EEOC formally declined to issue a right to sue letter -

at which time the *Serrano* individual plaintiffs filed their lawsuit in this action. *Id.*

Roughly a year and a half after that - on December 23, 2005 - the EEOC filed suit as an

intervening plaintiff in this action. [*See* Doc. No. 98]. The EEOC's first complaint brought

actions under §§ 705 and 706. The EEOC also filed an amended complaint on August 20, 2009.

Since that time, the Court has denied both the *Serrano* and *Avalos* plaintiffs' motions for

class-action certification [*see* Doc. No. 627] - and the Sixth Circuit has denied motions for

interlocutory appeal. [*See* Doc. Nos. 632, 633]. All individual plaintiffs in the *Avalos* matter

have had their cases either dismissed, settled, or otherwise resolved [*see* Case No. 06-12311,

Doc. No. 647], as is also the case with all plaintiffs in the *Serrano* matter save for Mirna E.

Serrano herself.[2] [*See* Doc. Nos. 712, 722, 732]. Practically speaking, therefore, all that remains of the *Serrano* and *Avalos* matters is the EEOC's § 706 claims against Cintas.

On October 21, 2009, Cintas filed a motion [Doc. No. 662] seeking to preclude the EEOC from proceeding under the "pattern or practice" framework announced by the U.S. Supreme Court in *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). In opposition to that motion, the EEOC argued that it was entitled to pursue a "pattern or practice" action under the *Teamsters* framework - traditionally reserved for § 707 actions - in this action brought under § 706. [*See* Doc. No. 664].

On February 9, 2010, the Court granted Cintas' motion [Doc. No. 662], holding that the EEOC was precluded from advancing its § 706 claims against Cintas under the "pattern or practice" framework announced by the U.S. Supreme Court in *Teamsters*, but instead must proceed under the framework in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). [*See* Doc. No. 723, p.21]. The Court denied the EEOC's motion to certify the issue for interlocutory appeal [*see* Doc. No. 752], and then subsequently denied the EEOC's second motion to amend the complaint to add a "pattern or practice" cause of action under § 707. [*See* Doc. No. 829].

The EEOC was required to disclose the names of all individuals upon whose behalf it was bringing this § 706 suit against Cintas no later than March 23, 2010. [*See* Doc. No. 735, p.16]. Though forty-six females were initially listed by the EEOC as having claims in this action, that number has since been pared to thirteen individual females - one of whom is Susan Majewski Harrington, the subject of this motion - who applied for an SSR position with Cintas at its

---

[2] Cintas' motion to dismiss the claims of Ms. Serrano [Doc. No. 881] is currently pending before this Court, which is unopposed by Ms. Serrano [Doc. No. 881, p.4] - though the EEOC opposes the Court granting the motion. [*See* Doc. No. 884].

Madison Heights, Michigan facility ("Location 31").

<u>The SSR Position and Location 31's SSR Hiring Procedures</u>

Cintas' SSR position is a sales and route driver position. Generally speaking, the position requires driving a truck, selling Cintas' goods and services, and servicing current Cintas accounts for laundry, uniforms and linen products. As the Court previously held in the *Avalos* matter:

> SSRs drive trucks and deliver clean uniforms, mats and supplies to specific customers on their assigned routes. . . SSRs must insure that their trucks are properly loaded with the correct uniforms and products to fulfill the needs of specific customers. As they visit each account, they are tasked with increasing sales and maintaining customer satisfaction at the highest possible level.

[Case No. 06-12311, Doc. No. 186, pp.5-6].

Though policies and procedures for each Cintas location are set by Cintas' corporate headquarters, each Cintas location engages in a decentralized hiring process for SSR applicants - in other words, each Cintas location hires its own SSRs. At all times relevant to this motion, Ms. Holly Woonton served as the Human Resources Manager for several Cintas facilities in Michigan, including Location 31. [*See* Woonton Dep., Def.'s Ex. 6, Doc. No. 859, p.8].

It was Ms. Woonton's responsibility, as HR Manager, to review and screen SSR applications and resumes. *Id*. at 10. When screening applicants, Ms. Woonton would:

> . . . see what their employment looked like, what type of experiences they had. Again. . . how many positions they had, reasons for leaving, and whether or not they had customer service or sales experience.

*Id*. at 19. Further, Mr. Robert Ferraro, the General Manager at Location 31 from January 2000 to June 2002, agreed that Cintas preferred candidates who demonstrated successful sales experience, customer service, and the ability to work without supervision. [Ferraro Dep., Def.'s Ex. 8, Doc. No. 859, p.8].

4

Preferring applicants with a stable job history, Ms. Woonton would examine an SSR applicant's background for their experience and to determine any significant gaps in employment. [Woonton Dep., p.15]. Honesty was considered by Cintas to be a quality needed in all successful SSR applicants [Woonton Decl., Def.'s Ex. 9, Doc. No. 859, ¶¶10-11] - a fact previously noted by the Court in prior opinions in this litigation. [*See* Doc. No. 511, p.4]. Having a college degree was a plus for an SSR candidate's application, as well as was a referral from a current Cintas employee. [Woonton Dep., p.35].

Candidates that advanced beyond the resume and application screen would be given a brief phone screening interview - usually with Ms. Woonton. *Id* at 21. The applicant would then have an in-person interview, and if advanced further in the process, would likely have additional interviews with Location 31 service managers.

If still deemed a viable candidate, SSR applicants would then participate in a route ride-along with a current SSR - giving the SSR applicant an opportunity to see the job in action, as well as allowing the current SSR to evaluate the applicant on the job. [Ferraro Dep., p.33]. After the ride-along, SSR applicants would have a final interview with Mr. Ferraro, Location 31's General Manager.

Following these interviews, all those involved in the hiring process - including the SSR who accompanied the applicant on the ride-along - would engage in an information exchange where the candidate's qualifications were considered. *Id*. Following this information exchange, Mr. Ferraro would make the final hiring decision - pending, for successful candidates, a drug screen, driving records check, background check, and consultation of references. *Id*. at 34.

At all times relevant to this litigation, Cintas had in effect a company-wide policy

prohibiting unlawful discrimination on the basis of gender in hiring and other employment-related actions. [*See* Case No. 06-12311, Doc. No. 632, pp.3-4].

Susan Majewski Harrington

Though Ms. Harrington testified at her deposition that she had been subpoenaed to give a deposition in these proceedings in 2007, Ms. Harrington did not formally seek to become involved in this litigation as a named plaintiff until the EEOC sent her a solicitation letter in December of 2009. [Harrington Dep., Def.'s Ex. 4, Doc. No. 856, pp.17-18, 128].

Ms. Harrington originally learned of job openings at Location 31 through an advertisement in the classifieds section of a local newspaper. [Harrington Dep., p.23]. Ms. Harrington attended a job fair at Location 31 on September 11, 2000, where she completed an application.[3] [*See* Harrington App., Def.'s Ex. 8, Doc. No. 856; Harrington Dep., pp.23-24]. Her application indicated that she was interested in a position as a "service rep," and that she would work either first or third shift. [Harrington App., Def.'s Ex. 8, Doc. No. 856].

Ms. Harrington attached a resume indicating that, since 1996, she had worked for Kelly Services - assigned to General Motors as a "Project Management Team Coordinator" - where her duties included preparing reports, tracking data and issues, creating agendas, and facilitating weekly meetings. *Id*. Ms. Harrington's resume included additional clerical and assistant positions, with one brief position as a customer service representative with Fidelity Investments. *Id*. Ms. Harrington did not, however, have any prior work experience that involved either

---

[3] Ms. Harrington - now re-married - went by her previous married name of Susan Majewski at the time of her application with Cintas in 2000. [*See* Harrington Dep., Def.'s Ex. 4, Doc. No. 856, pp.5-7]. Consistent with the filings of both parties, however, the Court will identify Susan Majewski Harrington by her current married name in this opinion.

commercial driving or sales.

Consistent with Location 31's general operating procedure during job fairs, Ms. Harrington received an initial screening interview on the spot that day - which consisted of a one-on-one interview with an employee of Cintas who appeared to be a manager.[4]  According to Ms. Harrington, the interview lasted approximately fifteen minutes, and ended as follows:

> Q:     How did the interview conclude?
> A:     Him saying thank you for applying and, again, he would keep any resume on file and if any clerical position should come up they would call us.
> Q:     Did you tell him you were not interested in a clerical position?
> A:     No, I did not.

[Harrington Dep., p.34].  Though Cintas is unable to provide context for this statement, the comment was explored further in Ms. Harrington's deposition - and Ms. Harrington admitted that her perception of the alleged "clerical" comment was entirely speculative:

> Q:     Would you have described your job duties from 1992 through 2000 when you applied at Cintas as clerical?
> A:     Yes.
> Q:     *Did it occur to you that the person who interviewed you made the comment that you recall him making because all of the job duties that you had held for the eight years prior to applying were clerical jobs*?
>          *****
> A:     *Yes.*
> Q:     That did occur to you?  *But you made a presumption* that his comment was motivated by bias against a woman in the job?
> A:     *Yes.*
> Q:     And you don't have any facts which would lead you to believe that your presumption was accurate?
> A:     No.

*Id*. at pp.39-39 (emphasis added).

---

[4] Though Ms. Harrington recalls this individual's general physical description, she does not recall her interviewer's name. [Harrington Dep., p.27].  Though not disputing that the interview took place, Cintas has no record of the interview, and cannot identify who the manager was that allegedly interviewed Ms. Harrington on September 11, 2000. [*See* Doc. No. 856, p.7].

Ms. Harrington went on to reaffirm that she had no experience in either sales or truck driving prior to her application with Cintas in 2000:

> Q:     And I assume - - were you honest with him [the interviewer] about the duties of your prior jobs?
> A:     Yes.
> Q:     And is it correct to say that none of those duties involved sales or truck driving or route delivery?
> A:     Yes.

*Id*. at 33.  Indeed, when pressed further, Ms. Harrington admitted that the *entirety* of her background work experience had been in either clerical or IT positions:

> Q:     And, indeed, the jobs that you listed on your resume and your application, by your own description, all appear to be office or IT jobs, correct?
> A:     Correct.
> Q:     And, as you described them earlier, jobs with clerical duties, correct?
> A:     Correct.
> Q:     *Exclusively clerical duties*?
> A:     *Correct*.

*Id*. at pp.49-50 (emphasis added).  Ms. Harrington further admitted that the only evidence upon which she based her speculation regarding Cintas' discriminatory intent was the lone "clerical" comment made to her by the interviewer:

> Q:     Did anything happen during the interview, other than what you think you remember about the closing comment that caused you to feel like Cintas was not interested in hiring women for the [SSR] position?
> A:     No.

*Id*. at 37.

Ultimately, Location 31 did not advance Ms. Harrington's application beyond the initial screening phase.  Cintas argues that this was largely due to the fact that Ms. Harrington had no prior sales or delivery experience at that time, and that other, more-qualified applicants were

hired instead of her.[5] [*See* Def.'s Br., Doc. No. 856, p.8].

Specifically, Mr. Antwan Price applied to Location 31 on August 24, 2000, and was hired on September 21, 2000 - encompassing the time in which Ms. Harrington filed her application for employment. While Mr. Price had no demonstrated route driving experience, he had previously worked as a manager at a movie theater, which Cintas regarded as evidence that Mr. Price possessed strong customer service skills and a willingness to take on increased responsibility. [Ardanowski Dep., Def.'s Ex. 5, Doc. No. 856, p.67].

Further, Mr. Ryan Hicks submitted an application to Location 31 on September 11, 2000 - the same day as did Ms. Harrington. Mr. Hicks had what Cintas argues was a stable work history, including prior experience as a mover - which Cintas argues demonstrates customer service and truck driving experience. [Woonton Decl., Def.'s Ex. 7, Doc. No. 856, ¶20]. Mr. Hicks was hired as an SSR at Location 31 on October 23, 2000. *Id*. at ¶19.

The EEOC also argues that another successful male applicant should be considered in this motion: Mr. Gregg Mertens. [*See* EEOC's Br., Doc. No. 886, p.11]. Mr. Mertens applied for an SSR position at Location 31 on October 12, 2000 - roughly a month after Ms. Harrington's application. Mr. Mertens had prior experience as a laborer, painter, and welder at various jobs held from 1983 until 1991, and from 1991 until 2000 had been employed as a technician for Modernistic Carpet Cleaning. [*See* EEOC's Exs. K, L, Doc. No. 886]. He had also worked for

---

[5] Relying upon Ms. Harrington's deposition testimony, Cintas also argues that Ms. Harrington was not interested in a sales position when she applied with Location 31. [*See* Def.'s Br., Doc. No. 856, p.8]. In the light most favorable to the EEOC's case, however, the Court finds that Ms. Harrington's deposition testimony supports the fact that, while *Ms. Harrington may not have understood the extent of the sales requirements in the SSR position*, there is no evidence that Ms. Harrington was unwilling to undertake such an assignment. [*See* Harrington Dep., pp.83]. The Court will therefore ignore this argument in its analysis.

Nations Rent from 2000 until the time of his application with Cintas, where his duties included towing and delivering equipment to customers, and other customer service-related duties.  *Id.*  Mr. Mertens was hired as an SSR at Location 31 on November 13, 2000.  [EEOC's Ex. J, Doc. No. 886].

<u>Cintas' Instant Motion for Summary Judgment</u>

Following the close of discovery in this action, Cintas filed this motion for summary judgment [Doc. No. 856] on July 14, 2010.  In this motion, Cintas argues that the EEOC's claims on behalf of Ms. Harrington fail on their merits as a matter of law.[6]  The EEOC opposes Cintas' motion.  [Doc. No. 886].  The matter is now ripe for decision by the Court.

STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for

---

[6] In addition to summary judgment motions attacking the merits of each of EEOC's thirteen individually-named plaintiffs, Cintas has also filed an omnibus motion attacking each of these named plaintiffs for procedural reasons - namely, the EEOC's failure to exhaust administrative remedies before filing this lawsuit.  [*See* Doc. No. 836].  Notwithstanding the EEOC's arguments to the contrary [*See* EEOC's Br., Doc. No. 885, n1], the Court will address the merits of Ms. Harrington's claims in this order, and will address the EEOC's alleged failure to exhaust administrative remedies on all named plaintiffs in a separate order.

trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

ANALYSIS

In its instant motion [Doc. No. 856], Cintas argues that the EEOC's suit on behalf of Ms. Harrington should be dismissed for two reasons: 1) because Ms. Harrington was not "qualified" for an SSR position, and therefore cannot advance a *prima facie* case of discrimination; and 2) because the EEOC cannot demonstrate that Cintas' decision not to hire Ms. Harrington was a pretext for gender discrimination. While the Court disagrees with the first of these arguments, the Court agrees that the EEOC is unable to demonstrate that Cintas' hiring determination was pretextual. Dismissal of the EEOC's claim on behalf of Ms. Harrington is therefore proper.

Section 706 permits the EEOC to sue a private employer on behalf of a "person or persons aggrieved" by an employer's unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1). The EEOC is "master of its own case" when bringing suits on behalf of aggrieved persons in a § 706 lawsuit, and may bring such suits with or without the consent of the aggrieved persons. *EEOC v. Waffle House*, 534 U.S. 279, 291-92 (2002). "Nonetheless, it is axiomatic that the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all the elements of their [discrimination] claims to obtain individual relief for them." *EEOC v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918, 929 (N.D. Iowa 2009).

Absent evidence of intentional discrimination, the EEOC must pursue § 706 claims brought on behalf of aggrieved individuals under the familiar burden-shifting scheme outlined in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998); *see also Serrano v. Cintas Corp.*, - - F.Supp.2d. - -, 2010 WL 522846 (E.D. Mich. Feb. 9, 2010). Under the *McDonnell-Douglas* framework, plaintiffs

must first establish a *prima facie* case of discrimination. *McDonnell-Douglas*, 422 U.S. at 802. Once the plaintiff has established such a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the employer articulates such a legitimate, nondiscriminatory reason, the plaintiff bears the burden of proving that the employer's articulated reason is a pretext for discrimination. *Id*. The Court will consider each of these issues in turn.

I.  The EEOC's *Prima Facie* Case on Behalf of Ms. Harrington.

To establish a *prima facie* case of discriminatory hiring practices, a plaintiff without direct evidence of discrimination must show that 1) she belonged to a protected class; 2) she applied and was qualified for a job for which the employer was seeking applicants; 3) despite her qualifications, she was rejected; and 4) after her rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. *See McDonnell-Douglas*, 411 U.S. at 802. In this case, Cintas only disputes the second of these requirements - that Ms. Harrington was not "qualified" for an SSR position:

> The EEOC cannot make a *prima facie* showing in this case, however, because it cannot show that Ms. Harrington was objectively qualified to be an SSR. Not one of the Cintas managers who were asked about Ms. Harrington testified that she was qualified to be an SSR.

[Def.'s Br., Doc. No. 856, p.13].

The Court disagrees. While several Cintas managers may have testified that, in *their opinion*, Ms. Harrington was not qualified for employment as an SSR, these opinions do not, in and of themselves, demonstrate that Ms. Harrington was unqualified as a matter of law. Under the summary judgment standard of FED. R. CIV. P. 56, this Court is obligated to view the facts in

the light most favorable to the non-moving party - Ms. Harrington, and therefore, the EEOC as well. That a jury *could believe* the testimony of Cintas' managers when they allege Ms. Harrington was unqualified simply does not make Ms. Harrington unqualified as a matter of law.

Cintas' argument regarding Ms. Harrington's purported lack of interest in a sales position, as well as her alleged lie regarding her high school grades [*see* Def.'s Br., Doc. No. 856, p.13], are lacking in evidentiary support - at least when viewed in the light most favorable to Ms. Harrington and the EEOC. As stated *supra*, while there may have been some confusion on Ms. Harrington's part regarding the SSR position's sales requirements, Cintas' citation to page eighty-three of Ms. Harrington's deposition simply does not support Cintas' contention that Ms. Harrington was *unwilling* to take a sales position. Further, when viewed in the light most favorable to the EEOC, it appears that - while a significant discrepancy - there was no direct intent to deceive Cintas through Ms. Harrington's error in reporting her high school grades:

Q:      And you list your grade point average [on her application] as 2.7. Do you see that?
A:      Correct.
Q:      Do you believe that to be accurate?
A:      Yes, as much as I can remember.
                *****
Q:      . . . If you'll note on page 2 of this document, it indicates that your graduating GPA was 2.08. Do you see that?
A:      Yes, I do.
Q:      Does this refresh your recollection that the information included on your Cintas application is false?
A:      Sure. Yes.
Q:      Do you know why you - - did you want Cintas to believe you had a higher grade point average than you actually had in high school?
A:      No.
Q:      You don't know why you put the incorrect information?
A:      *I'm going to presume that's what I thought it was*.
Q:      But you acknowledge now that, in fact, it was 2.08; correct?
A:      Absolutely, yes.

[Harrington Dep., Ex. 4, Doc. No. 856, pp.149-50 (emphasis added)].  In light of this testimony, and in the light most favorable to the EEOC, the Court finds that Ms. Harrington simply did not remember her high school grade point average - an ignorance not necessarily indicative of an intent to deceive Cintas.  The Court will therefore disregard these facts as evidence of Ms. Harrington's alleged "unqualified" nature for an SSR position.

In *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003), the Sixth Circuit elaborated on the requirements of the "qualified" element of a *prima facie* discrimination claim. The *Wexler* Court held that, "[a]t the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler*, 317 F.3d at 575 (emphasis in original).  To meet this burden, plaintiffs need only "present[] credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id*. at 576.  The Sixth Circuit elaborates as follows:

> Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrating possession of the required skills.

*Wexler*, 317 F.3d at 576.

In the instant case, genuine issues of material fact remain regarding whether Ms. Harrington was "qualified" for an SSR position with Cintas.  Admittedly, Ms. Harrington did not have a wealth of employment experience in the areas of customer service and route delivery - the entirety of her previous work was confined to the clerical and information technology fields.  To that extent, Cintas is correct when it argues that Ms. Harrington "listed only clerical and office

positions on her application and resume, and not any driver or other labor-intensive positions," and is also correct in its argument that "she had no sales or delivery experience." [Def.'s Br., Doc. No. 856, p.13]. These prior experiences, however, were *preferred* by Cintas in its applicants, not *requirements*. What *was* a requirement for SSR applicants was *proficiency* in customer service and sales delivery - and while prior experience in the relevant field is often a strong indicator that an applicant has a desired skill set, it does not follow that only applicants with prior experience have those desired skills.

To be clear, this Court's holding that genuine issues of material fact remain regarding Ms. Harrington being "qualified" for an SSR position should not be construed as the Court viewing Ms. Harrington as necessarily being a *good* applicant. On these limited facts, however, the Court is reluctant to find Ms. Harrington unqualified *as a matter of law* due to her inexperience in the relevant field - especially where the "qualities" sought are as intangible as customer service and sales proficiency. Especially in a poor economy, individuals often may seek to take positions in new fields outside their prior experience and comfort zone, and a contrary holding by this Court could have the unintended effect of immunizing discriminatory conduct by employers simply because the applicant did not have experience in the relevant field.

On the narrow set of facts presented by this specific case, the Court finds Ms. Harrington "qualified" for an SSR position with Cintas for purposes of prong one of the *McDonnell-Douglas* inquiry. Summary judgment on the EEOC's *prima facie* claim is therefore improper, and Cintas' arguments to the contrary are without merit. Thus, the Court will move on to consider the second prong of the *McDonnell-Douglas* inquiry - Cintas' legitimate, nondiscriminatory rationale for not hiring Ms. Harrington.

15

II. <u>Cintas' Legitimate, Nondiscriminatory Rationale for Not Hiring Ms. Harrington</u>.

In its motion for summary judgment, Cintas argues that it has satisfied its requirement to

proffer a legitimate, nondiscriminatory rationale for not hiring Ms. Harrington:

> Even if the EEOC could make a *prima facie* showing of discrimination, Cintas
> has pointed to multiple legitimate, non-discriminatory reasons for why it did not
> hire Ms. Harrington. As shown above, her application listed clerical and office
> positions (not driver or sales positions), [and] she had no sales or delivery
> experience[.] All of this made her an unlikely candidate to be hired as an SSR.
> Moreover, two more-qualified candidates, with more relevant experience, were
> interviewed and hired by Location 31 at about the same time that Ms. Harrington
> applied.

[Def.'s Br., Doc. No. 856, p.14 (internal citations omitted)].

In its brief in opposition [Doc. No. 885], the EEOC's argument against Cintas' legitimate,

nondiscriminatory rationale, in its entirety, is as follows:

> In the instant case, Cintas has stated that no manager or employee at location 31
> has testified that he or she recalls Harrington, her application or any interview
> with her. Defendant thus cannot offer any nondiscriminatory reason as to why
> Harrington was not hired.

[EEOC's Br., Doc. No. 885, p.17 (internal citation omitted)]. This argument, however, is

unavailing. On the facts of this case, there is nothing wrong with Cintas' proffered argument

advancing reasons why *it would not have hired Ms. Harrington*. The EEOC offers no authority

for its proposition that employers cannot offer rationales for why they would not have hired an

applicant when no managerial employee specifically remembers interviewing the candidate. For

purposes of this motion, therefore, the Court holds that Cintas' proffered rationales for not hiring

Ms. Harrington are legitimate and non-discriminatory, and the EEOC's arguments to the contrary

are without merit. Thus, the Court will consider the third and final prong of the *McDonnell-*

*Douglas* inquiry - the EEOC's ability to demonstrate that Cintas' rationales for not hiring Ms.

Harrington were a pretext for gender discrimination.

III. <u>The EEOC's Case for Pretext</u>.

Cintas argues that the EEOC is unable to demonstrate that Cintas' asserted reasons for not hiring Ms. Harrington are pretextual. [Def.'s Br., Doc. No. 856, pp.14-15]. The Court agrees, and therefore **GRANTS** Cintas' motion for summary judgment [Doc. No. 856].

The Sixth Circuit has held that pretext can be shown:

. . . in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's decision.

*Chen v. Dow Chemical Corp.*, 580 F.3d 394, 400 (6th Cir. 2009), citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004). To carry its burden in opposing summary judgment, the EEOC must produce sufficient evidence from which a jury could reasonably reject Cintas' explanation of why it chose not to hire Ms. Harrington. *Id*. Further, it is not sufficient for the EEOC to simply allege fact questions regarding the pretextual nature of Cintas' actions. "A defendant's proffered reason cannot be proved to be a pretext 'unless it is shown *both* that the reason was false *and* that discrimination was the real reason.'" *Harris v. Metro. Gov't of Nashville and Davidson County, Tennessee*, 594 F.3d 476, 486 (6th Cir. 2010), citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (quotations and emphasis in original).

The EEOC relies primarily upon the following quote from the Sixth Circuit to demonstrate pretext in this case:

When the plaintiff offers "other probative evidence of discrimination, that evidence, taken together with the evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment."

[EEOC's Br., Doc. No. 888, p.15, quoting *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 392 (6th Cir. 2009), citing *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006)]. Here, the EEOC argues that Ms. Harrington was more qualified for an SSR position at Location 31 than were Mr. Price, Mr. Hicks or Mr. Mertens. This, coupled with the statistical evidence proffered, the EEOC argues, is sufficient to rebut Cintas' rationale as pretextual. [EEOC's Br., Doc. No. 886, pp.16-17]. The Court disagrees.

In *Risch*, the Sixth Circuit considered the claims of a female police officer who was allegedly passed over for a detective position with her police department because she was a woman. *Risch*, 581 F.3d at 385. The police department passed over her "in favor of two male applicants who had lower scores than Risch under the promotion system used by the Department." *Id*. While the EEOC's quote from *Risch*, noted *supra*, is accurate, the "other probative evidence" relied upon in *Risch* was as follows:

> The record also contains other evidence probative of pretext. The record indicates that male officers frequently made degrading comments regarding the capabilities of female officers, expressed the view that female officers would never be promoted to command positions, and made generally degrading remarks about women.

*Risch*, 581 F.3d at 392. These statements, the Sixth Circuit held, "evidence a discriminatory atmosphere in the Department in which male officers frequently made derogatory or discriminatory remarks about female officers." *Id*. at 393. Thus, the Sixth Circuit held, the plaintiff in *Risch* had presented enough evidence to survive summary judgment:

> In light of the above evidence of a discriminatory atmosphere in the Department, the lack of women in command positions at the Department, and the evidence that Risch was arguably better qualified than the two male applicants promoted in 2005, we conclude that Risch has produced sufficient evidence to establish a genuine issue of material fact concerning whether the Department's proffered

legitimate, nondiscriminatory reason was pretextual.

*Id*. at 394.

Here, by contrast, the EEOC's "other evidence" is limited to the statistical analysis of Dr. Thomas DiPrete. [*See* EEOC's Ex. BB, Doc. No. 901]. In his expert report, Dr. DiPrete examined all SSR hirings at Cintas locations in Michigan from 1999 to 2005, and found that, of the 427 SSR hirings in the state of Michigan during that time, only 24 - or approximately 5.6% - were female. [*See* DiPrete Report, EEOC's Ex. BB, Doc. No. 901, p.5; EEOC's Br., Doc. No. 886, p.2]. Based on Dr. DiPrete's analysis, the EEOC goes on to argue as follows:

> Comparing the estimated availability with the females hired, Dr. DiPrete noted a pattern of under hiring that was statistically significant beyond the threshold of two standard deviations. That is, it is highly unlikely that the pattern of under hiring females at Cintas occurred by chance alone.

[EEOC's Br., Doc. No. 886, p.3]. The Court, however, disagrees.

In *Bowdish v. Continental Accessories, Inc.*, 1992 WL 133022 (6th Cir. June 12, 1992), the Sixth Circuit rejected that plaintiff's attempts to use anecdotal evidence as evidence of discriminatory pretext. The *Bowdish* Court then held that anecdotal or statistical evidence, on its own, is insufficient to establish pretext:

> . . . such evidence, standing alone, still would not be sufficient to establish a case of individual disparate treatment. An individual plaintiff in an employment discrimination case must present some evidence that demonstrates that his or her individual discharge was the result of discrimination.

*Bowdish*, 1992 WL 133022, *5. Therefore, the EEOC's attempt in this litigation to demonstrate the pretextual nature of Cintas' failure to hire Ms. Harrington by statistical or anecdotal evidence is insufficient. Dr. DiPrete admitted as much at his deposition, when he stated that he could not express any opinion in regards to why any individual named plaintiff may not have been hired.

[*See* DiPrete Dep., Def.'s Ex. 3, Doc. No. 911, pp.67-69, 136-37].

Further, the EEOC's attempt to bootstrap a pretext finding based upon cobbled-together anecdotes from individuals commenting on other locations and times than Ms. Harrington's 2000 application to Location 31, from statistics relating to the purported hiring patterns of other Cintas locations, and from the concurrently-filed cases of the other twelve named plaintiffs in this matter, each also fail to demonstrate pretext in this matter. "Other location" and "other time" hiring decisions are irrelevant to the question of whether Location 31 refused to hire Ms. Harrington because of her gender. *See, e.g., Davis v. Hammonds*, 103 Fed. Appx. 51, 53 (8th Cir. 2004); *Shaw v. Monroe County*, 1996 WL 426483 (E.D. Mich. Apr. 18, 1996).

Finally, even if statistics alone *could* warrant consideration as evidence of pretext in this matter, the EEOC's statistics are merely "statistics without correlation," which "are indicative of no meaningful inference or conclusion." *Shaw*, 1996 WL 426483, *8, quoting *Long v. City of Saginaw*, 911 F.2d 1192, 1201 (6th Cir. 1990). In *Long*, the Sixth Circuit rejected statistics which purported to show the availability of minority candidates for the Saginaw Police Department. In that case, the "available labor pool" used to calculate the statistics was held to be *too broad in scope*, because it included all individuals identified as working in "protective services" by the U.S. Census Bureau - a classification that included "bouncers, camp guards, school-crossing guards, meter maids. . . life guards, dog catchers, [and] bodyguards[,]" to name but a few examples. *Long*, 911 F.2d at 1200.

Here, the EEOC's statistical analysis by Dr. DiPrete is even broader than the available labor pool utilized in *Long* - it includes census labor groupings such as human resource managers, computer support specialists, clergy, elementary and middle school teachers, artists,

cooks, counter attendants and convenience store clerks, receptionists, and office clerks within its calculations of the available labor pool. While the EEOC vigorously disputes the propriety of basing the available labor pool for SSR positions on a single census occupation code - 913, relating to driver/sales workers and truck drivers [*see* Doc. No. 833, pp.12-17] - *clearly* the EEOC's own statistics draw from far too broad an available labor pool - and thus overly inflate female availability for SSR positions. For these reasons, the EEOC has not proffered the type of "other probative evidence" discussed in *Risch* as sufficient to survive summary judgment.

Again, save for the EEOC's statistical evidence proffered by Dr. DiPrete, the EEOC's sole evidence to demonstrate pretext on behalf of Ms. Harrington is limited to the lone "clerical" comment allegedly made by Ms. Harrington's interviewer, and the argument that Ms. Harrington was more qualified for an SSR position than were Mr. Prince, Mr. Hicks or Mr. Mertens:

> As previously stated, Harrington was just as qualified as any male candidates who were hired. Hicks, Price and Mertens did not have any sales experience or driving experience, yet they were hired into the SSR position.

[Doc. No. 886, p.17].

While that may be true, the Court disagrees with the EEOC's overall argument. As the Sixth Circuit commented in *Bender v. Hecht's Dept. Stores*, 455 F.3d 612 (6th Cir. 2006):

> Of course, acknowledging that evidence of comparative qualifications may be probative of pretext is a far cry from holding that such evidence is itself sufficient in all cases to raise a genuine issue of fact of discriminatory motive. For we need to balance the Supreme Court's statement in *Burdine* [that qualifications evidence may be probative of whether the employer's reasons are pretexts for discrimination] with the principles that employers are generally free to choose among qualified candidates, and that the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. . . a rejected applicant must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful []discrimination, not that other reasonable decision-makers might have retained

21

the plaintiff.

*Bender*, 455 F.3d at 626 (internal citations and quotations omitted).  The *Bender* Court went on

to hold as follows:

> On the other hand, in the case in which there is little or no other probative
> evidence of discrimination, to survive summary judgment the rejected applicant's
> qualifications must be *so significantly better than the successful applicant's*
> *qualifications that no reasonable employer would have chosen the latter applicant*
> *over the former*.  In negative terms, evidence that a rejected applicant was as
> qualified or marginally more qualified than the successful candidate is
> insufficient, in and of itself, to raise a genuine issue of material fact that the
> employer's proffered legitimate, non-discriminatory rationale was pretextual.

*Bender*, 455 F.3d at 627 (emphasis added).

   The EEOC has failed, however, to demonstrate that Ms. Harrington's qualifications

were "so significantly better" than those of Mr. Price, Mr. Hicks, or Mr. Mertens that "no

reasonable employer would have chosen the latter applicant[s] over the former."  *Bender*, 455

F.3d at 627.  Further, to allow these type of side-by-side comparisons of Ms. Harrington's

qualifications to those of successful applicants - absent other probative evidence of

discrimination - would, in the words of the *Bender* Court:

> . . . move this court from its proper role of preventing unlawful employment
> practices to the illegitimate role of acting as a "super personnel department,"
> overseeing and second-guessing employers' business decisions.

*Bender*, 455 F.3d at 628, quoting *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388,

390 (10th Cir. 1983).  Even assuming, *arguendo*, that Ms. Harrington would have appeared to be

a more qualified candidate for a Cintas SSR position than Mr. Price, Mr. Hicks or Mr. Mertens -

a holding this Court emphatically does *not* reach in this opinion - the Court holds that the EEOC

has failed to demonstrate that Ms. Harrington's qualifications were "so significantly better" that

"no reasonable employer would have chosen the latter applicant[s] over the former." *Bender*, 455 F.3d at 627.

Even assuming that the EEOC could show that Cintas' purportedly legitimate, nondiscriminatory reasons for not hiring Ms. Harrington were pretextual, the EEOC has failed to offer any evidence raising a genuine issue of material fact that these reasons were a pretext for gender discrimination. This evidentiary failure is fatal to the EEOC's claim on behalf of Ms. Harrington in this litigation, and summary judgment in Cintas' favor is therefore proper. The EEOC's arguments to the contrary are without merit.

CONCLUSION

For the reasons explained above, the Court **GRANTS** Cintas' motion for summary judgment [Doc. No. 856], and **DISMISSES WITH PREJUDICE** the EEOC's claim brought on behalf of Ms. Harrington.

**IT IS SO ORDERED.**

s/Sean F. Cox          
Sean F. Cox
United States District Judge

Dated: September 3, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 3, 2010, by electronic and/or ordinary mail.

s/Jennifer Hernandez       
Case Manager