UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                                    Case Nos. 04-40132; 06-12311

        Plaintiff- Intervenor                    HONORABLE SEAN F. COX
                                                                     United States District Judge

v.

CINTAS CORPORATION,

        Defendant.
_____/

OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT re: TRACY GERKE WILLIAMS [Doc. No. 848]

On December 23, 2005, the Equal Employment Opportunity Commission ("EEOC") filed

complaints as an intervening plaintiff in two cases that were consolidated for pretrial purposes -

*Mirna E. Serrano, et al. v. Cintas Corp.* [Case No. 04-40132]; and *Blanca Nelly Avalos, et al. v.

Cintas Corp.* [Case No. 06-12311] - alleging that Defendant Cintas Corporation ("Cintas")

engaged in discriminatory hiring practices against female applicants in violation of 42 U.S.C. §

2000e-5, also known as a "Section 706" action.[1]  In March of 2010, the EEOC identified Ms.

Tracy Gerke Williams ("Williams") as one of thirteen individuals upon whose behalf the EEOC

brought this § 706 action.  The matter is before the Court on Cintas' motion for summary

judgment [Doc. No. 848] with respect to Ms. Williams' claims.  The parties have fully briefed

the issues, and the Court declines to hear oral argument pursuant to E.D. MICH. L.R. 7.1(f)(2).

_____

[1] For ease of reference, all further citations to document numbers in this motion will refer to the
04-40132 case unless otherwise noted.

1

For the reasons that follow, the Court **GRANTS** Cintas' motion [Doc. No. 848], and

**DISMISSES WITH PREJUDICE** the EEOC's claim brought on behalf of Ms. Williams.

BACKGROUND

These causes of action have already suffered through a long, complex factual and procedural history - a history already discussed by the Court in previous orders. Therefore, only those facts of particular relevance to the instant motion are included below.

<u>Background to this Litigation</u>

The individual plaintiffs in the *Serrano* action filed their original charge of discrimination with the EEOC on or about April 7, 2000 - over a decade ago. [*See Serrano* Complaint, Doc. No. 1, ¶7]. Two years later, in June of 2002 - the EEOC issued a determination that reasonable cause existed to believe Cintas had engaged in discriminatory hiring practices. [*See* Doc. No. 1, Ex. A]. After two more years, in May of 2004, the EEOC formally declined to issue a right to sue letter - at which time the *Serrano* individual plaintiffs filed their lawsuit in this action. *Id.*

Roughly a year and a half after that - on December 23, 2005 - the EEOC filed suit as an intervening plaintiff in this action. [*See* Doc. No. 98]. The EEOC's first complaint brought actions under §§ 705 and 706. The EEOC also filed an amended complaint on August 20, 2009.

Since that time, the Court has denied both the *Serrano* and *Avalos* plaintiffs' motions for class-action certification [*see* Doc. No. 627] - and the Sixth Circuit has denied motions for interlocutory appeal. [*See* Doc. Nos. 632, 633]. All individual plaintiffs in the *Avalos* matter have had their cases either dismissed, settled, or otherwise resolved [*see* Case No. 06-12311, Doc. No. 647], as is also the case with all plaintiffs in the *Serrano* matter save for Mirna E.

Serrano herself.[2] [*See* Doc. Nos. 712, 722, 732]. Practically speaking, therefore, all that remains of the *Serrano* and *Avalos* matters is the EEOC's § 706 claims against Cintas.

On October 21, 2009, Cintas filed its motion [Doc. No. 662] seeking to preclude the EEOC from proceeding under the "pattern or practice" framework announced by the U.S. Supreme Court in *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). In opposition to that motion, the EEOC argued that it was entitled to pursue a "pattern or practice" action under the *Teamsters* framework - traditionally reserved for § 707 actions - in this action brought under § 706. [*See* Doc. No. 664].

On February 9, 2010, the Court granted Cintas' motion [Doc. No. 662], holding that the EEOC was precluded from advancing its § 706 claims against Cintas under the "pattern or practice" framework announced by the U.S. Supreme Court in *Teamsters*, but instead must proceed under the framework in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). [*See* Doc. No. 723, p.21]. The Court denied the EEOC's motion to certify the issue for interlocutory appeal [*see* Doc. No. 752], and then subsequently denied the EEOC's second motion to amend the complaint to add a "pattern or practice" cause of action under § 707. [*See* Doc. No. 829].

The EEOC was required to disclose the names of all individuals upon whose behalf it was bringing this § 706 suit against Cintas no later than March 23, 2010. [*See* Doc. No. 735, p.16]. Though forty-six females were initially listed by the EEOC as having claims in this action, that number has since been pared to thirteen individual females - one of whom is Tracy Gerke Williams, the subject of this motion - who applied for an SSR position with Cintas at its

_____

[2] Cintas' motion to dismiss the claims of Ms. Serrano [Doc. No. 881] is currently pending before this Court, which is unopposed by Ms. Serrano [Doc. No. 881, p.4] - though the EEOC opposes the Court granting the motion. [*See* Doc. No. 884].

Westland, Michigan ("Location 300") facility in November of 1999.

The SSR Position and SSR Hiring Procedures at Location 300

Cintas' SSR position is a sales and route driver position. Generally speaking, the position requires driving a truck, selling Cintas' goods and services, and servicing current Cintas accounts for laundry, uniforms and linen products. As the Court previously held in the *Avalos* matter:

> SSRs drive trucks and deliver clean uniforms, mats and supplies to specific customers on their assigned routes. . . SSRs must insure that their trucks are properly loaded with the correct uniforms and products to fulfill the needs of specific customers. As they visit each account, they are tasked with increasing sales and maintaining customer satisfaction at the highest possible level.

[Case No. 06-12311, Doc. No. 186, pp.5-6].

Though policies and procedures for each Cintas location are set by Cintas' corporate headquarters, each Cintas location engages in a decentralized hiring process for SSR applicants - in other words, each Cintas location hires its own SSRs. For Location 300, the application process was overseen by that facility's General Manager, who during the time relevant to this lawsuit was Mr. David Armbrester. [Armbrester Dep., Def.'s Ex. 7, Doc. No. 858, p.19]. The hiring process generally consisted of an application screening, following by initial intake interview for those passing the initial screening. *Id*. at 18-19. Next, advancing applicants would have two in-depth interviews with Location 300 service managers, followed by a "ride along" opportunity to work a shift with an actual SSR to see the position first hand. The final interview took place after the ride-along, and was conducted by Mr. Armbrester. *Id*. at 12.

Mr. Armbrester testified that, in reviewing applications on the initial screening, "the most important things I was looking for were [a] high school diploma, good driving record [and]

4

preferably someone who had customer service and sales. . . experience on their resume." *Id*. at 20. Further, he considered a "good driving record, kind of a friendly disposition, good customer service, good people skills, [and] a high school diploma" as "must-have[]" qualities in a successful SSR applicant, and "selling experience, customer service [and] leadership experience" as "preferred" qualities. *Id*. at 29-30.

Location 300 preferred applicants with a stable job history, as this would give Cintas some assurance that the applicant would stay in the SSR position after Cintas had invested time and money on training the employee. [Armbrester Decl., Def.'s Ex. 10, Doc. No. 858, ¶5]. Mr. Armbrester also preferred applicants referred from an existing Cintas employee. [Armbrester Dep., pp.55-56]. In addition, Location 300 also favorably viewed applicants with prior military service, as these applicants - in Mr. Armbrester's experience - tended to demonstrate leadership skills, dedication, commitment, and a team attitude. [Armbrester Decl., ¶16].

At all times relevant to this litigation, Cintas had in effect a company-wide policy prohibiting unlawful discrimination on the basis of gender in hiring and other employment-related actions. [*See* Case No. 06-12311, Doc. No. 632, pp.3-4].

Tracy Gerke Williams

Ms. Williams was not involved in this litigation until the EEOC sent her a solicitation letter in October of 2009. [Williams Dep., Def.'s Ex. 4, Doc. No. 848, p.11]. Ms. Williams completed an application for an SSR position at Cintas' Westland, Michigan, facility ("Location 300") on November 4, 1999. [*See* Def.'s Ex. 8-A, Doc. No. 848]. Ms. Williams' memory of the details behind her filling out that application, however, are somewhat murky:

Q:      Do you in fact recall applying for a position at Cintas?
A:      Vaguely.

| Q: | What do you remember? |
|---|---|
| A: | I remember filling out an application.  I don't recall where. |
| Q: | You actually recall filling out an application? |
| A: | Yes. |
| Q: | Where did you fill that application out? |
| A: | I don't know. |

[Williams Dep., Def.'s Ex. 4, Doc. No. 848, p.12].  Similarly, no Cintas manager or employee

specifically recalls reviewing Ms. Williams' application.[3]  [*See* Armbrester Dep., Def.'s Ex. 5,

Doc. No. 848, p.68, p.66].

Ms. Williams' application included the following certification, to which she agreed as

indicated by her signature:

> The information contained in this application is true to the best of my knowledge
> and belief, and I understand and agree that any misrepresentation or false or
> incomplete statement by me in connection with the application will constitute
> justifiable cause for Cintas not to employ me or, if employed, to terminate my
> employment at any time.

[Def.'s Ex. 8-A, Doc. No. 848].  Despite this certification, however, there were several

misrepresentations made by Ms. Williams on her November 1999 application.

Ms. Williams attached a resume to her application, indicating jobs that she had held since

May of 1992: two positions as a hair stylist (from 1992 to 1997); one position as a cashier (from

April 1998 through July 1998); one as an office clerk; and a final position as an airport van

driver.  However, at her deposition Ms. Williams admitted that, at some time between 1992 and

when she applied with Cintas in November of 1999, she had held two additional positions as a

_____

[3] Cintas does not dispute that Ms. Williams submitted the 1999 resume, but argues that the mere
fact that a resume was submitted does not necessarily mean that it was reviewed.  At the time that Ms.
Williams applied, Mr. Armbrester states that it would not be unusual for Location 300 to only review a
fraction of the applications submitted at a given time, either because there were few or no open positions
or because other candidates were already progressing through the application process, making it
unnecessary for Location 300 to review the remaining submitted applications. [*See* Armbrester Decl.,
Def.'s Ex. 8, Doc. No. 873, ¶7].

hair stylist - one with a salon called Top Performance, and another at Fantastic Sam's. [*See* Williams Dep., p.60]. Ms. Williams omitted these positions from her resume and application, and testified at her deposition that she had been terminated from the Fantastic Sam's position after only six weeks of employment for "taking too many days off." *Id*. at 62-63. Ms. Williams elaborated as follows:

> Q: When you left Fantastic Sam's, did you give them notice?
> A: No. I was fired.
> Q: Why were you fired?
> A: Too many - - too many - - taking too many days off.
> Q: How many days had you taken off?
> A: I don't remember.
> Q: Do you know if - - did they terminate you while you were present in the building or did they call you at home?
> A: I don't remember.

*Id*. at 62-63. When asked, Ms. Williams was unable to adequately explain why she omitted the Top Performance and Fantastic Sam's positions from her Cintas application:

> Q: . . . Did you leave off Top Performance and Fantastic Sam's from your resume because you did not want to list jobs which you had held for less than six months?
> A: I don't know what my thinking was back then, to be honest with you.
> Q: Well, you agreed that you were - -
> A: I did leave them off, yes.
> Q: And you would agree that you were fired from Fantastic Sam's?
> A: Yes.
> Q: And you don't even remember barely working at Top Performance, correct?
> A: Correct.

*Id*. at 146.

Ultimately, Ms. Williams did not receive an interview in connection with her November 1999 application. Mr. Gregory Saylor applied to Location 300 on November 1, 2009 - three days before Ms. Williams - and was hired on December 6, 1999. [Armbrester Decl., ¶16].

Unlike Ms. Williams, Mr. Saylor had what Cintas believed to be a stable work history, had completed post-high school education while simultaneously working full time, and had managerial experience. *Id.* at ¶¶17-19. Similarly, Mr. Michael Breault applied for an SSR position at Location 300 on November 5, 1999 - one day after Ms. Williams' application - and was hired on January 17, 2000. Mr. Breault had a college degree in mechanical engineering, had prior management experience, *Id.* at ¶¶24-25, and had worked for his previous employer for the last eight years. *Id.* at ¶¶21-22. These qualifies, Cintas argues, made both Mr. Saylor and Mr. Breault better applicants than Ms. Williams. [Def.'s Br., Doc. No. 848, pp. 8-9].

Ms. Williams admitted in her deposition that she is aware of no facts which cause her to believe that Cintas discriminated against her in connection with her November 1999 application:

> Q:    Do you have any facts that you believe show that Cintas did not hire you
>       because of your gender?
> A:    No, ma'am.
> Q:    Do you have any documents that show that Cintas did not hire you
>       because of your gender?
> A:    No, ma'am.
> Q:    Do you have any facts that you believe show that Cintas discriminated
>       against any individual because of gender?
> A:    No, ma'am.
>             *****
> Q:    In 1999 or 2000, when you realized that you weren't going to be provided
>       a position by Cintas, did you feel than you had been discriminated against
>       at that time?
> A:    No.

[Williams Dep., pp.204-05].

 Cintas' Instant Motion for Summary Judgment

Following the close of discovery in this action, Cintas filed this motion for summary judgment [Doc. No. 848] on July 14, 2010. In this motion, Cintas argues that the EEOC's claims

on behalf of Ms. Williams fail on their merits as a matter of law.[4]  The EEOC opposes Cintas'

motion. [Doc. No. 898].  The matter is now ripe for decision by the Court.

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  The

party seeking summary judgment has the initial burden of informing the court of the basis for its

motion and identifying those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file together with the affidavits which demonstrate the absence of a genuine

issue of material fact.  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to

the nonmoving party who "must set forth specific facts showing that there is a genuine issue for

trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e))

## ANALYSIS

In its instant motion [Doc. No. 848], Cintas argues that the EEOC's suit on behalf of Ms.

Williams should be dismissed for three reasons: 1) because Ms. Williams was not "qualified" for

an SSR position and therefore cannot advance a *prima facie* case of discrimination; 2) because

the EEOC cannot demonstrate that Cintas' decisions not to hire Ms. Williams was a pretext for

---

[4] In addition to summary judgment motions attacking the merits of each of EEOC's thirteen individually-named plaintiffs, Cintas has also filed an omnibus motion attacking each of these named plaintiffs for procedural reasons - namely, the EEOC's failure to exhaust administrative remedies before filing this lawsuit. [*See* Doc. No. 836].  Notwithstanding the EEOC's arguments to the contrary [*see* EEOC's Br., Doc. No. 898, p.1, n1], the Court will address the merits of Ms. Williams' claims in this order, and will address the EEOC's alleged failure to exhaust administrative remedies on all named plaintiffs in a separate order.

gender discrimination; and 3) because Ms. Williams' prior bankruptcy filings preclude recovery by the EEOC in this matter. As the Court agrees with the first two of these arguments, dismissal of the EEOC's claim on behalf of Ms. Williams is ultimately proper.[5]

Section 706 permits the EEOC to sue a private employer on behalf of a "person or persons aggrieved" by an employer's unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1). The EEOC is "master of its own case" when bringing suits on behalf of aggrieved persons in a § 706 lawsuit, and may bring such suits with or without the consent of the aggrieved persons. *EEOC v. Waffle House*, 534 U.S. 279, 291-92 (2002). "Nonetheless, it is axiomatic that the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all the elements of their [discrimination] claims to obtain individual relief for them." *EEOC v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918, 929 (N.D. Iowa 2009).

Absent evidence of intentional discrimination, the EEOC must pursue § 706 claims brought on behalf of aggrieved individuals under the familiar burden-shifting scheme outlined in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998); *see also Serrano v. Cintas Corp.*, - - F.Supp.2d. - -, 2010 WL 522846 (E.D. Mich. Feb. 9, 2010). Under the *McDonnell-Douglas* framework, plaintiffs must first establish a *prima facie* case of discrimination. *McDonnell-Douglas*, 422 U.S. at 802. Once the plaintiff has established such a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer articulates such a legitimate, nondiscriminatory reason, the plaintiff bears the

---

[5] As dismissal of the EEOC's claim on behalf of Ms. Williams is warranted for the first two of these reasons, the Court declines to reach Cintas' alternate argument regarding Ms. Williams' prior bankruptcy filings.

burden of proving that the employer's articulated reason is a pretext for discrimination.  *Id*.  The

Court will consider each of these issues in turn.

I.  The EEOC's *Prima Facie* Case on Behalf of Ms. Williams.

To establish a *prima facie* case of discriminatory hiring practices, a plaintiff without

direct evidence of discrimination must show that 1) she belonged to a protected class; 2) she

applied and was qualified for a job for which the employer was seeking applicants; 3) despite her

qualifications, she was rejected; and 4) after her rejection, the position remained open and the

employer continued to seek applicants from persons of the plaintiff's qualifications.  *See*

*McDonnell-Douglas*, 411 U.S. at 802.  In this case, Cintas only disputes the second of these

requirements with respect to Ms. Williams: that she was not "qualified" for an SSR position due

to her lack of honesty in completing the application.  The Court agrees.

In *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003), the Sixth Circuit

elaborated on the requirements of the "qualified" element of a *prima facie* discrimination claim.

The *Wexler* Court held that, "[a]t the prima facie stage, a court should focus on a plaintiff's

*objective* qualifications to determine whether he or she is qualified for the relevant job."  *Wexler*,

317 F.3d at 575 (emphasis in original).  To meet this burden, plaintiffs need only "present[]

credible evidence that his or her qualifications are at least equivalent to the minimum objective

criteria required for employment in the relevant field."  *Id*. at 576.  The Sixth Circuit elaborates

as follows:

> Although the specific qualifications will vary depending on the job in question,
> the inquiry should focus on criteria such as the plaintiff's education, experience in
> the relevant industry, and demonstrating possession of the required skills.

*Wexler*, 317 F.3d at 576.

In support of its argument that Ms. Williams was not "qualified" for a position with Location 300, Cintas argues as follows:

> This Court has already found that "basic honesty was an objective qualification for a position with Cintas" and that a claimant who "had lied on his employment application, even though the application stated several times with clear language that complete and accurate information was required. . . was thus not qualified for the job sought and. . . failed to establish a *prima facie* case of discrimination." It is undisputed that Ms. Williams failed to demonstrate basic honesty on her application.

[Def.'s Br., Doc. No. 848, p.14, citing Doc. No. 511, p.5].

In opposition, the EEOC relies primarily upon the application's instructions, which state as follows:

> List your employment history starting with your current or most recent employer. *Account for all periods*, including military service, and periods of unemployment. If the space provided does not cover *at least 7 years*, attach additional sheets or complete resume.

[Def's Ex. 8-A, Doc. No. 848 (emphasis added)]. This, the EEOC argues, accounts for Ms. Williams' failure to list the Top Performance or Fantastic Sam's positions:

> The only reasonable conclusion to be drawn from Ms. Williams' testimony is that she worked at both Fantastic Sam's and Top Performance *before* she worked at Career Girl, and, because she worked at Career Girl starting in May 1992, she most likely worked for Fantastic Sam's and top Performance more than seven years before she applied at Cintas. . . The only reasonable conclusion is that Ms. Williams did not include these jobs because Cintas did not ask her to include them.

[EEOC's Br. Doc. No. 898, p.16 (emphasis in original)]. The Court disagrees. As Cintas argues in its reply brief:

> The EEOC argues at length that Ms. Williams did not leave crucial information off of her application, but cannot dispute the salient facts: she listed jobs on her resume dating back to high school, but failed to include a post-high school position where she was fired for excessive absences.

[Def.'s Reply Br., Doc. No. 915, p.4 (internal citations omitted)]. The Court agrees. On the facts presented, the Court finds Ms. Williams was not honest on her November 1999 application regarding the true nature of her prior employment, and was therefore not "qualified" for an SSR position for purposes of prong one of the *McDonnell-Douglas* inquiry. Summary judgment on the EEOC's *prima facie* claim is therefore proper, and the EEOC's arguments to the contrary are without merit. However, the Court will move on to consider the second prong of the *McDonnell-Douglas* inquiry - Cintas' legitimate, nondiscriminatory rationale for not hiring Ms. Williams.

II. <u>Cintas' Legitimate, Nondiscriminatory Rationale for Not Hiring Ms. Williams</u>.

In its motion for summary judgment, Cintas argues that it has "pointed to multiple legitimate, non-discriminatory reasons for why it did not hire Ms. Williams." [Def.'s Br., Doc. No. 848, p.14]. Specifically, Cintas' rationale regarding Ms. Williams' application is as follows:

> Her application was incomplete and revealed an unstable job history that did not include positions similar to that of the SSR position. For these reasons, Williams was an unlikely candidate to be interviewed for an SSR position. Moreover, two more-qualified candidates with more stable job histories and more relevant experience were interviewed and hired at about the same time that Ms. Williams applied to Cintas.

[Def.'s Br., Doc. No. 848, pp.14-15 (internal citations omitted)].

In its brief in opposition to Cintas' motion [Doc. No. 898], the EEOC's argument against Cintas' legitimate, nondiscriminatory rationale is as follows:

> Cintas completely fails to articulate any reason for not hiring Ms. Williams. Instead, when asked why Ms. Williams was not hired, Cintas' collective response has been simply "I don't know." Thus, any reason Cintas now presents - including the hiring of Michael Breault and Gregory Sayler - is nothing more than a post hoc justification with no basis in fact.

13

[EEOC's Br., Doc. No. 898, p.17 (footnoted material omitted)]. This argument, however, is unavailing. On the facts of this case, there is nothing wrong with Cintas' proffered argument advancing reasons why *it would not have hired Ms. Williams*. The EEOC offers no authority for its proposition that employers cannot offer rationales for why they would not have hired an applicant when no managerial employee specifically remembers reviewing that candidate's application. For purposes of this motion, therefore, the Court holds that Cintas' proffered rationales for not hiring Ms. Williams are legitimate and nondiscriminatory, and the EEOC's arguments to the contrary are without merit. Thus, the Court will consider the third and final prong of the *McDonnell-Douglas* inquiry - the EEOC's ability to demonstrate that Cintas' rationales for not hiring Ms. Williams were a pretext for gender discrimination.

III. The EEOC's Case for Pretext.

Cintas argues that the EEOC is unable to demonstrate that Cintas' asserted reasons for not hiring Ms. Williams are pretextual. [Def.'s Br., Doc. No. 848, p. 15]. The Court agrees, and therefore **GRANTS** Cintas' motion for summary judgment [Doc. No. 848].

The Sixth Circuit has held that pretext can be shown:

> . . . in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's decision.

*Chen v. Dow Chemical Corp.*, 580 F.3d 394, 400 (6th Cir. 2009), citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004). To carry its burden in opposing summary judgment, the EEOC must produce sufficient evidence from which a jury could reasonably reject Cintas' explanation of why it chose not to hire Ms. Williams. *Id*. Further, it is not sufficient for the EEOC to simply allege fact questions regarding the pretextual nature of Cintas' actions. "A

14

defendant's proffered reason cannot be proved to be a pretext 'unless it is shown *both* that the reason was false *and* that discrimination was the real reason.'" *Harris v. Metro. Gov't of Nashville and Davidson County, Tennessee*, 594 F.3d 476, 486 (6th Cir. 2010), citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (quotations and emphasis in original).

The EEOC relies primarily upon the following quote from a Sixth Circuit case to demonstrate pretext in this case:

> When the plaintiff offers "other probative evidence of discrimination, that evidence, taken together with the evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment."

[EEOC's Br., Doc. No. 898, p.18-19, quoting *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 392 (6th Cir. 2009), citing *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006)]. Here, the EEOC argues that Ms. Williams was more qualified for an SSR position than were Mr. Breault, or Mr. Sayler.[6] This, coupled with the statistical evidence proffered, the EEOC argues, is sufficient to rebut Cintas' rationale as pretextual. [EEOC's Br., Doc. No. 898, p.19]. The Court disagrees.

In *Risch*, the Sixth Circuit considered the claims of a female police officer who was allegedly passed over for a detective position with her police department because she was a woman. *Risch*, 581 F.3d at 385. The police department passed over her "in favor of two male applicants who had lower scores than Risch under the promotion system used by the

---

[6] The EEOC also argues that Mr. Juan Powers - whom, the EEOC contends, was hired at Location 300 between Mr. Breault and Mr. Sayler - should also be considered a comparable hire in this litigation. The EEOC, however, neglects to present *any* evidence regarding Mr. Powers, save for its statements that he "held three different jobs, none consecutively, during 1999," and that "he had spent only about three months as a 'shop manager.'" [EEOC's Br., Doc. No. 898, p.19]. Even considering Mr. Powers in this analysis, however, the result is the same - the EEOC is unable to demonstrate that Cintas' failure to hire Ms. Williams was a pretext for gender discrimination.

Department." *Id*. While the EEOC's quote from *Risch*, noted *supra*, is accurate, the "other

probative evidence" relied upon in *Risch* was explained as follows:

> The record also contains other evidence probative of pretext. The record
> indicates that male officers frequently made degrading comments regarding the
> capabilities of female officers, expressed the view that female officers would
> never be promoted to command positions, and made generally degrading remarks
> about women.

*Risch*, 581 F.3d at 392. These statements, the Sixth Circuit held, "evidence a discriminatory

atmosphere in the Department in which male officers frequently made derogatory or

discriminatory remarks about female officers." *Id*. at 393. Thus, the Sixth Circuit held, the

plaintiff in *Risch* had presented enough evidence to survive summary judgment:

> In light of the above evidence of a discriminatory atmosphere in the Department,
> the lack of women in command positions at the Department, and the evidence that
> Risch was arguably better qualified than the two male applicants promoted in
> 2005, we conclude that Risch has produced sufficient evidence to establish a
> genuine issue of material fact concerning whether the Department's proffered
> legitimate, nondiscriminatory reason was pretextual.

*Id*. at 394.

Here, by contrast, the EEOC's "other evidence" is limited to the statistical analysis of Dr.

Thomas DiPrete. [*See* EEOC's Ex. BB, Doc. No. 901]. In his expert report, Dr. DiPrete

examined all SSR hirings at Cintas locations in Michigan from 1999 to 2005, and found that, of

the 427 SSR hirings in the state of Michigan during that time, only 24 - or approximately 5.6% -

were female. [*See* DiPrete Report, EEOC's Ex. BB, Doc. No. 901, p.5; EEOC's Br., Doc. No.

898, p.2]. Based on Dr. DiPrete's analysis, the EEOC goes on to argue as follows:

> Comparing the estimated availability with the females hired, Dr. DiPrete noted a
> pattern of under hiring that was statistically significant beyond the threshold of
> two standard deviations. That is, it is highly unlikely that the pattern of under
> hiring females at Cintas occurred by chance alone.

[EEOC's Br., Doc. No. 898, p.3]. The Court, however, disagrees.

In *Bowdish v. Continental Accessories, Inc.*, 1992 WL 133022 (6th Cir. June 12, 1992), the Sixth Circuit rejected that plaintiff's attempts to use anecdotal evidence as evidence of discriminatory pretext. The *Bowdish* Court then held that anecdotal or statistical evidence, on its own, is insufficient to establish pretext:

> . . . such evidence, standing alone, still would not be sufficient to establish a case of individual disparate treatment. An individual plaintiff in an employment discrimination case must present some evidence that demonstrates that his or her individual discharge was the result of discrimination.

*Bowdish*, 1992 WL 133022, *5. Therefore, the EEOC's attempt in this litigation to demonstrate the pretextual nature of Cintas' failure to hire Ms. Williams by statistical or anecdotal evidence is insufficient. Dr. DiPrete admitted as much at his deposition, when he stated that he could not express any opinion in regards to why any individual named plaintiff may not have been hired. [*See* DiPrete Dep., Def.'s Ex. 3, Doc. No. 911, pp.67-69, 136-37].

Further, the EEOC's attempt to bootstrap a pretext finding based upon cobbled-together anecdotes from individuals commenting on other locations and times than Ms. Williams' application to Location 300, from statistics relating to the purported hiring patterns of other Cintas locations, and from the concurrently-filed cases of the other twelve named plaintiffs in this matter, each also fail to demonstrate pretext in this matter. "Other location" and "other time" hiring decisions are irrelevant to the question of whether Location 300 refused to hire Ms. Williams because of her gender. *See, e.g., Davis v. Hammonds*, 103 Fed. Appx. 51, 53 (8th Cir. 2004); *Shaw v. Monroe County*, 1996 WL 426483 (E.D. Mich. Apr. 18, 1996).

Finally, even if statistics alone *could* warrant consideration as evidence of pretext in this matter, the EEOC's statistics are merely "statistics without correlation," which "are indicative of

no meaningful inference or conclusion." *Shaw*, 1996 WL 426483, *8, quoting *Long v. City of Saginaw*, 911 F.2d 1192, 1201 (6th Cir. 1990). In *Long*, the Sixth Circuit rejected statistics which purported to show the availability of minority candidates for the Saginaw Police Department. In that case, the "available labor pool" used to calculate the statistics was held to be *too broad in scope*, because it included all individuals identified as working in "protective services" by the U.S. Census Bureau - a classification that included "bouncers, camp guards, school-crossing guards, meter maids. . . life guards, dog catchers, [and] bodyguards[,]" to name but a few examples. *Long*, 911 F.2d at 1200.

Here, by contrast, the EEOC's statistical analysis by Dr. DiPrete is even broader than the available labor pool utilized in *Long* - it includes census labor groupings such as human resource managers, computer support specialists, clergy, elementary and middle school teachers, artists, cooks, counter attendants and convenience store clerks, receptionists, and office clerks within its calculations of the available labor pool. While the EEOC vigorously disputes the propriety of basing the available labor pool for SSR positions on a single census occupation code - 913, relating to driver/sales workers and truck drivers [*see* Doc. No. 833, pp.12-17] - *clearly* the EEOC's own statistics draw from far too broad an available labor pool - and thus overly inflate female availability for SSR positions. For these reasons, the EEOC has not proffered the type of "other probative evidence" discussed in *Risch* as sufficient to survive summary judgment.

Again, save for the EEOC's statistical evidence proffered by Dr. DiPrete, the EEOC's sole evidence to demonstrate pretext on behalf of Ms. Williams is limited to the argument that Ms. Williams was more qualified for an SSR position than were Mr. Breault, Mr. Sayler, or Mr. Powers. [*See* EEOC's Br., Doc. No. 898, pp.19-20]. The Court disagrees. As the Sixth Circuit

commented in *Bender v. Hecht's Dept. Stores*, 455 F.3d 612 (6th Cir. 2006):

> Of course, acknowledging that evidence of comparative qualifications may be probative of pretext is a far cry from holding that such evidence is itself sufficient in all cases to raise a genuine issue of fact of discriminatory motive. For we need to balance the Supreme Court's statement in *Burdine* [that qualifications evidence may be probative of whether the employer's reasons are pretexts for discrimination] with the principles that employers are generally free to choose among qualified candidates, and that the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. . . a rejected applicant must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful []discrimination, not that other reasonable decision-makers might have retained the plaintiff.

*Bender*, 455 F.3d at 626 (internal citations and quotations omitted). The *Bender* Court went on to hold as follows:

> On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be *so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former*. In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of material fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual.

*Bender*, 455 F.3d at 627 (emphasis added).

The EEOC has failed to demonstrate that Ms. Williams' qualifications were "so significantly better" than those of Mr. Breault, Mr. Sayler, or Mr. Powers that "no reasonable employer would have chosen the latter applicant[s] over the former." *Bender*, 455 F.3d at 627. Indeed, the EEOC's brief [Doc. No. 898] does not even include a specific argument against Mr. Breault or Mr. Sayler.

True, when viewed in the light most favorable to the EEOC's claim on behalf of Ms. Williams, perhaps some of the elements of her relevant experience would have looked more

favorable than those of other applicants.  But to allow these type of side-by-side comparisons of Ms. Williams' qualifications to those of successful applicants - absent other probative evidence of discrimination - would, in the words of the *Bender* Court:

> . . . move this court from its proper role of preventing unlawful employment practices to the illegitimate role of acting as a "super personnel department," overseeing and second-guessing employers' business decisions.

*Bender*, 455 F.3d at 628, quoting *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983).  Even assuming, *arguendo*, that Ms. Williams would have appeared to be a more qualified candidate for a Cintas SSR position than Mr. Breault, Mr. Sayler or Mr. Powers, the Court holds that the EEOC has failed to demonstrate that Ms. Williams' qualifications were "so significantly better" than those of these other candidates that "no reasonable employer would have chosen the latter applicant[s] over the former."  *Bender*, 455 F.3d at 627.

Even assuming that the EEOC could show that Cintas' purportedly legitimate, nondiscriminatory reasons for not hiring Ms. Williams were pretextual, the EEOC has failed to offer any evidence raising a genuine issue of material fact that these reasons were a pretext for gender discrimination.  This evidentiary failure is fatal to the EEOC's claim on behalf of Ms. Williams in this litigation, and summary judgment in Cintas' favor is therefore proper.  The EEOC's arguments to the contrary are without merit.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Cintas' motion for summary judgment [Doc. No. 848], and **DISMISSES WITH PREJUDICE** the EEOC's claim brought on

behalf of Ms. Williams.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  September 3, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 3, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager