UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,  Case Nos. 04-40132; 06-12311

        Plaintiff- Intervenor  HONORABLE SEAN F. COX
        United States District Judge

v.

CINTAS CORPORATION,

        Defendant.
_____/

## OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT re: PATRICIA LEE WASHINGTON [Doc. No. 854]

On December 23, 2005, the Equal Employment Opportunity Commission ("EEOC") filed complaints as an intervening plaintiff in two cases that were consolidated for pretrial purposes - *Mirna E. Serrano, et al. v. Cintas Corp.* [Case No. 04-40132]; and *Blanca Nelly Avalos, et al. v. Cintas Corp.* [Case No. 06-12311] - alleging that Defendant Cintas Corporation ("Cintas") engaged in discriminatory hiring practices against female applicants in violation of 42 U.S.C. § 2000e-5, also known as a "Section 706" action.[1] In March of 2010, the EEOC identified Ms. Patricia Lee Washington ("Washington") as one of thirteen individuals upon whose behalf the EEOC brought this § 706 action. The matter is before the Court on Cintas' motion for summary judgment [Doc. No. 854] with respect to Ms. Washington's claims. The parties have fully briefed the issues, and the Court declines to hear oral argument pursuant to E.D. MICH. L.R.

---

[1] For ease of reference, all further citations to document numbers in this motion will refer to the 04-40132 case unless otherwise noted.

1

7.1(f)(2). For the reasons that follow, the Court **GRANTS** Cintas' motion [Doc. No. 854], and **DISMISSES WITH PREJUDICE** the EEOC's claim brought on behalf of Ms. Washington.

BACKGROUND

These causes of action have already suffered through a long, complex factual and procedural history - a history already discussed by the Court in previous orders. Therefore, only those facts of particular relevance to the instant motion are included below.

Background to this Litigation

The individual plaintiffs in the *Serrano* action filed their original charge of discrimination with the EEOC on or about April 7, 2000 - over a decade ago. [*See Serrano* Complaint, Doc. No. 1, ¶7]. Two years later, in June of 2002 - the EEOC issued a determination that reasonable cause existed to believe Cintas had engaged in discriminatory hiring practices. [*See* Doc. No. 1, Ex. A]. After two more years, in May of 2004, the EEOC formally declined to issue a right to sue letter - at which time the *Serrano* individual plaintiffs filed their lawsuit in this action. *Id*.

Roughly a year and a half after that - on December 23, 2005 - the EEOC filed suit as an intervening plaintiff in this action. [*See* Doc. No. 98]. The EEOC's first complaint brought actions under §§ 705 and 706. The EEOC also filed an amended complaint on August 20, 2009.

Since that time, the Court has denied both the *Serrano* and *Avalos* plaintiffs' motions for class action certification [*see* Doc. No. 627] - and the Sixth Circuit has denied motions for interlocutory appeal. [*See* Doc. Nos. 632, 633]. All individual plaintiffs in the *Avalos* matter have had their cases either dismissed, settled, or otherwise resolved [*see* Case No. 06-12311, Doc. No. 647], as is also the case with all plaintiffs in the *Serrano* matter save for Mirna E.

Serrano herself.[2] [*See* Doc. Nos. 712, 722, 732]. Practically speaking, therefore, all that remains of the *Serrano* and *Avalos* matters is the EEOC's § 706 claims against Cintas.

On October 21, 2009, Cintas filed its motion [Doc. No. 662] seeking to preclude the EEOC from proceeding under the "pattern or practice" framework announced by the U.S. Supreme Court in *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). In opposition to that motion, the EEOC argued that it was entitled to pursue a "pattern or practice" action under the *Teamsters* framework - traditionally reserved for § 707 actions - in this action brought under § 706. [*See* Doc. No. 664].

On February 9, 2010, the Court granted Cintas' motion [Doc. No. 662], holding that the EEOC was precluded from advancing its § 706 claims against Cintas under the "pattern or practice" framework announced by the U.S. Supreme Court in *Teamsters*, but instead must proceed under the framework in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). [*See* Doc. No. 723, p.21]. The Court denied the EEOC's motion to certify the issue for interlocutory appeal [*see* Doc. No. 752], and then subsequently denied the EEOC's second motion to amend the complaint to add a "pattern or practice" cause of action under § 707. [*See* Doc. No. 829].

The EEOC was required to disclose the names of all individuals upon whose behalf it was bringing this § 706 suit against Cintas no later than March 23, 2010. [*See* Doc. No. 735, p.16]. Though forty-six females were initially listed by the EEOC as having claims in this action, that number has since been pared to thirteen individual females - one of whom is Patricia Lee Washington, the subject of this motion - who applied for an SSR position with Cintas at its

---

[2] Cintas' motion to dismiss the claims of Ms. Serrano [Doc. No. 881] is currently pending before this Court, which is unopposed by Ms. Serrano [Doc. No. 881, p.4] - though the EEOC opposes the Court granting the motion. [*See* Doc. No. 884].

3

Macomb, Michigan ("Location 354") facility in September of 2001.

### The SSR Position and SSR Hiring Procedures at Location 354

Cintas' SSR position is a sales and route driver position. Generally speaking, the position requires driving a truck, selling Cintas' goods and services, and servicing current Cintas accounts for laundry, uniforms and linen products. As the Court previously held in the *Avalos* matter:

> SSRs drive trucks and deliver clean uniforms, mats and supplies to specific customers on their assigned routes. . . SSRs must insure that their trucks are properly loaded with the correct uniforms and products to fulfill the needs of specific customers. As they visit each account, they are tasked with increasing sales and maintaining customer satisfaction at the highest possible level.

[Case No. 06-12311, Doc. No. 186, pp.5-6].

Though policies and procedures for each Cintas location are set by Cintas' corporate headquarters, each Cintas location engages in a decentralized hiring process for SSR applicants - in other words, each Cintas location hires its own SSRs. For Location 354, the hiring process was generally overseen by that facility's Human Resource Manger - whom at the time of Ms. Washington's application was Ms. Kristy Gordley.

The hiring process at the time when Ms. Washington applied generally consisted of application screening and, if the screening manager advanced the candidate, a number of interviews. [Gordley Dep., Def.'s Ex. 5, Doc. No. 854, pp.23, 29]. If a candidate was advanced beyond the initial resume screening, they would usually be given an initial screening interview with a human resources employee at Location 354. *Id*. at 23, 28. Next, continuing candidates would normally have a more in-depth interview - conducted by one of Location 354's service managers. *Id*. at 24.

If a candidate advanced beyond that point, they would participate in a "ride along"

4

experience on a shift with a current SSR to see the position first hand. *Id*. at 24. After the ride along, a final interview with the General Manager - who at that time was Mr. David Perun - followed by an information exchange between the managers who had interviewed the candidate. *Id*. at 24-25. The ultimate hiring decision was then made by Mr. Perun. [*See* Perun Dep., Def.'s Ex. 3, Doc. No. 854, pp.66-67].

The initial screening of applications was generally done by human resources personnel. [Gordley Dep., p.23]. Mr. Perun advised HR that criteria such as "a high school diploma or GED equivalent, a clean driving record, no felony convictions, . . . things like solid work history, employment continuance, no gaps between employment" should be looked upon favorably when screening applications. [Perun Dep., p.28]. As far as work history was concerned, Mr. Perun also looked for candidates who were not "job hopper[s]," demonstrated attention to detail, and had previous employment that was full-time, physical in nature, involved the ability to negotiate, required the candidate to attend to customer concerns, and demonstrated an ability to multitask. *Id*. at 32-33. Ms. Gordley likewise favored applicants with a steady job history, as that factor gave some assurance that the applicants would remain in the SSR position after Cintas had invested time and money in their training. [Gordley Decl., Def.'s Ex. 6, Doc. No. 854, ¶16].

At all times relevant to this litigation, Cintas had in effect a company-wide policy prohibiting unlawful discrimination on the basis of gender in hiring and other employment-related actions. [*See* Case No. 06-12311, Doc. No. 632, pp.3-4].

Patricia Lee Washington

Ms. Washington was not involved in this litigation until the EEOC sent her a solicitation letter in October of 2009. [Washington Dep., Def.'s Ex. 4, Doc. No. 854, p.28]. After seeing a

job posting on a career website - called Michigan Works! - on September 4, 2001, Ms. Washington submitted an online resume to Location 354 for an SSR position. *Id*. at 13. Ms. Washington did not, however, even remember having submitted this application - nor did she even remember what business Cintas was involved in - when the EEOC sent her the solicitation letter in October 2009:

> Q: You, at the time [of receiving the EEOC letter], didn't remember that you had applied to Cintas?
> A: Or the name. "Cintas? What is a Cintas?" I didn't remember.

[Washington Dep., p.23].

The resume that Ms. Washington sent to Location 354 in September of 2001 [Def.'s Ex. 6-A, Doc. No. 854] represented that her last employment had been with Washington's Trucking in Phoenix, Arizona, and had ended in June of 2001 - approximately three months before her application to Location 354. Further, her resume showed that in the four years prior to her applying with Cintas, Ms. Washington had held four separate jobs: with Jim Fresard Pontiac/Buick as a sales and leasing consultant from September 1997 to November 1998; with Schwans as a route manager from November 1998 to April 1999; a two-year period of unemployment from April 1999 to January 2001; a position with CRST as an over-the-road truck driver from January 2001 to April 2001; and with Washington's Trucking as an over-the-road truck driver from April to June of 2001. *Id*.

In reality, however, Ms. Washington was actually employed with CC Midwest at the time she submitted her resume to Location 354 - which, of course, was not mentioned on her resume:

> Q: Now, I understand that when you applied at Cintas that you actually had been working at CC Midwest for about four months. Do you agree with that?

6

>   A: Okay. It's on here, yes.

[Washington Dep., p.97]. Further, though the resume Ms. Washington submitted to Location 354 included only five positions accounting for her employment history from 1992 forward, in reality, Ms. Washington had been through many more positions in that time period:

>   Q: Would you agree that you have held many jobs over-the-course of the last fifteen years?
>   A: Yes, I have.
>        *****
>   Q: If I told you that based upon the records that we've received, what we've discussed here today, *that you have worked at approximately 20 jobs since 1999*, would you disagree with that statement?
>   A: *No*.

*Id*. at pp.150-51 (emphasis added).

Ultimately, Location 354 did not interview Ms. Washington for an SSR position as a result of her September 2001 resume. Further, no one at Cintas has testified that they recall Ms. Washington's resume, and there is no evidence that her resume was even reviewed by anyone at Location 354. [*See* Def.'s Br., Doc. No. 854, p.7]. Ms. Washington is unaware of any facts that would lead her to believe that Cintas discriminated against her on the basis of her gender:

>   Q: Based on your deposition testimony today and your review of documents, do you still believe that Cintas discriminated against you on the basis of your gender?
>        *****
>   A: I don't know if they did.

[Washington Dep., p.163].

Cintas argues that two other, more qualified, SSR candidates applied at Location 354 around the same time as Ms. Washington submitted her resume in September of 2001. Mr. David Lowe applied to Location 354 on August 25, 2001 - roughly two weeks before Ms.

Washington applied - and was hired on September 10, 2001. [Gordley Decl., ¶14; *see also* Def.'s Ex. 6-B, Doc. No. 854]. Mr. Lowe had served in the United States Marine Corps for approximately four and a half years, attaining the rank of Corporal - which, to Cintas, suggested that he possessed leadership skills, the ability to work in stressful situations, commitment, and dedication. *Id*. at ¶15. Further, Mr. Lowe had held the same employment position - besides the military - in the five years prior to his application with Location 354. *Id*. at ¶16.

Similarly, Mr. Robert Koss applied to Location 354 on September 13, 2001 - shortly after Ms. Washington applied on September 4, 2001 - and was hired on October 1, 2001. *Id*. at ¶17, *see also* Def.'s Ex. 6-C, Doc. No. 854. In the eleven years prior to his application, Mr. Koss had been consistently employed at all times, and had only held three different positions in that time period. *Id*. Mr. Koss also had ownership and management experience in three of his four most recent positions - suggesting to Cintas that he would be able to manage an SSR route and deal with customers. *Id*. at ¶18.

<u>Cintas' Instant Motion for Summary Judgment</u>

Following the close of discovery in this action, Cintas filed this motion for summary judgment [Doc. No. 854] on July 14, 2010. In this motion, Cintas argues that the EEOC's claims on behalf of Ms. Washington fail on their merits as a matter of law.[3] The EEOC opposes Cintas' motion. [Doc. No. 895]. The matter is now ripe for decision by the Court.

---

[3] In addition to summary judgment motions attacking the merits of each of EEOC's thirteen individually-named plaintiffs, Cintas has also filed an omnibus motion attacking each of these named plaintiffs for procedural reasons - namely, the EEOC's failure to exhaust administrative remedies before filing this lawsuit. [*See* Doc. No. 836]. Notwithstanding the EEOC's arguments to the contrary [*see* EEOC's Br., Doc. No. 895, n1], the Court will address the merits of Ms. Washington's claim in this order, and will address the EEOC's alleged failure to exhaust administrative remedies on all named plaintiffs in a separate order.

STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

ANALYSIS

In its instant motion [Doc. No. 854], Cintas argues that the EEOC's suit on behalf of Ms. Washington should be dismissed for three reasons: 1) because Ms. Washington was not "qualified" for an SSR position and therefore cannot advance a *prima facie* case of discrimination; 2) because the EEOC cannot demonstrate that Cintas' decision not to hire Ms. Washington was a pretext for gender discrimination; and 3) because Ms. Washington's prior bankruptcy filing precludes recovery by the EEOC in this matter. As the Court agrees with the first two of these arguments, dismissal of the EEOC's claim on behalf of Ms. Washington is therefore proper.[4]

Section 706 permits the EEOC to sue a private employer on behalf of a "person or

---

[4] As dismissal of the EEOC's claims on behalf of Ms. Washington is warranted on *McDonnell-Douglas* grounds, the Court declines to reach Cintas' alternate argument regarding Ms. Washington's prior bankruptcy filing.

9

persons aggrieved" by an employer's unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1). The EEOC is "master of its own case" when bringing suits on behalf of aggrieved persons in a § 706 lawsuit, and may bring such suits with or without the consent of the aggrieved persons. *EEOC v. Waffle House*, 534 U.S. 279, 291-92 (2002). "Nonetheless, it is axiomatic that the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all the elements of their [discrimination] claims to obtain individual relief for them." *EEOC v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918, 929 (N.D. Iowa 2009).

Absent evidence of intentional discrimination, the EEOC must pursue § 706 claims brought on behalf of aggrieved individuals under the familiar burden-shifting scheme outlined in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998); *see also Serrano v. Cintas Corp.*, - - F.Supp.2d. - -, 2010 WL 522846 (E.D. Mich. Feb. 9, 2010). Under the *McDonnell-Douglas* framework, plaintiffs must first establish a *prima facie* case of discrimination. *McDonnell-Douglas*, 422 U.S. at 802. Once the plaintiff has established such a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the employer articulates such a legitimate, nondiscriminatory reason, the plaintiff bears the burden of proving that the employer's articulated reason is a pretext for discrimination. *Id*. The Court will consider each of these issues in turn.

I. The EEOC's *Prima Facie* Case on Behalf of Ms. Washington.

To establish a *prima facie* case of discriminatory hiring practices, a plaintiff without direct evidence of discrimination must show that 1) she belonged to a protected class; 2) she applied and was qualified for a job for which the employer was seeking applicants; 3) despite her

qualifications, she was rejected; and 4) after her rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. *See McDonnell-Douglas*, 411 U.S. at 802. In this case, Cintas only disputes the second of these requirements with respect to Ms. Washington's application: that Ms. Washington was not "qualified" for an SSR position due to her failure to honestly set forth her prior employment history in her resume. The Court agrees.

In *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003), the Sixth Circuit elaborated on the requirements of the "qualified" element of a *prima facie* discrimination claim. The *Wexler* Court held that, "[a]t the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler*, 317 F.3d at 575 (emphasis in original). To meet this burden, plaintiffs need only "present[] credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id*. at 576. The Sixth Circuit elaborates as follows:

> Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrating possession of the required skills.

*Wexler*, 317 F.3d at 576.

In support of its argument that Ms. Washington was not "qualified" for a position with Location 354, Cintas argues as follows:

> . . . Ms. Washington's failure to list a current and former employer on her resume indicates that she did not possess the basic honesty or attention to detail that is required for SSR candidates. This Court has already found that "basic honesty was an objective qualification for a position with Cintas[,]" and that a claimant who was dishonest in her application materials "was [] not qualified for the job

11

sought, and . . . failed to establish a *prima facie* case of discrimination." It is undisputed that Ms. Washington's application materials were incomplete and inaccurate.

[Def.'s Br., Doc. No. 854, pp.12-13, citing Doc. No. 511, p.4]. The Court agrees. While the EEOC generally argues that "[t]he question at the prima facie stage is whether the claimant possesses the minimum objective qualifications for the position" [EEOC's Br., Doc. No. 895, p7], this Court has already determined basic honesty to be an objective requirement of SSR applicants. [*See* Doc. No. 511, p.4]. The EEOC's brief does not attempt to explain Ms. Washington's failure to include her *currently-held* position with CC Midwest - a position Ms. Washington admitted she had held for four months prior to the submission of her resume.

On the facts presented, the Court finds Ms. Washington not "qualified" for an SSR position for purposes of prong one of the *McDonnell-Douglas* inquiry, and the EEOC's arguments to the contrary are without merit. However, the Court will nonetheless move on to consider the second prong of the *McDonnell-Douglas* inquiry - Cintas' legitimate, nondiscriminatory rationale for not hiring Ms. Washington.

II. <u>Cintas' Legitimate, Nondiscriminatory Rationale for Not Hiring Ms. Washington</u>.

In its motion for summary judgment, Cintas argues that it has pointed to legitimate, nondiscriminatory reasons for why it did not hire Ms. Washington. Specifically, Cintas' rationale regarding Ms. Washington's September 2001 application is as follows:

> Even if the EEOC could make a *prima facie* showing of discrimination, Cintas has pointed to multiple legitimate, non-discriminatory reasons for why it did not hire Ms. Washington. She had held each of her last three jobs for less than six months and had substantial periods of unemployment. She also had left a similar route sales position after only five months. Those facts indicate that Ms. Washington was unlikely to stay with Cintas for an extended period of time, and was an unlikely candidate to succeed as an SSR. Moreover, two more qualified

candidates - with more stable job histories, more relevant experience and with the military experience that Location 354 hiring managers prized - were interviewed and hired at about the same time that Ms. Washington applied.

[Def.'s Br., Doc. No. 854, p.13 (internal citations omitted)].

In its brief in opposition to Cintas' motion [Doc. No. 895], the EEOC's argument against Cintas' legitimate, nondiscriminatory rationale is as follows:

> Cintas has no evidence to establish why it did not hire Ms. Washington. To the contrary, the company forthrightly admits that no Cintas employee has testified that he or she recalls Ms. Washington's application.

[EEOC's Br., Doc. No. 895, p.11 (footnoted material and internal citation omitted)].

This argument, however, is unavailing. On the facts of this case, there is nothing wrong with Cintas's proffered argument advancing reasons why *it would not have interviewed Ms. Washington*. The EEOC offers no authority for its proposition that employers cannot offer rationales for why they would not have hired an applicant when no managerial employee specifically remembers reviewing that candidate's application.

For purposes of this motion, therefore, the Court holds that Cintas' proffered rationale for not hiring Ms. Washington is legitimate and nondiscriminatory, and the EEOC's arguments to the contrary are without merit. Thus, the Court will consider the third and final prong of the *McDonnell-Douglas* inquiry - the EEOC's ability to demonstrate that Cintas' rationale for not hiring Ms. Washington was a pretext for gender discrimination.

III.  The EEOC's Case for Pretext.

Cintas argues that the EEOC is unable to demonstrate that Cintas' asserted reason for not hiring Ms. Washington is pretextual. [Def.'s Br., Doc. No. 854, p.14]. The Court agrees, and therefore **GRANTS** Cintas' motion for summary judgment [Doc. No. 854].

13

The Sixth Circuit has held that pretext can be shown:

> . . . in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's decision.

*Chen v. Dow Chemical Corp.*, 580 F.3d 394, 400 (6th Cir. 2009), citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004). To carry its burden in opposing summary judgment, the EEOC must produce sufficient evidence from which a jury could reasonably reject Cintas' explanation of why it chose not to hire Ms. Washington. *Id*. Further, it is not sufficient for the EEOC to simply allege fact questions regarding the pretextual nature of Cintas' actions. "A defendant's proffered reason cannot be proved to be a pretext 'unless it is shown *both* that the reason was false *and* that discrimination was the real reason.'" *Harris v. Metro. Gov't of Nashville and Davidson County, Tennessee*, 594 F.3d 476, 486 (6th Cir. 2010), citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (quotations and emphasis in original).

The EEOC relies primarily upon statistical and anecdotal evidence of discrimination in an attempt to rebut as pretextual Cintas' decision not to hire Ms. Washington. Relevant to this case, the Sixth Circuit has held that when a plaintiff offers:

> . . . other probative evidence of discrimination, that evidence, taken together with the evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment.

*Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 392 (6th Cir. 2009), citing *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006).

Here, the EEOC generally argues that Ms. Washington's qualifications for an SSR position with Location 354 were better than those of either Mr. Lowe or Mr. Koss. [EEOC's Br.,

Doc. No. 895, pp.13-14]. This, coupled with the statistical evidence proffered, the EEOC argues, is sufficient to rebut Cintas' rationale as pretextual. *Id*. at 12-15. The Court disagrees.

In *Risch*, the Sixth Circuit considered the claims of a female police officer who was allegedly passed over for a detective position with her police department because she was a woman. *Risch*, 581 F.3d at 385. The police department passed over her "in favor of two male applicants who had lower scores than Risch under the promotion system used by the Department." *Id*. The "other probative evidence" relied upon in *Risch* was explained as follows:

> The record also contains other evidence probative of pretext. The record indicates that male officers frequently made degrading comments regarding the capabilities of female officers, expressed the view that female officers would never be promoted to command positions, and made generally degrading remarks about women.

*Risch*, 581 F.3d at 392. These statements, the Sixth Circuit held, "evidence a discriminatory atmosphere in the Department in which male officers frequently made derogatory or discriminatory remarks about female officers." *Id*. at 393. Thus, the Sixth Circuit held, the plaintiff in *Risch* had presented enough evidence to survive summary judgment:

> In light of the above evidence of a discriminatory atmosphere in the Department, the lack of women in command positions at the Department, and the evidence that Risch was arguably better qualified than the two male applicants promoted in 2005, we conclude that Risch has produced sufficient evidence to establish a genuine issue of material fact concerning whether the Department's proffered legitimate, nondiscriminatory reason was pretextual.

*Id*. at 394.

Here, by contrast, the EEOC's "other evidence" is limited to the statistical analysis of Dr. Thomas DiPrete. [*See* EEOC's Ex. BB, Doc. No. 901]. In his expert report, Dr. DiPrete examined all SSR hirings at Cintas locations in Michigan from 1999 to 2005, and found that, of

15

the 427 SSR hirings in the state of Michigan during that time, only 24 - or approximately 5.6% - were female. [*See* DiPrete Report, EEOC's Ex. BB, Doc. No. 901, p.5; EEOC's Br., Doc. No. 895, p.1]. Based on Dr. DiPrete's analysis, the EEOC goes on to argue as follows:

> Comparing female hires with different estimates of female availability, Dr. DiPrete noted a pattern of underhiring that was statistically significant beyond the threshold of two standard deviations. That is, it is highly unlikely that the pattern of underhiring females at Cintas occurred by chance alone.

[EEOC's Br., Doc. No. 895, pp.2-3]. The Court, however, disagrees.

In *Bowdish v. Continental Accessories, Inc.*, 1992 WL 133022 (6th Cir. June 12, 1992), the Sixth Circuit rejected that plaintiff's attempts to use anecdotal evidence as evidence of discriminatory pretext. The *Bowdish* Court held that anecdotal or statistical evidence, on its own, is insufficient to establish pretext:

> . . . such evidence, standing alone, still would not be sufficient to establish a case of individual disparate treatment. An individual plaintiff in an employment discrimination case must present some evidence that demonstrates that his or her individual discharge was the result of discrimination.

*Bowdish*, 1992 WL 133022, *5. Therefore, the EEOC's attempt in this litigation to demonstrate the pretextual nature of Cintas' failure to hire Ms. Washington by statistical or anecdotal evidence is insufficient. Dr. DiPrete admitted as much at his deposition, when he stated that he could not express any opinion in regards to why any individual named plaintiff may not have been hired. [*See* DiPrete Dep., Def.'s Ex. 3, Doc. No. 911, pp.67-69, 136-37].

Further, the EEOC's attempt to bootstrap a pretext finding based upon cobbled-together anecdotes from individuals commenting on other locations and times than Ms. Washington's application to Location 354, from statistics relating to the purported hiring patterns of other Cintas locations, and from the concurrently-filed cases of the other twelve named plaintiffs in

16

this matter, each also fail to demonstrate pretext in this matter. "Other location" and "other time" hiring decisions are irrelevant on the question of whether Location 354 refused to hire Ms. Washington because of her gender. *See, e.g., Davis v. Hammonds*, 103 Fed. Appx. 51, 53 (8th Cir. 2004); *Shaw v. Monroe County*, 1996 WL 426483 (E.D. Mich. Apr. 18, 1996).

Finally, even if statistics alone *could* warrant consideration as evidence of pretext in this matter, the EEOC's statistics are merely "statistics without correlation," which "are indicative of no meaningful inference or conclusion." *Shaw*, 1996 WL 426483, *8, quoting *Long v. City of Saginaw*, 911 F.2d 1192, 1201 (6th Cir. 1990). In *Long*, the Sixth Circuit rejected statistics which purported to show the availability of minority candidates for the Saginaw Police Department. In that case, the "available labor pool" used to calculate the statistics was held to be *too broad in scope*, because it included all individuals identified as working in "protective services" by the U.S. Census Bureau - a classification that included "bouncers, camp guards, school-crossing guards, meter maids. . . life guards, dog catchers, [and] bodyguards[,]" to name but a few examples. *Long*, 911 F.2d at 1200.

Here, by contrast, the EEOC's statistical analysis by Dr. DiPrete is even broader than the available labor pool utilized in *Long* - it includes census labor groupings such as human resource managers, computer support specialists, clergy, elementary and middle school teachers, artists, cooks, counter attendants and convenience store clerks, receptionists, and office clerks within its calculations of the available labor pool. While the EEOC vigorously disputes the propriety of basing the available labor pool for SSR positions on a single census occupation code - 913, relating to driver/sales workers and truck drivers [*see* Doc. No. 833, pp.12-17] - *clearly* the EEOC's own statistics draw from far too broad an available labor pool - and thus overly inflate

17

female availability for SSR positions. For these reasons, the EEOC has not proffered the type of "other probative evidence" discussed in *Risch* as sufficient to survive summary judgment.

Again, save for the EEOC's statistical evidence proffered by Dr. DiPrete, the EEOC's sole evidence to demonstrate pretext on behalf of Ms. Washington is limited to the argument that she was more qualified than other individuals who received interviews - and, ultimately, were hired as SSRs - at Location 354:

> In the weeks following Washington's application, Cintas hired Davie Lowe and Robert Koss at [L]ocation 354. Other than service in the Marine Corps, the only work experience that Mr. Lowe listed on his application was four months as a security officer. Ms. Washington had, therefore, a more stable work history than Mr. Lowe. Further, she had not only driving experience, but also route sales experience, which neither of the men hired had. . . . She was, therefore, more qualified than the men hired.

[EEOC's Br., Doc. No. 895, pp.13-14 (internal citations and parentheticals omitted)]. While potentially true, the Court disagrees with the EEOC's overall argument. As the Sixth Circuit commented in *Bender v. Hecht's Dept. Stores*, 455 F.3d 612 (6th Cir. 2006):

> Of course, acknowledging that evidence of comparative qualifications may be probative of pretext is a far cry from holding that such evidence is itself sufficient in all cases to raise a genuine issue of fact of discriminatory motive. For we need to balance the Supreme Court's statement in *Burdine* [that qualifications evidence may be probative of whether the employer's reasons are pretexts for discrimination] with the principles that employers are generally free to choose among qualified candidates, and that the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. . . a rejected applicant must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful []discrimination, not that other reasonable decision-makers might have retained the plaintiff.

*Bender*, 455 F.3d at 626 (internal citations and quotations omitted). The *Bender* Court went on to hold as follows:

> On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be *so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former*. In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of material fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual.

*Bender*, 455 F.3d at 627 (emphasis added).

The EEOC has failed to demonstrate that Ms. Washington's qualifications were "so significantly better" than those of any applicant hired instead of her that "no reasonable employer would have chosen the latter applicant[s] over the former." *Bender*, 455 F.3d at 627. True, when viewed in the light most favorable to the EEOC's claims on behalf of Ms. Washington, perhaps many of the elements of her relevant experience would have looked more favorable than those of other applicants. But to allow these type of side-by-side comparisons of Ms. Washington's qualifications to those of successful applicants - absent other probative evidence of discrimination - would, in the words of the *Bender* Court:

> . . . move this court from its proper role of preventing unlawful employment practices to the illegitimate role of acting as a "super personnel department," overseeing and second-guessing employers' business decisions.

*Bender*, 455 F.3d at 628, quoting *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983).

Even assuming that the EEOC could show that Cintas' purportedly legitimate, nondiscriminatory reason for not hiring Ms. Washington was pretextual, the EEOC has failed to offer any evidence raising a genuine issue of material fact that this reason was a pretext for gender discrimination. This evidentiary failure is fatal to the EEOC's claim on behalf of Ms.

Washington in this litigation, and summary judgment in Cintas' favor is therefore proper. The EEOC's arguments to the contrary are without merit.

CONCLUSION

For the reasons explained above, the Court **GRANTS** Cintas' motion for summary judgment [Doc. No. 854], and **DISMISSES WITH PREJUDICE** the EEOC's claim brought on behalf of Ms. Washington.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 3, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 3, 2010, by electronic and/or ordinary mail.

s/Jennifer Hernandez
Case Manager