UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                              Case Nos. 04-40132; 06-12311

      Plaintiff- Intervenor                         HONORABLE SEAN F. COX
                                                            United States District Judge

v.

CINTAS CORPORATION,

      Defendant.
_____/

## OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT re: ROBIN LEACH [Doc. No. 862]

On December 23, 2005, the Equal Employment Opportunity Commission ("EEOC") filed complaints as an intervening plaintiff in two cases that were consolidated for pretrial purposes - *Mirna E. Serrano, et al. v. Cintas Corp.* [Case No. 04-40132]; and *Blanca Nelly Avalos, et al. v. Cintas Corp.* [Case No. 06-12311] - alleging that Defendant Cintas Corporation ("Cintas") engaged in discriminatory hiring practices against female applicants in violation of 42 U.S.C. § 2000e-5, also known as a "Section 706" action.[1] In March of 2010, the EEOC identified Ms. Robin Leach ("Leach") as one of thirteen individuals upon whose behalf the EEOC brought this § 706 action. The matter is before the Court on Cintas' motion for summary judgment [Doc. No. 862] with respect to Ms. Leach's claims. The parties have fully briefed the issues, and the Court declines to hear oral argument pursuant to E.D. MICH. L.R. 7.1(f)(2). For the reasons that follow,

---

[1] For ease of reference, all further citations to document numbers in this motion will refer to the 04-40132 case unless otherwise noted.

1

the Court **GRANTS** Cintas' motion [Doc. No. 862], and **DISMISSES WITH PREJUDICE** the EEOC's claim brought on behalf of Ms. Leach.

BACKGROUND

These causes of action have already suffered through a long, complex factual and procedural history - a history already discussed by the Court in previous orders. Therefore, only those facts of particular relevance to the instant motion are included below.

Background to this Litigation

The individual plaintiffs in the *Serrano* action filed their original charge of discrimination with the EEOC on or about April 7, 2000 - over a decade ago. [*See Serrano* Complaint, Doc. No. 1, ¶7]. Two years later, in June of 2002 - the EEOC issued a determination that reasonable cause existed to believe Cintas had engaged in discriminatory hiring practices. [*See* Doc. No. 1, Ex. A]. After two more years, in May of 2004, the EEOC formally declined to issue a right to sue letter - at which time the *Serrano* individual plaintiffs filed their lawsuit in this action. *Id*.

Roughly a year and a half after that - on December 23, 2005 - the EEOC filed suit as an intervening plaintiff in this action. [*See* Doc. No. 98]. The EEOC's first complaint brought actions under §§ 705 and 706. The EEOC also filed an amended complaint on August 20, 2009.

Since that time, the Court has denied both the *Serrano* and *Avalos* plaintiffs' motions for class-action certification [*see* Doc. No. 627] - and the Sixth Circuit has denied motions for interlocutory appeal. [*See* Doc. Nos. 632, 633]. All individual plaintiffs in the *Avalos* matter have had their cases either dismissed, settled, or otherwise resolved [*see* Case No. 06-12311, Doc. No. 647], as is also the case with all plaintiffs in the *Serrano* matter save for Mirna E.

Serrano herself.[2] [*See* Doc. Nos. 712, 722, 732]. Practically speaking, therefore, all that remains of the *Serrano* and *Avalos* matters is the EEOC's § 706 claims against Cintas.

On October 21, 2009, Cintas filed its motion [Doc. No. 662] seeking to preclude the EEOC from proceeding under the "pattern or practice" framework announced by the U.S. Supreme Court in *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). In opposition to that motion, the EEOC argued that it was entitled to pursue a "pattern or practice" action under the *Teamsters* framework - traditionally reserved for § 707 actions - in this action brought under § 706. [*See* Doc. No. 664].

On February 9, 2010, the Court granted Cintas' motion [Doc. No. 662], holding that the EEOC was precluded from advancing its § 706 claims against Cintas under the "pattern or practice" framework announced by the U.S. Supreme Court in *Teamsters*, but instead must proceed under the framework in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). [*See* Doc. No. 723, p.21]. The Court denied the EEOC's motion to certify the issue for interlocutory appeal [*see* Doc. No. 752], and then subsequently denied the EEOC's second motion to amend the complaint to add a "pattern or practice" cause of action under § 707. [*See* Doc. No. 829].

The EEOC was required to disclose the names of all individuals upon whose behalf it was bringing this § 706 suit against Cintas no later than March 23, 2010. [*See* Doc. No. 735, p.16]. Though forty-six females were initially listed by the EEOC as having claims in this action, that number has since been pared to thirteen individual females - one of whom is Robin Leach, the subject of this motion - who applied for an SSR position with Cintas at its Lansing, Michigan

---

[2] Cintas' motion to dismiss the claims of Ms. Serrano [Doc. No. 881] is currently pending before this Court, which is unopposed by Ms. Serrano [Doc. No. 881, p.4] - though the EEOC opposes the Court granting the motion. [*See* Doc. No. 884].

facility ("Location 725") in April of 2004.

### The SSR Position and SSR Hiring Procedures at Location 725

Cintas' SSR position is a sales and route driver position. Generally speaking, the position requires driving a truck, selling Cintas' goods and services, and servicing current Cintas accounts for laundry, uniforms and linen products. As the Court previously held in the *Avalos* matter:

> SSRs drive trucks and deliver clean uniforms, mats and supplies to specific customers on their assigned routes. . . SSRs must insure that their trucks are properly loaded with the correct uniforms and products to fulfill the needs of specific customers. As they visit each account, they are tasked with increasing sales and maintaining customer satisfaction at the highest possible level.

[Case No. 06-12311, Doc. No. 186, pp.5-6].

Though policies and procedures for each Cintas location are set by Cintas' corporate headquarters, each Cintas location engages in a decentralized hiring process for SSR applicants - in other words, each Cintas location hires its own SSRs. For Location 725, the application process was overseen by that facility's human resources department. According to Location 725's branch manager, Mr. Matt Hoch, it was not uncommon for Location 725 to review only a fraction of the applications submitted at any given time, either because there were few or no open positions or because other candidates were already progressing through the application process - making it unnecessary to review the remaining submitted applications. [Hoch Decl., Def.'s Ex. 5, Doc. No. 862, ¶6].

Compared to other Cintas locations at issue in this litigation, the hiring needs at Location 725 were relatively low - in the EEOC's response brief [Doc. No. 891, p.2], the EEOC discusses

4

the number of SSRs hired at several Michigan locations between 1999 and 2002.[3] While some locations hired quite a few SSRs in that time period by comparison - Westland hired 53 SSRs in that period, and Madison Heights and West Grand Rapids hired 47 SSRs each, for example - Location 725 only hired 4 applicants in that time period - none of whom were women. *Id*. Location 725 received a high volume of applications compared to its relatively low availability of open positions. Fifty people besides Ms. Leach submitted SSR applications to Location 725 in April 2004. [Hoch Dec., ¶13]. Location 725 hired just two of these candidates. *Id*.

When Human Resources at Location 725 determined that a candidate should be advanced after screening their application, HR would typically call the applicant to schedule a screening interview. *Id*. at ¶7. Candidates were invited to the facility for this screening interview, at which time they would usually also be asked to take a pre-employment test. *Id*. Successful applicants would then be asked to participate in one or more in-depth interviews with Location 725's service managers. *Id*.

Candidates advancing beyond these in-depth interviews were invited to participate in a "route-ride" - a shift working with another current SSR - so that the applicant could see the job first hand. *Id*. After this, the General Manager - Mr. Hoch - would typically conduct a final interview with the applicant in order to debrief them about their experience on the route ride. *Id*. Following this final interview, those managers and human resources staff involved thus far in the hiring process would meet and exchange information, after which the General Manager would make a final hiring decision. *Id*. Offers would then be made to successful SSR applicants,

---

[3] The EEOC's statistical expert - Dr. Thomas DiPrete - does not discuss Cintas' hiring after the year 2002 in his report. Therefore, no information has been provided regarding Cintas' hiring practices in 2004 - the year that Ms. Leach applied to Location 725.

contingent upon a successful drug screen and driving records check. *Id*.

When evaluating potential SSR candidates, Location 725 would consider, among other things, a candidate's prior sales and customer service experience. [Hoch Dep., Def.'s Ex. 6, p.14]. Location 725 preferred applicants who had prior customer service experience, especially in a business setting similar to that at Cintas. *Id*. at 15. With respect to sales experience, Location 725 looked for applicants with proven performance, such as meeting past quotas. *Id*. Location 725 also looked for candidates with a stable prior work history. *Id*.

Robin Leach

Ms. Leach was not involved in this litigation until the EEOC contacted her in March of 2010. [Leach Dep., Def.'s Ex. 4, Doc. No. 862, p.71]. Ms. Leach learned of Location 725's open SSR position through an online career website, and emailed a resume to Location 725 on April 15, 2004. [*See* Leach Resume, Def.'s Ex. 5-A, Doc. No. 852; Leach Dep., p.57]. Location 725 does not dispute that Ms. Leach's resume was received, though no manager or employee there recalls reviewing it. [Hoch Decl., Def.'s Ex. 5, Doc. No. 862, ¶9].

In the cover letter submitted by Ms. Leach to Location 725, she notes that she has "approximately ten years of outside sales experience," and that she is "a skilled and hardworking professional." [Def.'s Ex. 5-A, Doc. No. 862]. After graduating with a bachelor's degree from Ball State University in 1980, Ms. Leach worked as a retail sales manager for L.S. Ayres & Co. for approximately two years. This position was followed by one year as a file clerk for the Federal Bureau of Investigation, and then a return to L.S. Ayres & Co. - this time as a sales representative - from 1985 to 1991.

After taking two years off - from 1991 to 1993 - Ms. Leach worked as a merchandising

6

specialist and sales representative for Pillsbury for an additional seven years. Immediately following this position, Ms. Leach worked approximately one year for Crossmark, Inc. - from May 2000 to June 2001 - and then took a position with General Mills, Inc. as a sales representative, which she lists as having lasted from June 2001 to October 2003.[4]

Ms. Leach did not receive an interview in connection with her April 2004 application. Mr. Jason Muck emailed Location 725 a resume in December of 2003 and reapplied on April 17, 2004 - just two days after Ms. Leach sent Location 725 her resume. Like Ms. Leach, Mr. Muck also had a bachelor's degree - in business management from Northwood University. [Muck Application, Def.'s Ex. 5-B, Doc. No. 862]. Mr. Muck had approximately a year and half worth of experience at Muck's TV and Appliance from February 1999 through August 2000, and three years - 2000 to 2003 - working as a sales representative for Big Lots Furniture - a position similar to the L.S. Ayres & Co. sales job held by Ms. Leach. Mr. Muck most recently had been employed as a management trainee at Menard's - a job held from March of 2003 until the time that his application was submitted.

Ultimately, Mr. Muck advanced beyond the initial resume screening process, and was eventually hired by Location 725. Mr. Hoch - Location 725's General Manager - stated that, while Ms. Leach had prior sales experience, in his opinion Mr. Muck's prior experience more closely resembled the duties of the SSR position, and made him better qualified for the SSR position than Ms. Leach. [Hoch Decl., ¶¶9-12].

Ms. Leach admitted at her deposition that she is aware of no facts which caused her to

---

[4] Ms. Leach's resume does not indicate what her employment status was from the time she left General Mills in October 2003 until the time of her application with Cintas in April 2004.

believe that Cintas discriminated against her in connection with her April 2004 application to Location 725 - only a feeling that, based on her resume, she should have been given an interview:

> Q: Do you have any facts that would support a claim that Cintas didn't hire you because of your gender?
> A: Other than I think my experience speaks for itself. Just by looking at that. Male or female I think I was more than qualified to be at least considered for an interview. Back then, did I know or think that they were not calling me because I was female? No. But I thought I should have been at least contacted for an interview.

[Leach Dep., pp.65-66].

### Cintas' Instant Motion for Summary Judgment

Following the close of discovery in this action, Cintas filed this motion for summary judgment [Doc. No. 862] on July 14, 2010. In this motion, Cintas argues that the EEOC's claims on behalf of Ms. Leach fail on their merits as a matter of law.[5] The EEOC opposes Cintas' motion. [Doc. No. 891]. The matter is now ripe for decision by the Court.

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories,

---

[5] In addition to summary judgment motions attacking the merits of each of EEOC's thirteen individually-named plaintiffs, Cintas has also filed an omnibus motion attacking each of these named plaintiffs for procedural reasons - namely, the EEOC's failure to exhaust administrative remedies before filing this lawsuit. [*See* Doc. No. 836]. Notwithstanding the EEOC's arguments to the contrary [*see* EEOC's Br., Doc. No. 891, n1], the Court will address the merits of Ms. Leach's claims in this order, and will address the EEOC's alleged failure to exhaust administrative remedies on all named plaintiffs in a separate order.

and admissions on file together with the affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

## ANALYSIS

In its instant motion [Doc. No. 862], Cintas argues that the EEOC's suit on behalf of Ms. Leach should be dismissed because the EEOC cannot demonstrate that Cintas' decision not to hire Ms. Leach was a pretext for gender discrimination. As the Court agrees, dismissal of the EEOC's claims on behalf of Ms. Leach is ultimately proper.

Section 706 permits the EEOC to sue a private employer on behalf of a "person or persons aggrieved" by an employer's unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1). The EEOC is "master of its own case" when bringing suits on behalf of aggrieved persons in a § 706 lawsuit, and may bring such suits with or without the consent of the aggrieved persons. *EEOC v. Waffle House*, 534 U.S. 279, 291-92 (2002). "Nonetheless, it is axiomatic that the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all the elements of their [discrimination] claims to obtain individual relief for them." *EEOC v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918, 929 (N.D. Iowa 2009).

Absent evidence of intentional discrimination, the EEOC must pursue § 706 claims brought on behalf of aggrieved individuals under the familiar burden-shifting scheme outlined in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998); *see also Serrano v. Cintas Corp.*, - - F.Supp.2d. - -, 2010 WL 522846 (E.D. Mich. Feb. 9, 2010). Under the *McDonnell-Douglas* framework, plaintiffs

9

must first establish a *prima facie* case of discrimination. *McDonnell-Douglas*, 422 U.S. at 802. Once the plaintiff has established such a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the employer articulates such a legitimate, nondiscriminatory reason, the plaintiff bears the burden of proving that the employer's articulated reason is a pretext for discrimination. *Id*. The Court will consider each of these issues in turn.

    I. The EEOC's *Prima Facie* Case on Behalf of Ms. Leach.

To establish a *prima facie* case of discriminatory hiring practices, a plaintiff without direct evidence of discrimination must show that 1) she belonged to a protected class; 2) she applied and was qualified for a job for which the employer was seeking applicants; 3) despite her qualifications, she was rejected; and 4) after her rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. *See McDonnell-Douglas*, 411 U.S. at 802. In this case, though Cintas "does not concede" that the EEOC can satisfy its requirement to proffer a *prima facie* claim on behalf of Ms. Leach, Cintas makes no argument against the EEOC's *prima facie* case in their motion. [*See* Def.'s Br., Doc. No. 862, p.10].

In *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003), the Sixth Circuit elaborated on the requirements of the "qualified" element of a *prima facie* discrimination claim. The *Wexler* Court held that, "[a]t the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler*, 317 F.3d at 575 (emphasis in original). To meet this burden, plaintiffs need only "present[] credible evidence that his or her qualifications are at least equivalent to the minimum objective

10

criteria required for employment in the relevant field." *Id*. at 576. The Sixth Circuit elaborates as follows:

> Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrating possession of the required skills.

*Wexler*, 317 F.3d at 576.

Here, in the light most favorable to the EEOC, Ms. Leach was arguably qualified for an SSR position at Cintas. She had prior experience in sales and customer service through her positions at L.S. Ayres & Co., Crossmark, Pillsbury, and General Mills. Though none of these positions involved route sales, Mr. Hoch stated that such experience was a *preference*, not a requirement for applicants. Indeed, Mr. Muck likewise had no such experience on his resume, and was ultimately hired by Cintas.

On the facts presented, the Court finds Ms. Leach was "qualified" for an SSR position for purposes of prong one of the *McDonnell-Douglas* inquiry. The Court will therefore move on to consider the second prong of the *McDonnell-Douglas* inquiry - Cintas' legitimate, nondiscriminatory rationale for its not hiring Ms. Leach.

II. <u>Cintas' Legitimate, Nondiscriminatory Rationale for Not Hiring Ms. Leach</u>.

In its motion for summary judgment, Cintas argues that it has satisfied its requirement to proffer a legitimate, nondiscriminatory reason for why it did not hire Ms. Leach - because Location 725 hired Mr. Muck, whom Location 725 viewed as a more-qualified applicant. [Def.'s Br., Doc. No. 862, p.11].

In their brief in opposition to Cintas' motion [Doc. No. 891], the EEOC's argument against Cintas' legitimate, nondiscriminatory rationale is as follows:

11

> Cintas has no evidence to establish why it did not hire Ms. Leach. To the contrary, the company forthrightly admits that no Cintas employee has testified that he or she reviewed Ms. Leach's application when it was submitted. And Cintas has pointed to no admissible evidence to show why Ms. Leach was not hired.

[EEOC's Br., Doc. No. 891, p.8 (footnoted material, internal citations and quotations omitted)]. This argument, however, is unavailing. On the facts of this case, there is nothing wrong with Cintas' proffered argument advancing reasons why *it would not have hired Ms. Leach*. The EEOC offers no authority for its proposition that employers cannot offer rationales for why they would not have hired an applicant when no managerial employee specifically remembers reviewing that candidate's application. For purposes of this motion, therefore, the Court holds that Cintas' proffered rationale for not hiring Ms. Leach is legitimate and nondiscriminatory, and the EEOC's arguments to the contrary are without merit. Thus, the Court will consider the third and final prong of the *McDonnell-Douglas* inquiry - the EEOC's ability to demonstrate that Cintas' rationale for not hiring Ms. Leach was a pretext for gender discrimination.

    III.  <u>The EEOC's Case for Pretext</u>.

Cintas argues that the EEOC is unable to demonstrate that Cintas' asserted reason for not hiring Ms. Leach is pretextual. [Def.'s Br., Doc. No. 862, p.11]. The Court agrees, and therefore **GRANTS** Cintas' motion for summary judgment [Doc. No. 862].

The Sixth Circuit has held that pretext can be shown:

> . . . in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's decision.

*Chen v. Dow Chemical Corp.*, 580 F.3d 394, 400 (6th Cir. 2009), citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004). To carry its burden in opposing summary

judgment, the EEOC must produce sufficient evidence from which a jury could reasonably reject Cintas' explanation of why it chose not to hire Ms. Leach. *Id*. Further, it is not sufficient for the EEOC to simply allege fact questions regarding the pretextual nature of Cintas' actions. "A defendant's proffered reason cannot be proved to be a pretext 'unless it is shown *both* that the reason was false *and* that discrimination was the real reason.'" *Harris v. Metro. Gov't of Nashville and Davidson County, Tennessee*, 594 F.3d 476, 486 (6th Cir. 2010), citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (quotations and emphasis in original).

The EEOC relies upon a Sixth Circuit case, *Risch v. Royal Oak Police Dept.*, 581 F.3d 383 (6th Cir. 2009), in support of its argument that Location 725's decision to hire Mr. Muck instead of Ms. Leach was a pretext for gender discrimination. [*See* EEOC's Br., Doc. No. 891, p.10]. In that case, the Sixth Circuit held as follows:

> When the plaintiff offers "other probative evidence of discrimination, that evidence, taken together with the evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment."

*Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 392 (6th Cir. 2009), citing *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006). Here, the EEOC argues that Ms. Leach was more qualified for an SSR position than was Mr. Muck. This, coupled with the statistical evidence proffered, the EEOC argues, is sufficient to rebut Cintas' rationale as pretextual. [EEOC's Br., Doc. No. 891, pp.11-12]. The Court disagrees.

In *Risch*, the Sixth Circuit considered the claims of a female police officer who was allegedly passed over for a detective position with her police department because she was a woman. *Risch*, 581 F.3d at 385. The police department passed over her "in favor of two male

13

applicants who had lower scores than Risch under the promotion system used by the Department." *Id*. While the EEOC's quote from *Risch*, noted *supra*, is accurate, the "other probative evidence" relied upon in *Risch* was explained as follows:

> The record also contains other evidence probative of pretext. The record indicates that male officers frequently made degrading comments regarding the capabilities of female officers, expressed the view that female officers would never be promoted to command positions, and made generally degrading remarks about women.

*Risch*, 581 F.3d at 392. These statements, the Sixth Circuit held, "evidence a discriminatory atmosphere in the Department in which male officers frequently made derogatory or discriminatory remarks about female officers." *Id*. at 393. Thus, the Sixth Circuit held, the plaintiff in *Risch* had presented enough evidence to survive summary judgment:

> In light of the above evidence of a discriminatory atmosphere in the Department, the lack of women in command positions at the Department, and the evidence that Risch was arguably better qualified than the two male applicants promoted in 2005, we conclude that Risch has produced sufficient evidence to establish a genuine issue of material fact concerning whether the Department's proffered legitimate, nondiscriminatory reason was pretextual.

*Id*. at 394.

Here, by contrast, the EEOC's "other evidence" is limited to the statistical analysis of Dr. Thomas DiPrete. [*See* EEOC's Ex. BB, Doc. No. 901]. In his expert report, Dr. DiPrete examined all SSR hirings at Cintas locations in Michigan from 1999 to 2005, and found that, of the 427 SSR hirings in the state of Michigan during that time, only 24 - or approximately 5.6% - were female. [*See* DiPrete Report, EEOC's Ex. BB, Doc. No. 901, p.5; EEOC's Br., Doc. No. 891, p.2]. Based on Dr. DiPrete's analysis, the EEOC goes on to argue as follows:

> Comparing the estimated availability with the females hired, Dr. DiPrete noted a pattern of under hiring that was statistically significant beyond the threshold of

14

two standard deviations. That is, it is highly unlikely that the pattern of under
hiring females at Cintas occurred by chance alone.

[EEOC's Br., Doc. No. 891, p.3]. The Court, however, disagrees.

In *Bowdish v. Continental Accessories, Inc.*, 1992 WL 133022 (6th Cir. June 12, 1992), the Sixth Circuit rejected that plaintiff's attempts to use anecdotal evidence as evidence of discriminatory pretext. The *Bowdish* Court held that anecdotal or statistical evidence, on its own, is insufficient to establish pretext:

> . . . such evidence, standing alone, still would not be sufficient to establish a case of individual disparate treatment. An individual plaintiff in an employment discrimination case must present some evidence that demonstrates that his or her individual discharge was the result of discrimination.

*Bowdish*, 1992 WL 133022, *5. Therefore, the EEOC's attempt in this litigation to demonstrate the pretextual nature of Cintas' failure to hire Ms. Leach by statistical or anecdotal evidence is insufficient. Dr. DiPrete admitted as much at his deposition, when he stated that he could not express any opinion in regards to why any individual named plaintiff may not have been hired. [*See* DiPrete Dep., Def.'s Ex. 3, Doc. No. 911, pp.67-69, 136-37].

Further, the EEOC's attempt to bootstrap a pretext finding based upon cobbled-together anecdotes from individuals commenting on other locations and times than Ms. Leach's application to Location 725, from statistics relating to the purported hiring patterns of other Cintas locations, and from the concurrently-filed cases of the other twelve named plaintiffs in this matter, each also fail to demonstrate pretext in this matter. "Other location" and "other time" hiring decisions are irrelevant to the question of whether Location 725 refused to hire Ms. Leach because of her gender. *See, e.g., Davis v. Hammonds*, 103 Fed. Appx. 51, 53 (8th Cir. 2004); *Shaw v. Monroe County*, 1996 WL 426483 (E.D. Mich. Apr. 18, 1996).

Finally, even if statistics alone *could* warrant consideration as evidence of pretext in this matter, the EEOC's statistics are merely "statistics without correlation," which "are indicative of no meaningful inference or conclusion." *Shaw*, 1996 WL 426483, *8, quoting *Long v. City of Saginaw*, 911 F.2d 1192, 1201 (6th Cir. 1990). In *Long*, the Sixth Circuit rejected statistics which purported to show the availability of minority candidates for the Saginaw Police Department. In that case, the "available labor pool" used to calculate the statistics was held to be *too broad in scope*, because it included all individuals identified as working in "protective services" by the U.S. Census Bureau - a classification that included "bouncers, camp guards, school-crossing guards, meter maids. . . life guards, dog catchers, [and] bodyguards[,]" to name but a few examples. *Long*, 911 F.2d at 1200.

Here, the EEOC's statistical analysis by Dr. DiPrete is even broader than the available labor pool utilized in *Long* - it includes census labor groupings such as human resource managers, computer support specialists, clergy, elementary and middle school teachers, artists, cooks, counter attendants and convenience store clerks, receptionists, and office clerks within its calculations of the available labor pool. While the EEOC vigorously disputes the propriety of basing the available labor pool for SSR positions on a single census occupation code - 913, relating to driver/sales workers and truck drivers [*see* Doc. No. 833, pp.12-17] - *clearly* the EEOC's own statistics draw from far too broad an available labor pool - and thus overly inflate female availability for SSR positions. For these reasons, the EEOC has not proffered the type of "other probative evidence" discussed in *Risch* as sufficient to survive summary judgment.

Again, save for the EEOC's statistical evidence proffered by Dr. DiPrete, the EEOC's sole evidence to demonstrate pretext on behalf of Ms. Leach is limited to the argument that Ms.

Leach was more qualified for an SSR position than was Mr. Muck. The EEOC elaborates upon this argument as follows:

> Cintas argues that Ms. Leach was not more qualified than Jason Muck. As Cintas states, Mr. Muck had sales and customer service experience: he worked for about a year and a half for his dad at Muck's TV and Appliance, he worked almost 2 ½ years for Big Lots, and he worked for about nine months at Menards. He worked each of these jobs while he was in college. But Ms. Leach had much more sales and customer service experience, including 10 years of outside sales experience servicing a sales territory, which Mr. Muck lacked. . . . Mr. Muck sold appliances and furniture in a retail store setting, then worked at Menards. Ms. Leach, on the other hand, had many years of dealing with business customers at General Mill[s], Crossmark, and Pillsbury. Cintas notes that Mr. Muck won quarterly sales awards at Big Lots, but Ms. Leach won General Mills' half-yearly salesperson Award for Merit and maintained top sales leader status for her area.

[EEOC's Br., Doc. No. 891, pp.8-9 (footnotes, quotations and internal citations omitted)]. Therefore, the EEOC argues, Cintas' decision to hire Mr. Muck, and not Ms. Leach, was a pretext for gender discrimination. The Court disagrees.

As the Sixth Circuit commented in *Bender v. Hecht's Dept. Stores*, 455 F.3d 612 (6th Cir. 2006):

> Of course, acknowledging that evidence of comparative qualifications may be probative of pretext is a far cry from holding that such evidence is itself sufficient in all cases to raise a genuine issue of fact of discriminatory motive. For we need to balance the Supreme Court's statement in *Burdine* [that qualifications evidence may be probative of whether the employer's reasons are pretexts for discrimination] with the principles that employers are generally free to choose among qualified candidates, and that the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. . . a rejected applicant must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful []discrimination, not that other reasonable decision-makers might have retained the plaintiff.

*Bender*, 455 F.3d at 626 (internal citations and quotations omitted). The *Bender* Court went on to hold as follows:

> On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be *so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former*. In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of material fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual.

*Bender*, 455 F.3d at 627 (emphasis added).

The EEOC has failed to demonstrate that Ms. Leach's qualifications were "so significantly better" than those of Mr. Muck that "no reasonable employer would have chosen the latter applicant over the former." *Bender*, 455 F.3d at 627. True, when viewed in the light most favorable to the EEOC's claim, perhaps some of the elements of Ms. Leach's experience would have looked more favorable than those of Mr. Muck. But to allow these type of side-by-side comparisons of Ms. Leach's qualifications to those of a successful applicant - absent other probative evidence of discrimination - would, in the words of the *Bender* Court:

> . . . move this court from its proper role of preventing unlawful employment practices to the illegitimate role of acting as a "super personnel department," overseeing and second-guessing employers' business decisions.

*Bender*, 455 F.3d at 628, quoting *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983). Even assuming, *arguendo*, that Ms. Leach would have appeared to be a more qualified candidate for a Cintas SSR position than was Mr. Muck, the Court holds that the EEOC has failed to demonstrate that Ms. Leach's qualifications were "so significantly better" than those of Mr. Muck that "no reasonable employer would have chosen the latter applicant over the former." *Bender*, 455 F.3d at 627.

Even assuming that the EEOC could show that Cintas' purportedly legitimate,

nondiscriminatory reason for not hiring Ms. Leach was pretextual, the EEOC has failed to offer any evidence raising a genuine issue of material fact that this reason was a pretext for gender discrimination. This evidentiary failure is fatal to the EEOC's claim on behalf of Ms. Leach in this litigation, and summary judgment in Cintas' favor is therefore proper. The EEOC's arguments to the contrary are without merit.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Cintas' motion for summary judgment [Doc. No. 862], and **DISMISSES WITH PREJUDICE** the EEOC's claim brought on behalf of Ms. Leach.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 9, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 9, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager