UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                          Case Nos. 04-40132; 06-12311

           Plaintiff- Intervenor                    HONORABLE SEAN F. COX
                                               United States District Judge

v.

CINTAS CORPORATION,

           Defendant.

_____/

OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT re: GINA COMISKA [Doc. No. 873]

On December 23, 2005, the Equal Employment Opportunity Commission ("EEOC") filed

complaints as an intervening plaintiff in two cases that were consolidated for pretrial purposes -

*Mirna E. Serrano, et al. v. Cintas Corp.* [Case No. 04-40132]; and *Blanca Nelly Avalos, et al. v.*

*Cintas Corp.* [Case No. 06-12311] - alleging that Defendant Cintas Corporation ("Cintas")

engaged in discriminatory hiring practices against female applicants in violation of 42 U.S.C. §

2000e-5, also known as a "Section 706" action.[1]  In March of 2010, the EEOC identified Ms.

Gina Mary Comiska ("Comiska") as one of thirteen individuals upon whose behalf the EEOC

brought this § 706 action.  The matter is before the Court on Cintas' motion for summary

judgment [Doc. No. 873] with respect to Ms. Comiska's claims.  The parties have fully briefed

the issues, and the Court declines to hear oral argument pursuant to E.D. MICH. L.R. 7.1(f)(2).

_____

[1] For ease of reference, all further citations to document numbers in this motion will refer to the
04-40132 case unless otherwise noted.

For the reasons that follow, the Court **GRANTS** Cintas' motion [Doc. No. 873], and

**DISMISSES WITH PREJUDICE** the EEOC's claim brought on behalf of Ms. Comiska.

BACKGROUND

These causes of action have already suffered through a long, complex factual and

procedural history - a history already discussed by the Court in previous orders. Therefore, only

those facts of particular relevance to the instant motion are included below.

Background to this Litigation

The individual plaintiffs in the *Serrano* action filed their original charge of discrimination

with the EEOC on or about April 7, 2000 - over a decade ago. [*See Serrano* Complaint, Doc. No.

1, ¶7]. Two years later, in June of 2002 - the EEOC issued a determination that reasonable cause

existed to believe Cintas had engaged in discriminatory hiring practices. [*See* Doc. No. 1, Ex. A].

After two more years, in May of 2004, the EEOC formally declined to issue a right to sue letter -

at which time the *Serrano* individual plaintiffs filed their lawsuit in this action. *Id.*

Roughly a year and a half after that - on December 23, 2005 - the EEOC filed suit as an

intervening plaintiff in this action. [*See* Doc. No. 98]. The EEOC's first complaint brought

actions under §§ 705 and 706. The EEOC also filed an amended complaint on August 20, 2009.

Since that time, the Court has denied both the *Serrano* and *Avalos* plaintiffs' motions for

class-action certification [*see* Doc. No. 627] - and the Sixth Circuit has denied motions for

interlocutory appeal. [*See* Doc. Nos. 632, 633]. All individual plaintiffs in the *Avalos* matter

have had their cases either dismissed, settled, or otherwise resolved [*see* Case No. 06-12311,

Doc. No. 647], as is also the case with all plaintiffs in the *Serrano* matter save for Mirna E.

Serrano herself.[2] [*See* Doc. Nos. 712, 722, 732]. Practically speaking, therefore, all that remains of the *Serrano* and *Avalos* matters is the EEOC's § 706 claims against Cintas.

On October 21, 2009, Cintas filed its motion [Doc. No. 662] seeking to preclude the EEOC from proceeding under the "pattern or practice" framework announced by the U.S. Supreme Court in *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). In opposition to that motion, the EEOC argued that it was entitled to pursue a "pattern or practice" action under the *Teamsters* framework - traditionally reserved for § 707 actions - in this action brought under § 706. [*See* Doc. No. 664].

On February 9, 2010, the Court granted Cintas' motion [Doc. No. 662], holding that the EEOC was precluded from advancing its § 706 claims against Cintas under the "pattern or practice" framework announced by the U.S. Supreme Court in *Teamsters*, but instead must proceed under the framework in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). [*See* Doc. No. 723, p.21]. The Court denied the EEOC's motion to certify the issue for interlocutory appeal [*see* Doc. No. 752], and then subsequently denied the EEOC's second motion to amend the complaint to add a "pattern or practice" cause of action under § 707. [*See* Doc. No. 829].

The EEOC was required to disclose the names of all individuals upon whose behalf it was bringing this § 706 suit against Cintas no later than March 23, 2010. [*See* Doc. No. 735, p.16]. Though forty-six females were initially listed by the EEOC as having claims in this action, that number has since been pared to thirteen individual females - one of whom is Gina Comiska, the subject of this motion - who applied for SSR positions with Cintas at its Detroit, Michigan

---

[2] Cintas' motion to dismiss the claims of Ms. Serrano [Doc. No. 881] is currently pending before this Court, which is unopposed by Ms. Serrano [Doc. No. 881, p.4] - though the EEOC opposes the Court granting the motion. [*See* Doc. No. 884].

("Location 681/721") and Westland, Michigan ("Location 300") facilities in 1999, 2001 and 2002.

<u>The SSR Position and SSR Hiring Procedures at Locations 681/721 and 300</u>

Cintas' SSR position is a sales and route driver position. Generally speaking, the position requires driving a truck, selling Cintas' goods and services, and servicing current Cintas accounts for laundry, uniforms and linen products. As the Court previously held in the *Avalos* matter:

> SSRs drive trucks and deliver clean uniforms, mats and supplies to specific customers on their assigned routes. . . SSRs must insure that their trucks are properly loaded with the correct uniforms and products to fulfill the needs of specific customers. As they visit each account, they are tasked with increasing sales and maintaining customer satisfaction at the highest possible level.

[Case No. 06-12311, Doc. No. 186, pp.5-6].

Though policies and procedures for each Cintas location are set by Cintas' corporate headquarters, each Cintas location engages in a decentralized hiring process for SSR applicants - in other words, each Cintas location hires its own SSRs. During 2001 and 2002, however, the hiring process at Location 681/721 was quite similar to that at Location 300. At all times relevant to this motion, Ms. Holly Woonton served as the Human Resources Manager for several Cintas facilities in Michigan, including Location 681/721. [*See* Woonton Dep., Def.'s Ex. 5, Doc. No. 858, pp.10, 23].

It was Ms. Woonton's responsibility, as HR Manager, to review and screen SSR applications and resumes. *Id*. at 10. When screening applicants, Ms. Woonton would:

> . . . see what their employment looked like, what type of experiences they had. Again. . . how many positions they had, reasons for leaving, and whether or not they had customer service or sales experience.

*Id*. at 19.

4

For Location 681/721, Ms. Woonton would generally screen all applications when an SSR position needed to be filled. *Id*. at 10, 23. If a candidate advanced beyond an initial applicant screening, the interview process began with an initial screening interview - conducted by HR using standard, pre-set questions for the applicant. *Id*. at 21, 24. If a candidate advanced past this stage, two in-depth interviews would be conducted by other service managers, then a ride-along with another SSR for a shift, followed by a final meeting with Location 681/721's General Manager. [Woonton Decl., Def.'s Ex. 6, Doc. No. 858, ¶7].

For Location 300, the application process was overseen by that facility's General Manager, who during the time relevant to this lawsuit was Mr. David Armbrester. [Armbrester Dep., Def.'s Ex. 7, Doc. No. 858, p.19]. The hiring process generally consisted of an application screening, following by an initial intake interview for those passing the initial screening. *Id*. at 18-19. Next, advancing applicants would have two in-depth interviews with Location 300 service managers, followed by a "ride-along" opportunity to work a shift with an actual SSR to see the position first hand. The final interview took place after the ride-along, and was conducted by Mr. Armbrester. *Id*. at 12.

Mr. Armbrester testified that, in reviewing applications on the initial screening, "the most important things I was looking for were [a] high school diploma, good driving record [and] preferably someone who had customer service and sales. . . experience on their resume." *Id*. at 20. Further, he considered a "good driving record, kind of a friendly disposition, good customer service, good people skills, [and] a high school diploma" as "must-have[]" qualities in a successful SSR applicant, and "selling experience, customer service [and] leadership experience" as "preferred" qualities. *Id*. at 29-30.

5

Location 300 preferred applicants with a stable job history, as this would give Cintas some assurance that the applicant would stay in the SSR position after Cintas had invested time and money on training the employee. [Armbrester Decl., Def.'s Ex. 10, Doc. No. 858, ¶5]. Mr. Armbrester also preferred applicants referred from an existing Cintas employee. [Armbrester Dep., pp.55-56]. In addition, Location 300 also favorably viewed applicants with prior military service, as these applicants - in Mr. Armbrester's experience - tended to demonstrate leadership skills, dedication, commitment, and a team attitude. [Armbrester Decl., ¶16].

At all times relevant to this litigation, Cintas had in effect a company-wide policy prohibiting unlawful discrimination on the basis of gender in hiring and other employment-related actions. [*See* Case No. 06-12311, Doc. No. 632, pp.3-4].

<u>Gina Comiska</u>

Ms. Comiska was not involved in this litigation until the EEOC sent her a solicitation letter in late 2009. [Comiska Dep., Def.'s Ex. 4, Doc. No. 873, p.9]. Ms. Comiska submitted three separate applications to Cintas facilities - an application to Location 300 on August 11, 1999 [*see* Def.'s Ex. 11-A, Doc. No. 873], an application to Location 681/721 on April 28, 2001 [*see* Def.'s Ex. 10-A, Doc. No. 873], and another application to Location 681/721 on November 20, 2002 [*see* Def.'s Ex. 10-C, Doc. No. 873].

<u>The August 1999 Application to Location 300</u>

Ms. Comiska originally applied to Location 300 by submitting a cover letter and resume dated August 11, 1999, stating in her cover letter that she was applying for a "drivers position" as advertised over the radio [*see* Def.'s Ex. 11-A, Doc. No. 873]. At her deposition, Ms. Comiska had no recollection of ever submitting this resume, *Id*. at 34-35, nor, for that matter, does any

Cintas manager or employee recall reviewing Ms. Comiska's 1999 resume.[3] [*See* Armbrester Dep., Def.'s Ex. 6, Doc. No. 873, p.66].

Ms. Comiska's 1999 resume showed a bachelors degree from Wayne State University - earned in 1993. [Def.'s Ex. 11-A, Doc. No. 873].  For the three years prior to her application, however, Ms. Comiska had been employed in two positions - as a "central documents clerk" for Presidium, Inc., and as a "contingent proofreader" for Consolidated Business Forms - neither of which, being largely clerical positions, were of particular relevance to SSR work with Cintas.  *Id*. The six years prior to that, Ms. Comiska had worked as a waitress at various restaurants.  *Id*.

Ultimately, Ms. Comiska did not receive an interview in connection with her August 1999 application - though it appears that someone at Location 300 did review Ms. Comiska's resume, as Ms. Armbrester's name is handwritten on Ms. Comiska's cover letter, and the phrase "not hired" is written in similar handwriting on her resume. [*See* Def.'s Ex. 11-A, Doc. No. 873]. Cintas, however, does not recall either receiving or reviewing Ms. Comiska's 1999 resume. [Def.'s Br., Doc. No. 873, pp.6-7].

Mr. Kip Tyra applied to Location 300 on or about July 16, 1999 - roughly a month before Ms. Comiska applied - and was hired on August 16, 1999 - five days after the date on Ms. Comiska's cover letter. [Armbrester Decl., ¶8].  Mr. Tyra's previous position involved physical labor, which Cintas argues was relevant to the SSR position.  *Id*. at ¶11.  This, Cintas argues,

---

[3] Cintas does not dispute that Ms. Comiska submitted the 1999 resume, but argues that the mere fact that a resume was submitted does not necessarily mean that it was reviewed.  At the time that Ms. Comiska applied, Mr. Armbrester states that it would not be unusual for Location 300 to only review a fraction of the applications submitted at a given time, either because there were few or no open positions or because other candidates were already progressing through the application process, making it unnecessary for Location 300 to review the remaining submitted applications. [*See* Armbrester Decl., Def.'s Ex. 10, Doc. No. 873, ¶7].

made Mr. Tyra a better applicant than Ms. Comiska. [Def.'s Br., Doc. No. 873, p.11].

<u>The April 2001 Application to Location 681/721</u>

Ms. Comiska again applied for an SSR position with Cintas - this time at Location 681/721 in Detroit, Michigan - on April 28, 2001. [*See* Def.'s Ex. 10-A, Doc. No. 873].  Ms. Comiska filled out a Cintas pre-printed application form, containing the following statement to which Ms. Comiska agreed by signing her name:

> The information contained in this application is true to the best of my knowledge and belief, and I understand and agree that any misrepresentation or false or incomplete statement by me in connection with this application will constitute justifiable cause for Cintas not to employ me or, if employed, to terminate my employment at that time.

*Id*.  Ms. Comiska's application, however, was both incomplete and contained misrepresentations. Specifically, Ms. Comiska answered "no" to the application's question regarding whether she had ever previously applied with Cintas, despite having applied with Location 300 in August of 1999.  Additionally, Ms. Comiska represented in her application that she was unemployed, and that her most recent position had been with Federal Express - ending in October of 2000.  *Id*. This, however, was not accurate - Ms. Comiska had worked as a meter reader for Consumers Energy between January and March of 2001. [Comiska Dep., Def.'s Ex. 5, Doc. No. 873, p.121]. Despite having worked at this position only a few weeks before applying with Cintas in March of 2001, Ms. Comiska failed to disclose the position on her application.  *Id*. at 122.  Ms. Comiska did not receive an interview with Location 681/721 as a result of her April 2001 application.

Mr. James Price applied at Location 681/721 on April 28, 2001 - the same day as did Ms. Comiska - and was hired on May 21, 2001. [Woonton Decl., Def.'s Ex. 9, Doc. No. 873, ¶14]. Mr. Price had sales and customer service experience - and his part-time restaurant position in

addition to his full-time sales job demonstrated to Cintas that he had a strong work ethic. *Id.* at ¶14. This, Cintas argues, made Mr. Price a better applicant than Ms. Comiska. [Def.'s Br., Doc. No. 873, p.12]

The November 20, 2002 Application to Location 681/721

Ms. Comiska filled out another application at Location 681/721 - her third overall with Cintas - at an open house on November 20, 2002. [*See* Def.'s Ex. 10-C, Doc. No. 873]. Notably, on this application Ms. Comiska stated that she would not be available to work until approximately September of 2003 - roughly ten months from the date of the open house. *Id.*

Ms. Comiska's November 20, 2002 application contained the same certification regarding honesty and the completeness of her statements as did the application in March of 2001, but once again Ms. Comiska's application contained incomplete and inaccurate information. First, Ms. Comiska stated that she had applied only once - not twice - before with Cintas, and that the prior application had been in 2000 - a year in which Ms. Comiska did not actually apply with Cintas.

Ms. Comiska's November 2002 application again contained the same misstatements as before regarding her last position being with Federal Express in 2000. In reality, Ms. Comiska had worked for a few months with Consumers Energy in early 2001, as discussed *supra*, and had also worked for the City of Southfield, Michigan in October of 2001 - though she quit a few weeks after being hired at that position. [Comiska Dep., Def.'s Ex. 5, Doc. No. 873, pp.131-32]. Ms. Comiska acknowledged that she likely left these positions off of her application because the short periods of time she worked at those positions would be viewed negatively:

> Q:  Do you know why you did not include these positions [on your application]?
> A:  Because they weren't long enough to put on a resume.

9

| Q: | What does that mean? |
|---|---|
| A: | Rule of thumb was if you were not at a job for three months you didn't put it on a resume. |
| Q: | Where did you learn this rule of thumb? |
| A: | A resume pamphlet. |
| Q: | Did you read this application before you submitted it to Cintas? |
| A: | Yes, I think so. |
| Q: | Did you see the instructions at the top to list all of your employers for the previous seven years? |
| A: | Yes. |
| Q: | But you decided not to include the job with the City of Southfield and the meter reading position because you weren't there for long enough? |
| A: | Right. |
| Q: | Did you not include those jobs because you were concerned that they would be looked upon unfavorably by a potential employer if you were not there for very long? |
| A: | No, I think I just did it because that's the rule of thumb. |
| Q: | Do you know why that's a rule of thumb? |
| A: | *Probably because it looks bad*. |

[Comiska Dep., Def.'s Ex. 4, Doc. No. 873, pp.45-46 (emphasis added)].

Though Ms. Comiska was ultimately not interviewed at the open house, she spoke briefly with a male employee of Cintas regarding the SSR position. Ms. Comiska does not recall anything offensive being said to her during that conversation, and did not have any reason to believe that she would not be hired because of her gender:

| Q: | Can you recall anything at all about your conversation with the man sitting at the table? |
|---|---|
| A: | No. |
| Q: | Did the man sitting at the table do or say anything that led you to believe that you wouldn't receive the position because of your gender? |
| A: | I don't recall. |
| Q: | Did he say or do anything that you found offensive? |
| A: | I don't recall. |
| Q: | So you don't recall any offensive comments? |
| A: | No. |

[Comiska Dep., Def.'s Ex. 5, Doc. No. 873, p. 66]. Ultimately, Ms. Comiska did not receive an interview with Location 681/721 as a result of her 2002 application.

Mr. Joseph Mason submitted a resume and cover letter to Location 681/721 on November 21, 2002 - only one day after Ms. Comiska submitted her third application - and was hired on January 23, 2003. [Woonton Decl., Def.'s Ex. 9, Doc. No. 873, ¶22]. Mr. Mason's resume showed a stable work history, and he had prior experience in commissioned sales, customer service and in delivery driving. *Id*. at ¶23. Unlike Ms. Comiska, Mr. Mason was also available to start with Location 681/721 immediately after being hired. *Id*.

<u>Cintas' Instant Motion for Summary Judgment</u>

Following the close of discovery in this action, Cintas filed this motion for summary judgment [Doc. No. 873] on July 14, 2010. In this motion, Cintas argues that the EEOC's claims on behalf of Ms. Comiska fail on their merits as a matter of law.[4] The EEOC opposes Cintas' motion. [Doc. No. 897]. The matter is now ripe for decision by the Court.

STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which demonstrate the absence of a genuine

---

[4] In addition to summary judgment motions attacking the merits of each of EEOC's thirteen individually-named plaintiffs, Cintas has also filed an omnibus motion attacking each of these named plaintiffs for procedural reasons - namely, the EEOC's failure to exhaust administrative remedies before filing this lawsuit. [*See* Doc. No. 836]. Notwithstanding the EEOC's arguments to the contrary [*See* EEOC's Br., Doc. No. 897, p.1, n1], the Court will address the merits of Ms. Comiska's claims in this order, and will address the EEOC's alleged failure to exhaust administrative remedies on all named plaintiffs in a separate order.

issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

## ANALYSIS

In its instant motion [Doc. No. 873], Cintas argues that the EEOC's suit on behalf of Ms. Comiska should be dismissed for two reasons: 1) because Ms. Comiska was not "qualified" for an SSR position - with respect to any of her three applications - and therefore cannot advance a *prima facie* case of discrimination; and 2) because the EEOC cannot demonstrate that Cintas' decisions not to hire Ms. Comiska - on any of her applications - were a pretext for gender discrimination. As the Court agrees with both of these arguments, dismissal of the EEOC's claims on behalf of Ms. Comiska is ultimately proper.

Section 706 permits the EEOC to sue a private employer on behalf of a "person or persons aggrieved" by an employer's unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1). The EEOC is "master of its own case" when bringing suits on behalf of aggrieved persons in a § 706 lawsuit, and may bring such suits with or without the consent of the aggrieved persons. *EEOC v. Waffle House*, 534 U.S. 279, 291-92 (2002). "Nonetheless, it is axiomatic that the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all the elements of their [discrimination] claims to obtain individual relief for them." *EEOC v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918, 929 (N.D. Iowa 2009).

Absent evidence of intentional discrimination, the EEOC must pursue § 706 claims brought on behalf of aggrieved individuals under the familiar burden-shifting scheme outlined in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). *See Lowery v. Circuit City Stores,*

*Inc.*, 158 F.3d 742, 760 (4th Cir. 1998); *see also Serrano v. Cintas Corp.*, - - F.Supp.2d. - -, 2010 WL 522846 (E.D. Mich. Feb. 9, 2010). Under the *McDonnell-Douglas* framework, plaintiffs must first establish a *prima facie* case of discrimination. *McDonnell-Douglas*, 422 U.S. at 802. Once the plaintiff has established such a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the employer articulates such a legitimate, nondiscriminatory reason, the plaintiff bears the burden of proving that the employer's articulated reason is a pretext for discrimination. *Id*. The Court will consider each of these issues in turn.

I. The EEOC's *Prima Facie* Case on Behalf of Ms. Comiska.

To establish a *prima facie* case of discriminatory hiring practices, a plaintiff without direct evidence of discrimination must show that 1) she belonged to a protected class; 2) she applied and was qualified for a job for which the employer was seeking applicants; 3) despite her qualifications, she was rejected; and 4) after her rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. *See McDonnell-Douglas*, 411 U.S. at 802. In this case, Cintas only disputes the second of these requirements with respect to Ms. Comiska's applications: that Ms. Comiska was not "qualified" for an SSR position due to her lack of honesty in completing the applications. The Court agrees.

In *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003), the Sixth Circuit elaborated on the requirements of the "qualified" element of a *prima facie* discrimination claim. The *Wexler* Court held that, "[a]t the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler*, 317 F.3d at 575 (emphasis in original). To meet this burden, plaintiffs need only "present[]

13

credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id*. at 576. The Sixth Circuit elaborates as follows:

> Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrating possession of the required skills.

*Wexler*, 317 F.3d at 576.

In support of its argument that Ms. Comiska was not "qualified" for a position with either Location 300 or Location 681/721, Cintas argues as follows:

> This Court has already found that "basic honesty was an objective qualification for a position with Cintas" and that a claimant who "had lied on his employment application, even though the application stated several times with clear language that complete and accurate information was required. . . was thus not qualified for the job sought and. . . failed to establish a *prima facie* case of discrimination." Ms. Comiska failed to demonstrate basic honesty on her application.

[Def.'s Br., Doc. No. 873, p.17, citing Doc. No. 511, p.5]. The Court agrees. Though the EEOC's response brief generally denies that Ms. Comiska is a dishonest person [*see* Doc. No. 897, p.8, n7], the EEOC does not explain any of the discrepancies in Ms. Comiska's application noted *supra*.

On the facts presented, the Court finds Ms. Comiska was not "qualified" for an SSR position with Cintas for purposes of prong one of the *McDonnell-Douglas* inquiry. Summary judgment on the EEOC's *prima facie* claim is therefore proper, and the EEOC's arguments to the contrary are without merit. However, the Court will nonetheless move on to consider the second prong of the *McDonnell-Douglas* inquiry - Cintas' legitimate, nondiscriminatory rationale for not hiring Ms. Comiska.

II. <u>Cintas' Legitimate, Nondiscriminatory Rationale for Not Hiring Ms. Comiska</u>.

In its motion for summary judgment, Cintas argues that it has "pointed to multiple legitimate, non-discriminatory reasons for why it did not hire Ms. Comiska each time she applied." [Def.'s Br., Doc. No. 873, p.18]. Specifically, Cintas' rationale regarding Ms. Comiska's 1999 application is as follows:

> When she applied in 1999, a more qualified applicant was far along in the interview process, and it is unlikely Ms. Comiska's first application was even reviewed. In any event, Ms. Comiska's application listed only office or clerical work, which was generally not experience that was relevant to the SSR position.

[Def.'s Br., Doc. No. 873, p.18 (internal citations omitted)]. Further, with respect to Ms. Comiska's 2001 application, Cintas argues as follows:

> In 2001, her second application revealed significant periods of unemployment (which, as later revealed, actually concealed an unstable employment history). In either event, this job history indicated a high turnover risk, and she was not a viable SSR candidate.

*Id*. at 19 (internal citation omitted). With respect to Ms. Comiska's 2002 application, Cintas argues as follows:

> In 2002 - in additional to all of the issues discussed above - Ms. Comiska indicated on her third application that she could not start a new job until *ten months* after submitting her third application. Location 681/721 would not have hired a candidate for a position 10 months before they could start working - a decision that even Ms. Comiska admits is reasonable.

*Id*. (internal citations omitted) (emphasis in original). Finally, "each time that Ms. Comiska applied, Cintas hired a more qualified candidate instead." *Id*.

In its brief in opposition to Cintas' motion [Doc. No. 897], the EEOC's argument against Cintas' legitimate, nondiscriminatory rationale is as follows:

> Furthermore, Cintas completely fails to articulate any reason for not hiring Ms.

15

Comiska. Instead, when asked why Ms. Comiska was not hired, Cintas'
collective response has been simply "I don't know." Indeed, the reasons Cintas
presents in its brief for failing to hire Ms. Comiska - including the hiring of Kip
Tyra - are simply guesses as to fact, not a legitimate explanation of its actions.

[EEOC's Br., Doc. No. 897, pp.8-9 (footnoted material omitted)]. This argument, however, is

unavailing. On the facts of this case, there is nothing wrong with Cintas's proffered argument

advancing reasons why *it would not have hired Ms. Comiska*. The EEOC offers no authority for

its proposition that employers cannot offer rationales for why they would not have hired an

applicant when no managerial employee specifically remembers reviewing that candidate's

application. For purposes of this motion, therefore, the Court holds that Cintas' proffered

rationales for not hiring Ms. Comiska are legitimate and nondiscriminatory, and the EEOC's

arguments to the contrary are without merit Thus, the Court will consider the third and final

prong of the *McDonnell-Douglas* inquiry - the EEOC's ability to demonstrate that Cintas'

rationales for not hiring Ms. Comiska were a pretext for gender discrimination.

III. The EEOC's Case for Pretext.

Cintas argues that the EEOC is unable to demonstrate that Cintas' asserted reasons for not

hiring Ms. Comiska are pretextual. [Def.'s Br., Doc. No. 873, p. 20]. The Court agrees, and

therefore **GRANTS** Cintas' motion for summary judgment [Doc. No. 873].

The Sixth Circuit has held that pretext can be shown:

. . . in three interrelated ways: (1) that the proffered reasons had no basis in fact,
(2) that the proffered reasons did not actually motivate the employer's action, or
(3) that they were insufficient to motivate the employer's decision.

*Chen v. Dow Chemical Corp.*, 580 F.3d 394, 400 (6th Cir. 2009), citing *Hedrick v. W. Reserve*

*Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004). To carry its burden in opposing summary

judgment, the EEOC must produce sufficient evidence from which a jury could reasonably reject Cintas' explanations of why it chose not to hire Ms. Comiska. *Id.* Further, it is not sufficient for the EEOC to simply allege fact questions regarding the pretextual nature of Cintas' actions. "A defendant's proffered reason cannot be proved to be a pretext 'unless it is shown *both* that the reason was false *and* that discrimination was the real reason.'" *Harris v. Metro. Gov't of Nashville and Davidson County, Tennessee*, 594 F.3d 476, 486 (6th Cir. 2010), citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (quotations and emphasis in original).

The EEOC relies primarily upon the following quote from a Sixth Circuit case to demonstrate pretext in this case:

> When the plaintiff offers "other probative evidence of discrimination, that evidence, taken together with the evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment."

[EEOC's Br., Doc. No. 897, p.10, quoting *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 392 (6th Cir. 2009), citing *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006)]. Here, the EEOC argues that Ms. Comiska was more qualified for an SSR position than were Mr. Tyra, Mr. Price or Mr. Mason. This, coupled with the statistical evidence proffered, the EEOC argues, is sufficient to rebut Cintas' rationale as pretextual. [EEOC's Br., Doc. No. 897, pp. 10-11]. The Court disagrees.

In *Risch*, the Sixth Circuit considered the claims of a female police officer who was allegedly passed over for a detective position with her police department because she was a woman. *Risch*, 581 F.3d at 385. The police department passed over her "in favor of two male applicants who had lower scores than Risch under the promotion system used by the

Department." *Id.* While the EEOC's quote from *Risch*, noted *supra*, is accurate, the "other probative evidence" relied upon in *Risch* was explained as follows:

> The record also contains other evidence probative of pretext. The record indicates that male officers frequently made degrading comments regarding the capabilities of female officers, expressed the view that female officers would never be promoted to command positions, and made generally degrading remarks about women.

*Risch*, 581 F.3d at 392. These statements, the Sixth Circuit held, "evidence a discriminatory atmosphere in the Department in which male officers frequently made derogatory or discriminatory remarks about female officers." *Id.* at 393. Thus, the Sixth Circuit held, the plaintiff in *Risch* had presented enough evidence to survive summary judgment:

> In light of the above evidence of a discriminatory atmosphere in the Department, the lack of women in command positions at the Department, and the evidence that Risch was arguably better qualified than the two male applicants promoted in 2005, we conclude that Risch has produced sufficient evidence to establish a genuine issue of material fact concerning whether the Department's proffered legitimate, nondiscriminatory reason was pretextual.

*Id.* at 394.

Here, by contrast, the EEOC's "other evidence" is limited to the statistical analysis of Dr. Thomas DiPrete. [*See* EEOC's Ex. BB, Doc. No. 901]. In his expert report, Dr. DiPrete examined all SSR hirings at Cintas locations in Michigan from 1999 to 2005, and found that, of the 427 SSR hirings in the state of Michigan during that time, only 24 - or approximately 5.6% - were female. [*See* DiPrete Report, EEOC's Ex. BB, Doc. No. 901, p.5; EEOC's Br., Doc. No. 897, p.2]. Based on Dr. DiPrete's analysis, the EEOC goes on to argue as follows:

> Comparing the estimated availability with the females hired, Dr. DiPrete noted a pattern of under hiring that was statistically significant beyond the threshold of two standard deviations. That is, it is highly unlikely that the pattern of under hiring females at Cintas occurred by chance alone.

[EEOC's Br., Doc. No. 897, p.3]. The Court, however, disagrees.

In *Bowdish v. Continental Accessories, Inc.*, 1992 WL 133022 (6th Cir. June 12, 1992), the Sixth Circuit rejected that plaintiff's attempts to use anecdotal evidence as evidence of discriminatory pretext. The *Bowdish* Court then held that anecdotal or statistical evidence, on its own, is insufficient to establish pretext:

> . . . such evidence, standing alone, still would not be sufficient to establish a case of individual disparate treatment. An individual plaintiff in an employment discrimination case must present some evidence that demonstrates that his or her individual discharge was the result of discrimination.

*Bowdish*, 1992 WL 133022, *5. Therefore, the EEOC's attempt in this litigation to demonstrate the pretextual nature of Cintas' failure to hire Ms. Comiska by statistical or anecdotal evidence is insufficient. Dr. DiPrete admitted as much at his deposition, when he stated that he could not express any opinion in regards to why any individual named plaintiff may not have been hired. [*See* DiPrete Dep., Def.'s Ex. 3, Doc. No. 911, pp.67-69, 136-37].

Futher, the EEOC's attempt to bootstrap a pretext finding based upon cobbled-together anecdotes from individuals commenting on other locations and times than Ms. Comiska's applications, from statistics relating to the purported hiring patterns of other Cintas locations, and from the concurrently-filed cases of the other twelve named plaintiffs in this matter, each also fail to demonstrate pretext in this matter. "Other location" and "other time" hiring decisions are irrelevant to the question of whether Cintas refused to hire Ms. Comiska because of her gender. *See, e.g., Davis v. Hammonds*, 103 Fed. Appx. 51, 53 (8th Cir. 2004); *Shaw v. Monroe County*, 1996 WL 426483 (E.D. Mich. Apr. 18, 1996).

Finally, even if statistics alone *could* warrant consideration as evidence of pretext in this

matter, the EEOC's statistics are merely "statistics without correlation," which "are indicative of no meaningful inference or conclusion." *Shaw*, 1996 WL 426483, *8, quoting *Long v. City of Saginaw*, 911 F.2d 1192, 1201 (6th Cir. 1990). In *Long*, the Sixth Circuit rejected statistics which purported to show the availability of minority candidates for the Saginaw Police Department. In that case, the "available labor pool" used to calculate the statistics was held to be *too broad in scope*, because it included all individuals identified as working in "protective services" by the U.S. Census Bureau - a classification that included "bouncers, camp guards, school-crossing guards, meter maids. . . life guards, dog catchers, [and] bodyguards[,]" to name but a few examples. *Long*, 911 F.2d at 1200.

Here, the EEOC's statistical analysis by Dr. DiPrete is even broader than the available labor pool utilized in *Long* - it includes census labor groupings such as human resource managers, computer support specialists, clergy, elementary and middle school teachers, artists, cooks, counter attendants and convenience store clerks, receptionists, and office clerks within its calculations of the available labor pool. While the EEOC vigorously disputes the propriety of basing the available labor pool for SSR positions on a single census occupation code - 913, relating to driver/sales workers and truck drivers [*see* Doc. No. 833, pp.12-17] - *clearly* the EEOC's own statistics draw from far too broad an available labor pool - and thus overly inflate female availability for SSR positions. For these reasons, the EEOC has not proffered the type of "other probative evidence" discussed in *Risch* as sufficient to survive summary judgment.

Again, save for the EEOC's statistical evidence proffered by Dr. DiPrete, the EEOC's sole evidence to demonstrate pretext on behalf of Ms. Comiska is limited to the argument that Ms. Comiska was more qualified for an SSR position than were Mr. Tyra, Mr. Price, or Mr.

Mason.  [*See* EEOC's Br., Doc. No. 897, pp.10-11].  The Court disagrees.

As the Sixth Circuit commented in *Bender v. Hecht's Dept. Stores*, 455 F.3d 612 (6th Cir. 2006):

> Of course, acknowledging that evidence of comparative qualifications may be probative of pretext is a far cry from holding that such evidence is itself sufficient in all cases to raise a genuine issue of fact of discriminatory motive.  For we need to balance the Supreme Court's statement in *Burdine* [that qualifications evidence may be probative of whether the employer's reasons are pretexts for discrimination] with the principles that employers are generally free to choose among qualified candidates, and that the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. . . a rejected applicant must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful []discrimination, not that other reasonable decision-makers might have retained the plaintiff.

*Bender*, 455 F.3d at 626 (internal citations and quotations omitted).  The *Bender* Court went on to hold as follows:

> On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be *so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former*.  In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of material fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual.

*Bender*, 455 F.3d at 627 (emphasis added).

The EEOC has failed to demonstrate that Ms. Comiska's qualifications were "so significantly better" than those of Mr. Tyra, Mr. Price, or Mr. Mason that "no reasonable employer would have chosen the latter applicant[s] over the former."  *Bender*, 455 F.3d at 627.

True, when viewed in the light most favorable to the EEOC's claim on behalf of Ms. Comiska, perhaps some of the elements of her relevant experience would have looked more

favorable than those of other applicants. But to allow these type of side-by-side comparisons of Ms. Comiska's qualifications to those of successful applicants - absent other probative evidence of discrimination - would, in the words of the *Bender* Court:

> . . . move this court from its proper role of preventing unlawful employment practices to the illegitimate role of acting as a "super personnel department," overseeing and second-guessing employers' business decisions.

*Bender*, 455 F.3d at 628, quoting *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983). Even assuming, *arguendo*, that Ms. Comiska would have appeared to be a more qualified candidate for a Cintas SSR position than Mr. Tyra, Mr. Price or Mr. Mason, the Court holds that the EEOC has failed to demonstrate that Ms. Comiska's qualifications were "so significantly better" than those of Mr. Tyra, Mr. Price or Mr. Mason that "no reasonable employer would have chosen the latter applicant[s] over the former." *Bender*, 455 F.3d at 627.

Even assuming that the EEOC could show that Cintas' purportedly legitimate, non-discriminatory reasons for not hiring Ms. Comiska were pretextual, the EEOC has failed to offer any evidence raising a genuine issue of material fact that these reasons were a pretext for gender discrimination. This evidentiary failure is fatal to the EEOC's claim on behalf of Ms. Comiska in this litigation, and summary judgment in Cintas' favor is therefore proper. The EEOC's arguments to the contrary are without merit.

CONCLUSION

For the reasons explained above, the Court **GRANTS** Cintas' motion for summary judgment [Doc. No. 873], and **DISMISSES WITH PREJUDICE** the EEOC's claim brought on

behalf of Ms. Comiska.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  September 9, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 9, 2010, by electronic and/or ordinary mail.

s/Jennifer Hernandez
Case Manager