UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                             Case Nos. 04-40132; 06-12311

          Plaintiff- Intervenor                         HONORABLE SEAN F. COX
                                                        United States District Judge

v.

CINTAS CORPORATION,

          Defendant.
_____/

OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT re: SUSAN BARBER [Doc. No. 858]

On December 23, 2005, the Equal Employment Opportunity Commission ("EEOC") filed

complaints as an intervening plaintiff in two cases that were consolidated for pretrial purposes -

*Mirna E. Serrano, et al. v. Cintas Corp.* [Case No. 04-40132]; and *Blanca Nelly Avalos, et al. v.*

*Cintas Corp.* [Case No. 06-12311] - alleging that Defendant Cintas Corporation ("Cintas")

engaged in discriminatory hiring practices against female applicants in violation of 42 U.S.C. §

2000e-5, also known as a "Section 706" action.[1]  In March of 2010, the EEOC identified Ms.

Susan Barber ("Barber") as one of thirteen individuals upon whose behalf the EEOC brought this

§ 706 action.  The matter is before the Court on Cintas' motion for summary judgment [Doc. No.

858] with respect to Ms. Barber's claims.  The parties have fully briefed the issues, and the Court

declines to hear oral argument pursuant to E.D. MICH. L.R. 7.1(f)(2).  For the reasons that follow,

_____

[1] For ease of reference, all further citations to document numbers in this motion will refer to the
04-40132 case unless otherwise noted.

the Court **GRANTS** Cintas' motion [Doc. No. 858], and **DISMISSES WITH PREJUDICE** the EEOC's claim brought on behalf of Ms. Barber.

BACKGROUND

These causes of action have already suffered through a long, complex factual and procedural history - a history already discussed by the Court in previous orders. Therefore, only those facts of particular relevance to the instant motion are included below.

Background to this Litigation

The individual plaintiffs in the *Serrano* action filed their original charge of discrimination with the EEOC on or about April 7, 2000 - over a decade ago. [*See Serrano* Complaint, Doc. No. 1, ¶7]. Two years later, in June of 2002 - the EEOC issued a determination that reasonable cause existed to believe Cintas had engaged in discriminatory hiring practices. [*See* Doc. No. 1, Ex. A]. After two more years, in May of 2004, the EEOC formally declined to issue a right to sue letter - at which time the *Serrano* individual plaintiffs filed their lawsuit in this action. *Id*.

Roughly a year and a half after that - on December 23, 2005 - the EEOC filed suit as an intervening plaintiff in this action. [*See* Doc. No. 98]. The EEOC's first complaint brought actions under §§ 705 and 706. The EEOC also filed an amended complaint on August 20, 2009.

Since that time, the Court has denied both the *Serrano* and *Avalos* plaintiffs' motions for class action certification [*see* Doc. No. 627] - and the Sixth Circuit has denied motions for interlocutory appeal. [*See* Doc. Nos. 632, 633]. All individual plaintiffs in the *Avalos* matter have had their cases either dismissed, settled, or otherwise resolved [*see* Case No. 06-12311, Doc. No. 647], as is also the case with all plaintiffs in the *Serrano* matter save for Mirna E.

Serrano herself.[2] [*See* Doc. Nos. 712, 722, 732]. Practically speaking, therefore, all that remains of the *Serrano* and *Avalos* matters is the EEOC's § 706 claims against Cintas.

On October 21, 2009, Cintas filed its motion [Doc. No. 662] seeking to preclude the EEOC from proceeding under the "pattern or practice" framework announced by the U.S. Supreme Court in *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). In opposition to that motion, the EEOC argued that it was entitled to pursue a "pattern or practice" action under the *Teamsters* framework - traditionally reserved for § 707 actions - in this action brought under § 706. [*See* Doc. No. 664].

On February 9, 2010, the Court granted Cintas' motion [Doc. No. 662], holding that the EEOC was precluded from advancing its § 706 claims against Cintas under the "pattern or practice" framework announced by the U.S. Supreme Court in *Teamsters*, but instead must proceed under the framework in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). [*See* Doc. No. 723, p.21]. The Court denied the EEOC's motion to certify the issue for interlocutory appeal [*see* Doc. No. 752], and then subsequently denied the EEOC's second motion to amend the complaint to add a "pattern or practice" cause of action under § 707. [*See* Doc. No. 829].

The EEOC was required to disclose the names of all individuals upon whose behalf it was bringing this § 706 suit against Cintas no later than March 23, 2010. [*See* Doc. No. 735, p.16]. Though forty-six females were initially listed by the EEOC as having claims in this action, that number has since been pared to thirteen individual females - one of whom is Susan Barber, the subject of this motion - who applied for SSR positions with Cintas at its Detroit, Michigan

---

[2] Cintas' motion to dismiss the claims of Ms. Serrano [Doc. No. 881] is currently pending before this Court, which is unopposed by Ms. Serrano [Doc. No. 881, p.4] - though the EEOC opposes the Court granting the motion. [*See* Doc. No. 884].

("Location 681/721") and Westland, Michigan ("Location 300") facilities in 2002.

<u>The SSR Position and SSR Hiring Procedures at Locations 681/721 and 300</u>

Cintas' SSR position is a sales and route driver position. Generally speaking, the position requires driving a truck, selling Cintas' goods and services, and servicing current Cintas accounts for laundry, uniforms and linen products. As the Court previously held in the *Avalos* matter:

> SSRs drive trucks and deliver clean uniforms, mats and supplies to specific customers on their assigned routes. . . SSRs must insure that their trucks are properly loaded with the correct uniforms and products to fulfill the needs of specific customers. As they visit each account, they are tasked with increasing sales and maintaining customer satisfaction at the highest possible level.

[Case No. 06-12311, Doc. No. 186, pp.5-6].

Though policies and procedures for each Cintas location are set by Cintas' corporate headquarters, each Cintas location engages in a decentralized hiring process for SSR applicants - in other words, each Cintas location hires its own SSRs. During 2001 and 2002, however, the hiring process at Location 681/721 was quite similar to that at Location 300. At all times relevant to this motion, Ms. Holly Woonton served as the Human Resources Manager for several Cintas facilities in Michigan, including Location 681/721. [*See* Woonton Dep., Def.'s Ex. 5, Doc. No. 858, pp.10, 23].

It was Ms. Woonton's responsibility, as HR Manager, to review and screen SSR applications and resumes. *Id*. at 10. When screening applicants, Ms. Woonton would:

> . . . see what their employment looked like, what type of experiences they had. Again. . . how many positions they had, reasons for leaving, and whether or not they had customer service or sales experience.

*Id*. at 19.

For Location 681/721, Ms. Woonton would generally screen all applications when an

4

SSR position needed to be filled. *Id*. at 10, 23. If a candidate advanced beyond an initial applicant screening, the interview process began with an initial screening interview - conducted by HR using standard, pre-set questions for the applicant. *Id*. at 21, 24. If a candidate advanced past this stage, two in-depth interviews would be conducted by other service managers, then a ride along with another SSR for a shift, followed by a final meeting with Location 681/721's General Manager. [Woonton Decl., Def.'s Ex. 6, Doc. No. 858, ¶7].

For Location 300, the application process was overseen by that facility's General Manager, who during the time relevant to this lawsuit was Mr. David Armbrester. [Armbrester Dep., Def.'s Ex. 7, Doc. No. 858, p.19]. The hiring process generally consisted of an application screening, following by initial intake interview for those passing the initial screening. *Id*. at 18-19. Next, advancing applicants would have two in-depth interviews with Location 300 service managers, followed by a ride along shift with an actual SSR. The final interview took place after the ride along, and was conducted by Mr. Armbrester. *Id*. at 12.

Mr. Armbrester testified that, in reviewing applications on the initial screening, "the most important things I was looking for were [a] high school diploma, good driving record [and] preferably someone who had customer service and sales. . . experience on their resume." *Id*. at 20. Further, he considered a "good driving record, kind of a friendly disposition, good customer service, good people skills, [and] a high school diploma" as "must-have[]" qualities in a successful SSR applicant, and "selling experience, customer service [and] leadership experience" as "preferred" qualities. *Id*. at 29-30.

Location 300 preferred applicants with a stable job history, as this would give Cintas some assurance that the applicant would stay in the SSR position after Cintas had invested time

and money on training the employee. [Armbrester Decl., Def.'s Ex. 10, Doc. No. 858, ¶5]. Mr. Armbrester also preferred applicants referred from an existing Cintas employee. [Armbrester Dep., pp.55-56]. In addition, Location 300 also favorably viewed applicants with prior military service, as these applicants - in Mr. Armbrester's experience - tended to demonstrate leadership skills, dedication, commitment, and a team attitude. [Armbrester Decl., ¶16].

At all times relevant to this litigation, Cintas had in effect a company-wide policy prohibiting unlawful discrimination on the basis of gender in hiring and other employment-related actions. [*See* Case No. 06-12311, Doc. No. 632, pp.3-4].

Susan Barber

Ms. Barber was not involved in this litigation until the EEOC sent her a solicitation letter in October of 2009. [Barber Dep., Def.'s Ex. 4, Doc. No. 858, p.48]. Ms. Barber submitted two separate applications to Cintas locations in early 2002 - an application to Location 681/721 in January of 2002 [*see* Def.'s Ex. 6-A, Doc. No. 858], and an application to Location 300 on March 20, 2002. [Barber Dep., pp.14].

The January 2002 Application to Location 681/721

Ms. Barber originally learned of job openings at Location 681/721 through an advertisement in the classifieds section of the Detroit News. [*See* Ex. 6-A, Doc. No. 858, p.2]. Ms. Barber dropped a resume and cover letter [Ex. 6-A, Doc. No. 858] through an outside mail slot in the door to Location 681/721 in late January of 2002.[3] [Barber Dep., p.105].

The resume outlined Ms. Barber's work history from 1991 through 2002, and though

---

[3] Though Ms. Barber does not specifically recall submitting the January resume to Location 681/721, the cover letter on the resume is dated January 25, 2002. [*See* Ex. 6-A, Doc. No. 858].

many of those positions demonstrated managerial experience and likely customer service skills, the entirety of Ms. Barber's application consisted of jobs in the retail clothing industry. [*See* Ex. 6-A, Doc. No. 858, p.3].  Further, though Ms. Barber had been consistently employed since 1991, during that time she had never held an individual position longer than a three-year period - and both her current job at Trademart and each of her two prior positions had been for no more than a year and half each.  *Id*.

Ultimately, Ms. Barber did not receive an interview in connection with her January 2002 application, and never spoke with anyone at Cintas regarding that application. [Barber Dep., pp.106-07].  Indeed, Cintas does not even have any evidence to prove that they even knew Ms. Barber applied for a position at Location 681/721 in January of 2002.[4]

According to Cintas, the "only other successful candidate who applied to Location 681/721 at or about the same time" as did Ms. Barber was Mr. William Bertrand. [Def.'s Br., Doc. No. 858, p.7].  Mr. Bertrand applied with Cintas on February 18, 2002, and was hired on March 20, 2002. [Woonton Decl., Def.'s Ex. B, Doc. No. 858, ¶11].  Mr. Bertrand's application showed that he had more than two years of experience as an industrial sales and service representative at Safety-Kleen - a route sales position similar to the SSR position.  *Id*. at ¶12.

<u>The March 2002 Application to Location 300</u>

Ms. Barber again applied for an SSR position with Cintas - this time at Location 300 - on

---

[4] While not disputing that Ms. Barber submitted her application in January of 2002, Ms. Woonton explains that it was not uncommon for Cintas locations to review only a fraction of all applications submitted at a given time, either because there were few or no open positions or because other candidates were already progressing through the process, making it unnecessary for the particular facility to review the remaining submitted applications. [*See* Woonton Decl., Dec.'s Ex. 9, Doc. No. 859, ¶9].

March 28, 2002.  On that day, Ms. Barber visited the Location 300 facility in Westland,

Michigan, and the following exchange occurred with a receptionist:

> I went into the Westland location, asked for an application, and when the woman
> handed it to me, she said what are you applying for, and I said the route sales
> position. *And she kind of said, good luck, they only hire women for the office*.

[Barber Dep., p.26 (emphasis added)].  Ms. Barber, however, fails to recall almost any of the

details surrounding this exchange:

> Q:    When you walked into the facility, did you have to walk down a hallway to
>       get to this room that you're describing or was it right within the door?
> A:    It was pretty much I think right within the door if I can recall, but it was a
>       long time ago.
> Q:    How large was the room?
> A:    Again, I don't recall - -
> Q:    Do you recall - -
> A:    - - exactly how big the room was.
> Q:    Do you recall whether or not there was any furniture in the room?
> A:    I don't recall.
> Q:    Do you recall what color the walls were?
> A:    No.

*Id*. at 28.  Similarly, Ms. Barber can recall absolutely no details about the woman she alleged

made this comment to her:

> Q:    Did she introduce herself to you?
> A:    I don't believe so.
> Q:    What did she look like?
> A:    I don't recall.
> Q:    Do you recall whether or not she had dark hair or light hair?
> A:    No.
> Q:    Do you recall whether she was tall or short?
> A:    No.
> Q:    Do you recall whether she was slender, overweight?
> A:    No.
> Q:    Do you recall anything about her other than the fact that she was a
>       woman?
> A:    No.

*Id*. at 29-30.  Despite her current claim that she was informed of Cintas' alleged discriminatory

hiring practices, Ms. Barber neglected to raise the issue with anyone prior to this lawsuit:

> Q:     Did you ask to speak with anyone about this woman's comment to you?
> A:     No.
> Q:     Did you consider contacting someone at Cintas to ask them about this
>        woman's comment?
> A:     No.
> Q:     Did you ever call Cintas headquarters to address this?
> A:     No.
> Q:     Did you contact anyone at the EEOC to address this comment?
> A:     No.

*Id*. at 31-31.

Ms. Barber signed her application with Location 300, in which she certified her

agreement to the following provision:

> The information contained in this application is true to the best of my knowledge
> and belief, and I understand and agree that any misrepresentation or false or
> incomplete statement by me in connection with the application will constitute
> justifiable cause for Cintas not to employ me or, if employed, to terminate my
> employment at any time.

[Location 300 Application, Def.'s Ex. 10-A, Doc. No. 858].  Despite this assertion, Ms. Barber

denied that she had previously applied for a position with Cintas, even though she had applied to

Location 681/721 only three months prior.  *Id*.  When asked about this discrepancy, Ms. Barber

acknowledged that her March 2002 application was not entirely accurate, but stated that she had

forgotten about the January 2002 application. [Barber Dep., pp.107-08].  Indeed, when initially

asked in her deposition, Ms. Barber did not even recall the January 2002 application to Location

681/721:

> Q:     Have you ever applied for a Cintas position other than this time in [March]
>        2002 in which you recall applying to the Westland, Michigan location?
> A:     No.

*Id.* at 15.

Ms. Barber's application with Location 300 reflected the same work history as was presented in her prior application to Location 681/721. As with her January 2002 application, Ms. Barber did not receive an interview in connection with her March 2002 application, and never spoke with anyone at Cintas regarding that application. Indeed, Cintas does not even have any evidence to prove that they even knew Ms. Barber applied for a position at Location 300 in March of 2002. Ms. Barber is aware of no additional information - other than the comment described *supra* - that would support a claim of gender discrimination against Cintas. [Barber Dep., pp.176-77].

According to Cintas, the applicant ultimately hired for the position Ms. Barber was applying for in March 2002 - and the only position open at that time at Location 300 - was Mr. Marvin Steigerwald. [Def.'s Br., p.9]. Mr. Steigerwald applied on February 8, 2002 and was hired on April 8, 2002 [Armbrester Decl., ¶9]. Accordingly, Mr. Steigerwald was already well into the interview process by the time Ms. Barber applied in March of 2002.

Mr. Steigerwald's application noted that he had been referred to Cintas by a current SSR - Nafal Maktari - which was a factor looked upon favorably by Cintas management. [Steigerwald Application, Def.'s Ex. 10-B, Doc. No. 858]. Mr. Steigerwald was also a veteran of the United States Marine Corps - another positive characteristic that Cintas management looked upon favorably in the hiring process. *Id.* Mr. Steigerwald's resume also showed - similar to Ms. Barber's application - prior experience in sales, management, and customer service positions. *Id.*

<u>Cintas' Instant Motion for Summary Judgment</u>

Following the close of discovery in this action, Cintas filed this motion for summary judgment [Doc. No. 858] on July 14, 2010. In this motion, Cintas argues that the EEOC's claims on behalf of Ms. Barber fail on their merits as a matter of law.[5] The EEOC opposes Cintas' motion. [Doc. No. 900]. The matter is now ripe for decision by the Court.

STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

ANALYSIS

In its instant motion [Doc. No. 858], Cintas argues that the EEOC's suit on behalf of Ms. Barber should be dismissed for two reasons: 1) because Ms. Barber was not "qualified" for an

---

[5] In addition to summary judgment motions attacking the merits of each of EEOC's thirteen individually-named plaintiffs, Cintas has also filed an omnibus motion attacking each of these named plaintiffs for procedural reasons - namely, the EEOC's failure to exhaust administrative remedies before filing this lawsuit. [*See* Doc. No. 836]. Notwithstanding the EEOC's arguments to the contrary [*see* EEOC's Br., Doc. No. 900., p.1, n1], the Court will address the merits of Ms. Barber's claims in this order, and will address the EEOC's alleged failure to exhaust administrative remedies on all named plaintiffs in a separate order.

SSR position - with respect to her March 2002 application - and therefore cannot advance a *prima facie* case of discrimination; and 2) because the EEOC cannot demonstrate that Cintas' decision not to hire Ms. Barber - on either application in 2002 - was a pretext for gender discrimination. While the Court disagrees with the first of these arguments, the Court agrees that the EEOC is unable to demonstrate that Cintas' hiring determinations were pretextual. Dismissal of the EEOC's claim on behalf of Ms. Barber is therefore proper.

Section 706 permits the EEOC to sue a private employer on behalf of a "person or persons aggrieved" by an employer's unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1). The EEOC is "master of its own case" when bringing suits on behalf of aggrieved persons in a § 706 lawsuit, and may bring such suits with or without the consent of the aggrieved persons. *EEOC v. Waffle House*, 534 U.S. 279, 291-92 (2002). "Nonetheless, it is axiomatic that the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all the elements of their [discrimination] claims to obtain individual relief for them." *EEOC v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918, 929 (N.D. Iowa 2009).

Absent evidence of intentional discrimination, the EEOC must pursue § 706 claims brought on behalf of aggrieved individuals under the familiar burden-shifting scheme outlined in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998); *see also Serrano v. Cintas Corp.*, - - F.Supp.2d. - -, 2010 WL 522846 (E.D. Mich. Feb. 9, 2010). Under the *McDonnell-Douglas* framework, plaintiffs must first establish a *prima facie* case of discrimination. *McDonnell-Douglas*, 422 U.S. at 802. Once the plaintiff has established such a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.

*Id*. If the employer articulates such a legitimate, nondiscriminatory reason, the plaintiff bears the

burden of proving that the employer's articulated reason is a pretext for discrimination. *Id*. The

Court will consider each of these issues in turn.

    I.  The EEOC's *Prima Facie* Case on Behalf of Ms. Barber.

        To establish a *prima facie* case of discriminatory hiring practices, a plaintiff without

direct evidence of discrimination must show that 1) she belonged to a protected class; 2) she

applied and was qualified for a job for which the employer was seeking applicants; 3) despite her

qualifications, she was rejected; and 4) after her rejection, the position remained open and the

employer continued to seek applicants from persons of the plaintiff's qualifications. *See*

*McDonnell-Douglas*, 411 U.S. at 802. In this case, Cintas makes no argument against Ms.

Barber's *prima facie* case with respect to her January 2002 application to Location 681/721, and

only disputes the second of these requirements with respect to the March 2002 application to

Location 300: that Ms. Barber was not "qualified" for an SSR position due to her lack of honesty

in completing the application:

> Additionally, this litigation has revealed that Ms. Barber, even though she
> specifically certified that her application was complete, denied having ever
> applied for a Cintas position, despite the fact that she had submitted a resume to
> Location 681/721 less than three months earlier. According to Mr. Armbrester,
> this indicates that Ms. Barber did not possess the honesty required to be an SSR. .
> . . Ms. Barber was dishonest on her application. She was not qualified to be an
> SSR, and the EEOC cannot make a *prima facie* showing of discrimination.

[Def.'s Br., Doc. No. 858, p.14].

        The Court disagrees. While Mr. Armbrester did testify that, in *his opinion*, Ms. Barber

was not qualified for employment as an SSR, this opinion does not, in and of itself, demonstrate

that Ms. Barber was unqualified as a matter of law. Under the summary judgment standard of

FED. R. CIV. P. 56, this Court is obligated to view the facts in the light most favorable to the non-moving party - Ms. Barber, and therefore, the EEOC as well. That a jury *could believe* the testimony of Cintas' managers when they allege Ms. Barber was unqualified simply does not make Ms. Barber unqualified as a matter of law.

When viewed in the light most favorable to the EEOC, it appears that, while Ms. Barber admitted at her deposition that her March 2002 application statement that she had never applied with Cintas previously was in error, there was no direct intent to deceive Cintas through this omission. As explained *supra*, when initially asked at her deposition whether she had ever applied at Cintas besides the March 2002 application, Ms. Barber *still did not remember ever applying at Location 681/721 in January of 2002*. In light of this testimony, and in the light most favorable to the EEOC, the Court finds that Ms. Barber simply did not remember applying to Location 681/721- an ignorance not necessarily indicative of an intent to deceive Cintas. The Court will therefore disregard this fact as evidence of Ms. Barber's alleged "unqualified" status.

In *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003), the Sixth Circuit elaborated on the requirements of the "qualified" element of a *prima facie* discrimination claim. The *Wexler* Court held that, "[a]t the prima facie state, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler*, 317 F.3d at 575 (emphasis in original). To meet this burden, plaintiffs need only "present[] credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id*. at 576. The Sixth Circuit elaborates as follows:

Although the specific qualifications will vary depending on the job in question,

the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrating possession of the required skills.

*Wexler*, 317 F.3d at 576.

Though Cintas only disputes Ms. Barber's "qualified" status on grounds of alleged dishonesty, for the record the Court finds that genuine issues of material fact remain regarding whether Ms. Barber was "qualified" for an SSR position with Cintas.

Admittedly, Ms. Barber did not have a wealth of employment experience in the area of route sales and delivery - the entirety of her previous work experience was confined to the clothing retail field. By its own admission though, Cintas preferred its applicants to have strong customer service and sales skills - two areas in which Ms. Barber's application was strong. Ms. Barber's managerial experience also would have likely been viewed in a positive manner by Cintas.

On the facts presented, the Court finds Ms. Barber "qualified" for an SSR position with Cintas for purposes of prong one of the *McDonnell-Douglas* inquiry. Summary judgment on the EEOC's *prima facie* claim is therefore improper, and Cintas' arguments to the contrary are without merit. Thus, the Court will move on to consider the second prong of the *McDonnell-Douglas* inquiry - Cintas' legitimate, nondiscriminatory rationale for its not hiring Ms. Barber.

II.  Cintas' Legitimate, Nondiscriminatory Rationale for Not Hiring Ms. Barber.

In its motion for summary judgment, Cintas argues that it has satisfied its requirement to proffer a legitimate, nondiscriminatory rationale for not hiring Ms. Barber:

> Even if the EEOC could make a *prima facie* showing of discrimination, Cintas has pointed to multiple legitimate, non-discriminatory reasons for why it did not hire Ms. Barber either time she applied. As discussed above, Location 681/721 hired a candidate who was more-qualified for the position than Ms. Barber

because he had work experience directly relevant to the SSR position as a route sales person for Safety-Kleen, whereas Ms. Barber had no such experience and only limited retail sales experience. And when she applied at Location 300 in March 2002, Mr. Steigerwald, who was also more qualified for the position than she, was well into the hiring process. . . .

[Def.'s Br., Doc. No. 858, p.15 (internal citations omitted)].

In its brief in opposition to Cintas' motion [Doc. No. 885], the EEOC's argument against Cintas' legitimate, nondiscriminatory rationale, in its entirety, is as follows:

Cintas completely fails to articulate any reason for not hiring Ms. Barber. Instead, when asked why Ms. Barber was not hired, Cintas' collective response has been simply "I don't know." Indeed, the reasons Cintas presents in its brief for failing to hire Ms. Barber - including the hiring of William Bertrand and Marvin Steigerwald - are simply guesses as to fact, not a legitimate explanation of its actions.

[EEOC's Br., Doc. No. 900, p.11 (footnoted material omitted)]. This argument, however, is unavailing. On the facts of this case, there is nothing wrong with Cintas' proffered argument advancing reasons why *it would not have hired Ms. Barber*. The EEOC offers no authority for its proposition that employers cannot offer rationales for why they would not have hired an applicant when no managerial employee specifically remembers reviewing that candidate's application. For purposes of this motion, therefore, the Court holds that Cintas' proffered rationales for not hiring Ms. Barber are legitimate and nondiscriminatory, and the EEOC's arguments to the contrary are without merit Thus, the Court will consider the third and final prong of the *McDonnell-Douglas* inquiry - the EEOC's ability to demonstrate that Cintas' rationales for not hiring Ms. Barber were a pretext for gender discrimination.

III.  The EEOC's Case for Pretext.

Cintas argues that the EEOC is unable to demonstrate that Cintas' asserted reasons for not

16

hiring Ms. Barber are pretextual.  [Def.'s Br., Doc. No. 858, pp.15-16].  The Court agrees, and

therefore **GRANTS** Cintas' motion for summary judgment [Doc. No. 858].

> The Sixth Circuit has held that pretext can be shown:

> . . . in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's decision.

*Chen v. Dow Chemical Corp.*, 580 F.3d 394, 400 (6th Cir. 2009), citing *Hedrick v. W. Reserve*

*Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004).  To carry its burden in opposing summary

judgment, the EEOC must produce sufficient evidence from which a jury could reasonably reject

Cintas' explanation of why it chose not to hire Ms. Barber.  *Id*.  Further, it is not sufficient for the

EEOC to simply allege fact questions regarding the pretextual nature of Cintas' actions.  "A

defendant's proffered reason cannot be proved to be a pretext 'unless it is shown *both* that the

reason was false *and* that discrimination was the real reason.'" *Harris v. Metro. Gov't of*

*Nashville and Davidson County, Tennessee*, 594 F.3d 476, 486 (6th Cir. 2010), citing *St. Mary's*

*Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (quotations and emphasis in original).

The EEOC relies upon three primary arguments in support of pretext: 1) the receptionist's

comment allegedly made to Ms. Barber at Location 300 in March of 2002; 2) statistical evidence

of Cintas' hiring practices, and 3) comparisons between Ms. Barber's qualifications and those of

the individuals ultimately hired by Cintas.  None of these, however, establish that Cintas' failure

to hire Ms. Barber was a pretext for gender discrimination.

A.  Comments from an Unidentified, Non-Managerial Cintas Employee.

The EEOC argues that the comment made to Ms. Barber by the receptionist at Location

300 - i.e., that Cintas only hires men for SSR positions - demonstrates the pretextual nature of

Cintas' rationale for not hiring Ms. Barber. The EEOC argues as follows:

> As an initial matter, Ms. Barber has testified that a Cintas employee told her that Cintas only hired men for the SSR position. *Ercegovich v. Goodyear Tire and Rubber Co.*, 154 F.3d 344, 356-57 (comments made by nondecision maker may be relevant to an individual claim of discrimination if such comments show a "corporate state-of-mind" or "discriminatory atmosphere").

[EEOC's Br., Doc. No. 900, p.13 (internal citation omitted)]. The Court disagrees.

While the EEOC's quotation from *Ercegovich* is accurate, a closer examination of that Sixth Circuit holding demonstrates the error in the EEOC's current argument. In that case:

> Ercegovich relie[d] on numerous age-based statements allegedly made by several individuals occupying high positions in Goodyear's Retail Sales Division, including the vice president overseeing the entire division. . . .

*Ercegovich*, 154 F.3d at 354. The Sixth Circuit then outlined the standard for evaluating such remarks as evidence of discriminatory pretext:

> In assessing the relevancy of a discriminatory remark, we look first at the identity of the speaker. *An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of age discrimination.*

*Id*. (emphasis added). While *Ercegovich* then softened its above-quoted stance, it by no means eliminated the requirement that the speaker play some role in the ultimate adverse employment action against the employee:

> . . . remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, *but who nevertheless played a meaningful role in the decision* to terminate the plaintiff, [are] relevant.

*Id*. at 354-44 (emphasis added).

In this case, however, the speaker - an unidentified receptionist at Location 300 in March of 2002 - did not play "a meaningful role in the decision" to not extend an employment offer to

Ms. Barber.  Indeed, save for handing Ms. Barber an application - and, presumably, placing the completed application with others for HR's review - the receptionist here played *no role at all* in the decision not to hire Ms. Barber.

The *Ercegovich* Court went on to elucidate one final avenue for plaintiffs to show discriminatory pretext through isolated comments - but like the previous analysis, this also fails to save Ms. Barber's claims.  The Sixth Circuit held as follows:

> Although discriminatory statements by a nondecision maker, standing alone, do not generally support an inference of discrimination, the comments of a nondecisionmaker are not categorically excludable.  Circumstantial evidence establishing the existence of a *discriminatory atmosphere* at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff.  While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.

*Ercegovich*, 154 F.3d at 356 (internal citations and quotations omitted) (emphasis added).  The Sixth Circuit's underlying rationale behind such a "discriminatory atmosphere" inquiry, as quoted below, however, demonstrates how the EEOC's reliance on this passage is misplaced:

> Discriminatory statements may reflect a cumulative managerial attitude *among the defendant-employer's managers* that has influenced the decisionmaking process for a considerable time.  Thus, *management's consideration of an impermissible factor* in one context may support the inference that the impermissible factor entered into the decisionmaking process in another context. . . *This is especially true when the discriminatory statement is not an off-hand comment by a low-level supervisor* but a remark by a senior official evidencing managerial policy.

*Id*. at 357 (internal citations and quotations omitted) (emphasis added).

Here, by contrast, Ms. Barber only has evidence of a lone, isolated, "off-hand" comment allegedly made by a Cintas employee.  Further, this comment was not even made by "a low-level

supervisor," which itself would fail *Ercegovich*'s "discriminatory atmosphere" analysis - the woman who allegedly made the comment was a receptionist at Location 300, whom the EEOC has failed to show had *anything meaningful at all to do with managerial policy*. For these reasons, the Court holds that the isolated comment allegedly made to Ms. Barber as she filled out her March 2002 employment application does not establish the pretextual nature of Cintas' decision not to hire her. The EEOC's arguments to the contrary are without merit.

> B. <u>Statistical Evidence of Cintas' Alleged Discriminatory Hiring Practices</u>.

The EEOC argues that statistical evidence of Cintas' hiring practices also demonstrates the pretextual nature of Cintas' rationale for not hiring Ms. Barber:

> [D]ocuments provided by Cintas established that in the state of Michigan from 1999 through the first quarter of 2005 Cintas hired 427 SSRs. Of these hires only 24 were females, or about 5.6%. These statistics ring true at Location 300, indeed, no women were hired during the relevant time frame.

[EEOC's Br., Doc. No. 900, p.13 (internal citations omitted)]. In support of this argument, the EEOC relies primarily upon the following quote from a Sixth Circuit opinion:

> When the plaintiff offers "other probative evidence of discrimination, that evidence, taken together with the evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment."

[EEOC's Br., Doc. No. 888, p.15, quoting *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 392 (6th Cir. 2009), citing *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006)]. Here, the EEOC argues that Ms. Barber was more qualified for an SSR position than were other male applicants who were hired - discussed *infra*. This, coupled with the statistical evidence proffered, the EEOC argues, is sufficient to rebut Cintas' rationale as pretextual. [EEOC's Br., Doc. No. 900, p.13]. The Court disagrees.

In *Risch*, the Sixth Circuit considered the claims of a female police officer who was allegedly passed over for a detective position with her police department because she was a woman. *Risch*, 581 F.3d at 385. The police department passed over her "in favor of two male applicants who had lower scores than Risch under the promotion system used by the Department." *Id*. While the EEOC's quote from *Risch*, noted *supra*, is accurate, the "other probative evidence" relied upon in *Risch* was as follows:

> The record also contains other evidence probative of pretext. The record indicates that male officers frequently made degrading comments regarding the capabilities of female officers, expressed the view that female officers would never be promoted to command positions, and made generally degrading remarks about women.

*Risch*, 581 F.3d at 392. These statements, the Sixth Circuit held, "evidence a discriminatory atmosphere in the Department in which male officers frequently made derogatory or discriminatory remarks about female officers." *Id*. at 393. Thus, the Sixth Circuit held, the plaintiff in *Risch* had presented enough evidence to survive summary judgment:

> In light of the above evidence of a discriminatory atmosphere in the Department, the lack of women in command positions at the Department, and the evidence that Risch was arguably better qualified than the two male applicants promoted in 2005, we conclude that Risch has produced sufficient evidence to establish a genuine issue of material fact concerning whether the Department's proffered legitimate, nondiscriminatory reason was pretextual.

*Id*. at 394.

Here, by contrast, the EEOC's "other evidence" is limited to the statistical analysis of Dr. Thomas DiPrete. [*See* EEOC's Ex. BB, Doc. No. 901]. In his expert report, Dr. DiPrete examined all SSR hirings at Cintas locations in Michigan from 1999 to 2005, and found that, of the 427 SSR hirings in the state of Michigan during that time, only 24 - or approximately 5.6% -

were female. [*See* DiPrete Report, EEOC's Ex. BB, Doc. No. 901, p.5; EEOC's Br., Doc. No. 900, p.2]. Based on Dr. DiPrete's analysis, the EEOC goes on to argue as follows:

> Comparing the estimated availability with the females hired, Dr. DiPrete noted a pattern of under hiring that was statistically significant beyond the threshold of two standard deviations. That is, it is highly unlikely that the pattern of under hiring females at Cintas occurred by chance alone.

[EEOC's Br., Doc. No. 900, p.3]. The Court, however, disagrees.

In *Bowdish v. Continental Accessories, Inc.*, 1992 WL 133022 (6th Cir. June 12, 1992), the Sixth Circuit rejected that plaintiff's attempts to use anecdotal evidence as evidence of discriminatory pretext. The *Bowdish* Court then held that anecdotal or statistical evidence, on its own, is insufficient to establish pretext:

> . . . such evidence, standing alone, still would not be sufficient to establish a case of individual disparate treatment. An individual plaintiff in an employment discrimination case must present some evidence that demonstrates that his or her individual discharge was the result of discrimination.

*Bowdish*, 1992 WL 133022, *5. Therefore, the EEOC's attempt in this litigation to demonstrate the pretextual nature of Cintas failure to hire Ms. Barber by statistical or anecdotal evidence is insufficient. Dr. DiPrete admitted as much at his deposition, when he stated that he could not express any opinion in regards to why any individual named plaintiff may not have been hired. [*See* DiPrete Dep., Def.'s Ex. 3, Doc. No. 911, pp.67-69, 136-37].

Further, the EEOC's attempt to bootstrap a pretext finding based upon cobbled-together anecdotes from individuals commenting on other locations and times than Ms. Barber's 2002 applications, from statistics relating to the purported hiring patterns of other Cintas locations, and from the concurrently-filed cases of the other twelve named plaintiffs in this matter, each also fail to demonstrate pretext in this matter. "Other location" and "other time" hiring decisions are

irrelevant to the question of whether Cintas refused to hire Ms. Barber because of her gender. *See, e.g., Davis v. Hammonds*, 103 Fed. Appx. 51, 53 (8th Cir. 2004); *Shaw v. Monroe County*, 1996 WL 426483 (E.D. Mich. Apr. 18, 1996).

Finally, even if statistics alone *could* warrant consideration as evidence of pretext in this matter, the EEOC's statistics are merely "statistics without correlation," which "are indicative of no meaningful inference or conclusion." *Shaw*, 1996 WL 426483, *8, quoting *Long v. City of Saginaw*, 911 F.2d 1192, 1201 (6th Cir. 1990). In *Long*, the Sixth Circuit rejected statistics which purported to show the availability of minority candidates for the Saginaw Police Department. In that case, the "available labor pool" used to calculate the statistics was held to be *too broad in scope*, because it included all individuals identified as working in "protective services" by the U.S. Census Bureau - a classification that included "bouncers, camp guards, school-crossing guards, meter maids. . . life guards, dog catchers, [and] bodyguards[,]" to name but a few examples. *Long*, 911 F.2d at 1200.

Here, the EEOC's statistical analysis by Dr. DiPrete is even broader than the available labor pool utilized in *Long* - it includes census labor groupings such as human resource managers, computer support specialists, clergy, elementary and middle school teachers, artists, cooks, counter attendants and convenience store clerks, receptionists, and office clerks within its calculations of the available labor pool. While the EEOC vigorously disputes the propriety of basing the available labor pool for SSR positions on a single census occupation code - 913, relating to driver/sales workers and truck drivers [*see* Doc. No. 833, pp.12-17] - *clearly* the EEOC's own statistics draw from far too broad an available labor pool - and thus overly inflate female availability for SSR positions. For these reasons, the EEOC has not proffered the type of

"other probable evidence" discussed in *Risch* as sufficient to survive summary judgment.

### C. Ms. Barber's Comparative Qualifications for an SSR Position.

Again, save for the EEOC's statistical evidence proffered by Dr. DiPrete, the EEOC's

sole evidence to demonstrate pretext on behalf of Ms. Barber is limited to the argument that Ms.

Barber was more qualified for an SSR position than were any of the men who were hired instead

of her. [*See* EEOC's Br., Doc. No. 900, pp.13-15].  These comparative qualifications, the EEOC

argues, demonstrate the pretextual nature of Cintas' failure to hire Ms. Barber.

The Court disagrees.  As the Sixth Circuit commented in *Bender v. Hecht's Dept. Stores*,

455 F.3d 612 (6th Cir. 2006):

> Of course, acknowledging that evidence of comparative qualifications may be
> probative of pretext is a far cry from holding that such evidence is itself sufficient
> in all cases to raise a genuine issue of fact of discriminatory motive.  For we need
> to balance the Supreme Court's statement in *Burdine* [that qualifications evidence
> may be probative of whether the employer's reasons are pretexts for
> discrimination] with the principles that employers are generally free to choose
> among qualified candidates, and that the law does not require employers to make
> perfect decisions, nor forbid them from making decisions that others may disagree
> with. . . a rejected applicant must show that a reasonable jury could conclude that
> the actual reasons offered by the defendant were a mere pretext for unlawful
> []discrimination, not that other reasonable decision-makers might have retained
> the plaintiff.

*Bender*, 455 F.3d at 626 (internal citations and quotations omitted).  The *Bender* Court went on

to hold as follows:

> On the other hand, in the case in which there is little or no other probative
> evidence of discrimination, to survive summary judgment the rejected applicant's
> qualifications must be *so significantly better than the successful applicant's
> qualifications that no reasonable employer would have chosen the latter applicant
> over the former*.  In negative terms, evidence that a rejected applicant was as
> qualified or marginally more qualified than the successful candidate is
> insufficient, in and of itself, to raise a genuine issue of material fact that the
> employer's proffered legitimate, non-discriminatory rationale was pretextual.

*Bender*, 455 F.3d at 627 (emphasis added).

The EEOC has failed, however, to demonstrate that Ms. Barber's qualifications were "so significantly better" than those of other, successful applicants that "no reasonable employer would have chosen the latter applicant[s] over the former." *Bender*, 455 F.3d at 627. Further, to allow these type of side-by-side comparisons of Ms. Barber's qualifications to those of successful applicants - absent other probative evidence of discrimination - would, in the words of the *Bender* Court:

> . . . move this court from its proper role of preventing unlawful employment practices to the illegitimate role of acting as a "super personnel department," overseeing and second-guessing employers' business decisions.

*Bender*, 455 F.3d at 628, quoting *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983). Even assuming, *arguendo*, that Ms. Barber would have appeared to be a more qualified candidate for a Cintas SSR position than those whom Cintas ultimately hired - a holding this Court emphatically does *not* reach in this opinion - the Court holds that the EEOC has failed to demonstrate that Ms. Barber's qualifications were "so significantly better" that "no reasonable employer would have chosen the latter applicant[s] over the former." *Bender*, 455 F.3d at 627.

Even assuming that the EEOC could show that Cintas' purportedly legitimate, nondiscriminatory reasons for not hiring Ms. Barber were pretextual, the EEOC has failed to offer any evidence raising a genuine issue of material fact that these reasons were a pretext for gender discrimination. This evidentiary failure is fatal to the EEOC's claim on behalf of Ms. Barber in this litigation, and summary judgment in Cintas' favor is therefore proper. The

EEOC's arguments to the contrary are without merit.

CONCLUSION

For the reasons explained above, the Court **GRANTS** Cintas' motion for summary

judgment [Doc. No. 858], and **DISMISSES WITH PREJUDICE** the EEOC's claim brought on

behalf of Ms. Barber.

**IT IS SO ORDERED.**


S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  September 9, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on
September 9, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager