UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                                  Case Nos. 04-40132; 06-12311

        Plaintiff- Intervenor                          HONORABLE SEAN F. COX
                                                                    United States District Judge

v.

CINTAS CORPORATION,

        Defendant.

_____/

<u>OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT re: DIANA LEE RABY [Doc. No. 869]</u>

      On December 23, 2005, the Equal Employment Opportunity Commission ("EEOC") filed

complaints as an intervening plaintiff in two cases that were consolidated for pretrial purposes -

*Mirna E. Serrano, et al. v. Cintas Corp.* [Case No. 04-40132]; and *Blanca Nelly Avalos, et al. v.*

*Cintas Corp.* [Case No. 06-12311] - alleging that Defendant Cintas Corporation ("Cintas")

engaged in discriminatory hiring practices against female applicants in violation of 42 U.S.C. §

2000e-5, also known as a "Section 706" action.[1]  In March of 2010, the EEOC identified Ms.

Diana Lee Raby ("Raby") as one of thirteen individuals upon whose behalf the EEOC brought

this § 706 action.  The matter is before the Court on Cintas' motion for summary judgment [Doc.

No. 869] with respect to Ms. Raby's claims.  The parties have fully briefed the issues, and the

Court declines to hear oral argument pursuant to E.D. MICH. L.R. 7.1(f)(2).  For the reasons that

_____

     [1] For ease of reference, all further citations to document numbers in this motion will refer to the
04-40132 case unless otherwise noted.

follow, the Court **GRANTS** Cintas' motion [Doc. No. 869], and **DISMISSES WITH PREJUDICE** the EEOC's claim brought on behalf of Ms. Raby.

BACKGROUND

These causes of action have already suffered through a long, complex factual and procedural history - a history already discussed by the Court in previous orders. Therefore, only those facts of particular relevance to the instant motion are included below.

<u>Background to this Litigation</u>

The individual plaintiffs in the *Serrano* action filed their original charge of discrimination with the EEOC on or about April 7, 2000 - over a decade ago. [*See Serrano* Complaint, Doc. No. 1, ¶7]. Two years later, in June of 2002 - the EEOC issued a determination that reasonable cause existed to believe Cintas had engaged in discriminatory hiring practices. [*See* Doc. No. 1, Ex. A]. After two more years, in May of 2004, the EEOC formally declined to issue a right to sue letter - at which time the *Serrano* individual plaintiffs filed their lawsuit in this action. *Id*.

Roughly a year and a half after that - on December 23, 2005 - the EEOC filed suit as an intervening plaintiff in this action. [*See* Doc. No. 98]. The EEOC's first complaint brought actions under §§ 705 and 706. The EEOC also filed an amended complaint on August 20, 2009.

Since that time, the Court has denied both the *Serrano* and *Avalos* plaintiffs' motions for class-action certification [*see* Doc. No. 627] - and the Sixth Circuit has denied motions for interlocutory appeal. [*See* Doc. Nos. 632, 633]. All individual plaintiffs in the *Avalos* matter have had their cases either dismissed, settled, or otherwise resolved [*see* Case No. 06-12311, Doc. No. 647], as is also the case with all plaintiffs in the *Serrano* matter save for Mirna E.

Serrano herself.[2] [*See* Doc. Nos. 712, 722, 732]. Practically speaking, therefore, all that remains of the *Serrano* and *Avalos* matters is the EEOC's § 706 claims against Cintas.

On October 21, 2009, Cintas filed its motion [Doc. No. 662] seeking to preclude the EEOC from proceeding under the "pattern or practice" framework announced by the U.S. Supreme Court in *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). In opposition to that motion, the EEOC argued that it was entitled to pursue a "pattern or practice" action under the *Teamsters* framework - traditionally reserved for § 707 actions - in this action brought under § 706. [*See* Doc. No. 664].

On February 9, 2010, the Court granted Cintas' motion [Doc. No. 662], holding that the EEOC was precluded from advancing its § 706 claims against Cintas under the "pattern or practice" framework announced by the U.S. Supreme Court in *Teamsters*, but instead must proceed under the framework in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). [*See* Doc. No. 723, p.21]. The Court denied the EEOC's motion to certify the issue for interlocutory appeal [*see* Doc. No. 752], and then subsequently denied the EEOC's second motion to amend the complaint to add a "pattern or practice" cause of action under § 707. [*See* Doc. No. 829].

The EEOC was required to disclose the names of all individuals upon whose behalf the EEOC was bringing this § 706 suit against Cintas no later than March 23, 2010. [*See* Doc. No. 735, p.16]. Though forty-six females were initially listed by the EEOC as having claims in this action, that number has since been pared to thirteen individual females - one of whom is Diana Lee Raby, the subject of this motion - who applied for an SSR position with Cintas at its Flint,

_____

[2] Cintas' motion to dismiss the claims of Ms. Serrano [Doc. No. 881] is currently pending before this Court, which is unopposed by Ms. Serrano [Doc. No. 881, p.4] - though the EEOC opposes the Court granting the motion. [*See* Doc. No. 884].

Michigan ("Location 308") facility in April of 2002.

<u>The SSR Position and SSR Hiring Procedures at Location 308</u>

Cintas' SSR position is a sales and route driver position. Generally speaking, the position requires driving a truck, selling Cintas' goods and services, and servicing current Cintas accounts for laundry, uniforms and linen products. As the Court previously held in the *Avalos* matter:

> SSRs drive trucks and deliver clean uniforms, mats and supplies to specific customers on their assigned routes. . . SSRs must insure that their trucks are properly loaded with the correct uniforms and products to fulfill the needs of specific customers. As they visit each account, they are tasked with increasing sales and maintaining customer satisfaction at the highest possible level.

[Case No. 06-12311, Doc. No. 186, pp.5-6].

For Location 308, the application process was overseen by Mr. Don Hinkle, a service manager. If a candidate advanced past the initial application screening, they would have a series of interviews with service managers, who would each evaluate the candidate independently. [Hinkle Dep., Def.'s Ex. 5, Doc. No. 869, pp.17, 20]. Candidates advancing in the hiring process would then go on a route ride to judge whether the candidate liked the position. *Id*. at 22. There would also be reference checks and a final interview with the General Manager for Location 308, who would make the ultimate hiring decision. *Id*.

Mr. Hinkle testified that, in reviewing applications, Location 308 managers were looking for relevant prior experience, including customer service and sales potential. *Id*. at 13. Stability in an applicant's prior job history was also important, as it gave Cintas some assurance that the applicant would stay in the SSR position after Cintas invested time and money in training them. [Hinkle Decl., Def.'s Ex. 6, Doc. No. 869, ¶11]. Honesty was also considered a critical attribute for successful applicants [Hinkle Dep., p.20] - a factor already considered by this Court in prior

4

orders to be a requirement to be qualified as an SSR applicant. [*See, e.g.,* Doc. No. 511, p.4].

Location 308 also gave preferential consideration to qualified internal candidates when positions became available. [Hinkle Decl., ¶15].  Mr. Hinkle himself was proof of this internal policy, as he began his thirty-year career with Cintas as an SSR, and received numerous promotions. [Hinkle Dep., pp.8-9].  Location 308 believed that the opportunity to observe a candidate on-the-job often made for a better, more informed evaluation than could normally be realized in an interview - plus, internal candidates had already demonstrated a level of commitment to the company. [Hinkle Decl., ¶¶15-16].

At all times relevant to this litigation, Cintas had in effect a company-wide policy prohibiting unlawful discrimination on the basis of gender in hiring and other employment-related actions. [*See* Case No. 06-12311, Doc. No. 632, pp.3-4].

Diana Lee Raby

Ms. Raby was not involved in this litigation until the EEOC sent her a solicitation letter in early 2010. [Raby Dep., Def.'s Ex. 4, Doc. No. 869, pp.35-36].  After seeing an ad in the newspaper, Ms. Raby stopped into Location 308 on April 19, 2002, and filled out an application. *Id*. at 36.  Ms. Raby elaborated as follows in her deposition:

> Q:   What do you remember about the actual application process with Cintas?
> A:   I remember they had a[n] add in the paper and I - - so my sister took me down there.  And I can't remember if I filled it out there or not, but then I turned it in and didn't hear anything, and I called a couple of times and I believe I stopped in there once after that, and I just figured they weren't hiring.

[Raby Dep., pp.36-37].  Ms. Raby did not have an interview with Cintas the day she turned in her application at Location 308, *Id*. at 39, and Cintas states that "no manager or other employee at

Location 308 has testified that he or she recalls Ms. Raby or her application." [Def.'s Br., Doc. No. 869, p.7].

Ms. Raby's application included the following certification, to which Ms. Raby agreed as indicated by her signature:

> The information contained in this application is true to the best of my knowledge and belief, and I understand and agree that any misrepresentation or false or incomplete statement by me in connection with the application will constitute justifiable cause for Cintas not to employ me or, if employed, to terminate my employment at any time.

[Def.'s Ex. 6-A, Doc. No. 869]. Despite this assurance, however, there were several misrepresentations made by Ms. Raby in the prior employment section of her application.

Ms. Raby's application shows that she worked at a truck driver for Gainey Transport Services from January 1991 until May 1995, immediately followed by a position at Lentz Muffler as a delivery driver from May 1995 until May 1996, and then as a delivery driver for ACI Parts Warehousing from May 1996 until the time of her Cintas application in 2002.[3] *Id.* At her deposition, however, Ms. Raby stated that she had worked at Regis Inventory Specialists for two to three months before applying at Location 308:

> Q:   Okay. So you were working at Regis when you applied at Cintas, is that correct?
> A:   Yes.
> Q:   How long had you been working at Regis when you applied to Cintas?
> A:   Maybe two months, three months.

[Raby Dep., p.25]. This, obviously, is in conflict with Mr. Raby's representation on her application that she was still employed by ACI Parts Warehousing at that time.

---

[3] Curiously, Ms. Raby's application with Location 308, signed on April 19, 2002, states that she worked at ACI Parts Warehousing until August of 2002 - a date roughly four months into the future.

Ms. Raby left numerous other prior positions off of her April 2002 application with Location 308. For instance, Ms. Raby worked at a gas station in Clio, Michigan for a two-week period before moving on to another position:

Q: None [other positions held] that you can recall?
A: A gas station, a Shell gas station.
Q: Before you applied to Regis?
A: I think so, I'm trying to remember.
Q: Did you get a job at the gas station?
A: *I did for two weeks.*
       *****
Q: And what happened after two weeks?
A: *I didn't like it, I got - - I got the job with Regis is what, I think, happened there.*
Q: And you resigned from the gas station job voluntarily after two weeks?
A: Yes.

*Id*. at 33 (emphasis added). Again, Ms. Raby states that the gas station position was held immediately prior to her job with Regis - and, as discussed *supra*, Ms. Raby had only held the Regis position for two or three months before applying with Cintas.

Ms. Raby also neglected to inform Cintas about several other positions she had held during the seven-year period her application instructed her to disclose, including positions with Transfix [Raby Dep., p.55], Cass City Laundromat, *id*. at 68, and Provincial House Nursing Home. *Id*. at 69. Furthermore, Ms. Raby admitted at her deposition that many of the dates she disclosed on her April 2002 application with Location 308 conflict with those she had disclosed to other employers - and also conflict with responses provided in the course of this litigation:

Q: And sitting here today, you don't recall how long you worked at Gainey, correct?
A: Not really.
Q: On the Cintas application you said it was from January of '91 to May of '95, correct?
A: It was in there that - - yes.

7

> Q: On your ACI application you said it was from January of '91 to February
> of '93?
> A: That's because I get my dates mixed up.
> Q: Okay. And in the answers to your interrogatories you said 1989, you were
> a truck driver until 1998.
> A: Um-hmm.
> Q: And that's definitely wrong, correct?
> A: Yes.

*Id*. at 68.

Ultimately, Ms. Raby did not receive an initial screening interview from Location 308 as a result of her April 2002 application. Ms. Raby admitted in her deposition that she did not believe herself to have been the victim of gender discrimination until the EEOC contacted her in relation to this litigation:

> Q: Before being contacted by the EEOC, did you have any reason to believe
> that Cintas had treated you unfairly because of your gender?
> A: No.
> Q: Sitting here today, do you have any facts that would support the allegation
> that Cintas treated you unfairly because of your gender?
> A: No.

*Id*. at 36.

The SSR opening that Ms. Raby applied for was ultimately filled by Mr. Jason Reed - who had applied to Location 308 for a position as a loader on February 26, 2002, and was promoted to the SSR position as an internal employee. [Hinkle Decl., ¶¶14-16]. Mr. Reed's application showed a stable prior work history - he worked as a delivery driver for Balkan Baking Co. from 1994 until 1997, as a warehouse supervisor for 7 Up from 1997 to 2001, and as a sheet metal worker for T.M. Inc. from October 2001 until he was laid off in January of 2002. [*See* Reed Application, Def.'s 6-B, Doc. No. 869]. Location 308's management had an opportunity to observe Mr. Reed's job performance for several months before he was promoted to the open SSR

position on June 3, 2002, and felt he was well-qualified for the position. [Hinkle Decl., ¶16].

<u>Cintas' Instant Motion for Summary Judgment</u>

Following the close of discovery in this action, Cintas filed this motion for summary judgment [Doc. No. 869] on July 14, 2010.  In this motion, Cintas argues that the EEOC's claims on behalf of Ms. Raby fail on their merits as a matter of law.[4]  The EEOC opposes Cintas' motion. [Doc. No. 892].  The matter is now ripe for decision by the Court.

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

## ANALYSIS

In its instant motion [Doc. No. 869], Cintas argues that the EEOC's suit on behalf of Ms.

---

[4] In addition to summary judgment motions attacking the merits of each of EEOC's thirteen individually-named plaintiffs, Cintas has also filed an omnibus motion attacking each of these named plaintiffs for procedural reasons - namely, the EEOC's failure to exhaust administrative remedies before filing this lawsuit. [*See* Doc. No. 836].  Notwithstanding the EEOC's arguments to the contrary [*see* EEOC's Br., Doc. No. 892, n1], the Court will address the merits of Ms. Raby's claims in this order, and will address the EEOC's alleged failure to exhaust administrative remedies on all named plaintiffs in a separate order.

Raby should be dismissed for three reasons: 1) because Ms. Raby was not "qualified" for an SSR position and therefore cannot advance a *prima facie* case of discrimination; 2) because the EEOC cannot demonstrate that Cintas' decision not to hire Ms. Raby was a pretext for gender discrimination; and 3) because Ms. Raby's prior bankruptcy filing precludes recovery by the EEOC in this matter.  As the Court agrees with the first two of these arguments, dismissal of the EEOC's claims on behalf of Ms. Raby is ultimately proper.[5]

Section 706 permits the EEOC to sue a private employer on behalf of a "person or persons aggrieved" by an employer's unlawful employment practice.  42 U.S.C. § 2000e-5(f)(1).  The EEOC is "master of its own case" when bringing suits on behalf of aggrieved persons in a § 706 lawsuit, and may bring such suits with or without the consent of the aggrieved persons. *EEOC v. Waffle House*, 534 U.S. 279, 291-92 (2002).  "Nonetheless, it is axiomatic that the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all the elements of their [discrimination] claims to obtain individual relief for them." *EEOC v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918, 929 (N.D. Iowa 2009).

Absent evidence of intentional discrimination, the EEOC must pursue § 706 claims brought on behalf of aggrieved individuals under the familiar burden-shifting scheme outlined in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998); *see also Serrano v. Cintas Corp.*, - - F.Supp.2d. - -, 2010 WL 522846 (E.D. Mich. Feb. 9, 2010).  Under the *McDonnell-Douglas* framework, plaintiffs must first establish a *prima facie* case of discrimination. *McDonnell-Douglas*, 422 U.S. at 802.

---

[5] As dismissal of the EEOC's claims on behalf of Ms. Raby is warranted for the first two of these reasons, the Court declines to reach Cintas' alternate argument regarding Ms. Raby's prior bankruptcy filing.

Once the plaintiff has established such a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the employer articulates such a legitimate, nondiscriminatory reason, the plaintiff bears the burden of proving that the employer's articulated reason is a pretext for discrimination. *Id*. The Court will consider each of these issues in turn.

I. The EEOC's *Prima Facie* Case on Behalf of Ms. Raby.

To establish a *prima facie* case of discriminatory hiring practices, a plaintiff without direct evidence of discrimination must show that 1) she belonged to a protected class; 2) she applied and was qualified for a job for which the employer was seeking applicants; 3) despite her qualifications, she was rejected; and 4) after her rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. *See McDonnell-Douglas*, 411 U.S. at 802. In this case, Cintas only disputes the second of these requirements with respect to Ms. Raby's April 2002 application: that Ms. Raby was not "qualified" for an SSR position due to her lack of honesty in completing the application. The Court agrees.

In *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003), the Sixth Circuit elaborated on the requirements of the "qualified" element of a *prima facie* discrimination claim. The *Wexler* Court held that, "[a]t the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler*, 317 F.3d at 575 (emphasis in original). To meet this burden, plaintiffs need only "present[] credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id*. at 576. The Sixth Circuit elaborates

11

as follows:

> Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrating possession of the required skills.

*Wexler*, 317 F.3d at 576.

In support of its argument that Ms. Raby was not "qualified" for a position with Location 308, Cintas argues as follows:

> Moreover, this litigation has revealed that Ms. Raby - even though she certified that her application was complete - failed to disclose multiple employers. According to Mr. Hinkle, this indicates that Ms. Raby did not possess the honesty required to be an SSR. This Court has already found that "basic honesty was an objective qualification for a position with Cintas" and that a claimant who "had lied on his employment application, even though the application stated several times with clear language that complete and accurate information was required. . . was thus not qualified for the job sought and. . . failed to establish a *prima facie* case of discrimination." Ms. Raby failed to demonstrate basic honesty on her application, she was objectively unqualified for the SSR position[.]

[Def.'s Br., Doc. No. 869, pp. 12-13, citing Doc. No. 511, p.5 (internal citations omitted)].

In opposition, the EEOC argues as follows:

> Ms. Raby did not list a few jobs because of the short-term nature of those jobs and she did not see their relevance to Cintas. She had no intent to mislead Cintas. Cintas complains that Ms. Raby did not list two jobs that she had in the late 1980's, but the instructions on Cintas' application asks for work history for seven years only.

[EEOC's Br., Doc. No. 892, p.9]. The Court disagrees. As Cintas argues in its reply brief:

> The EEOC argues at length that Ms. Raby did not leave crucial information off of her application, but cannot dispute the salient facts: she conveniently failed to identify several short term jobs (including the one she held at the time of her application), and her application is admittedly riddled with other omissions and inaccuracies. Aware of this, the EEOC resorts to arguing that her errors were somehow excusable by pointing to Ms. Raby's self-serving testimony that she did not intend to mislead Cintas, even though this Court has already rejected similar attempts to excuse dishonesty.

[Def.'s Reply Br., Doc. No. 917, p.4 (internal citations omitted)]. The Court agrees. On the facts presented, the Court finds Ms. Raby was not honest on her April 2002 application regarding the true nature of her prior employment, and was therefore not "qualified" for an SSR position for purposes of prong one of the *McDonnell-Douglas* inquiry. Summary judgment on the EEOC's *prima facie* claim is therefore proper, and the EEOC's arguments to the contrary are without merit. However, the Court will move on to consider the second prong of the *McDonnell-Douglas* inquiry - Cintas' legitimate, nondiscriminatory rationale for not hiring Ms. Raby.

II. Cintas' Legitimate, Nondiscriminatory Rationale for Not Hiring Ms. Raby.

In its motion for summary judgment, Cintas argues that it has "pointed to multiple legitimate, non-discriminatory reasons for why it did not hire Ms. Raby." [Def.'s Br., Doc. No. 869, p.13]. Specifically, Cintas' rationale regarding Ms. Raby's 2002 application is as follows:

> She failed to properly fill out her application form, did not list sales or customer service positions, and had been working at a seasonal job. Furthermore, a more-qualified internal candidate - who had already worked at Location 308 and had been observed by the hiring managers - was hired at about the same time Ms. Raby applied.

[Def.'s Br., Doc. No. 869, p.13 (internal citations omitted)]. In its brief in opposition to Cintas' motion [Doc. No. 892], the EEOC's argument against Cintas' legitimate, nondiscriminatory rationale is as follows:

> Cintas has no evidence to establish why it did not hire Ms. Raby. To the contrary, the company forthrightly admits that no Cintas employee has testified that he or she recalls Ms. Raby or her application. And Cintas has pointed to no admissible evidence to show why Ms. Raby was not hired.

[EEOC's Br., Doc. No. 892, p.12 (footnoted material, internal citation and quotation omitted)]. This argument, however, is unavailing. On the facts of this case, there is nothing wrong with

Cintas' proffered argument advancing reasons why *it would not have hired Ms. Raby*. The EEOC offers no authority for its proposition that employers cannot offer rationales for why they would not have hired an applicant when no managerial employee specifically remembers reviewing that candidate's application. For purposes of this motion, therefore, the Court holds that Cintas' proffered rationales for not hiring Ms. Raby are legitimate and nondiscriminatory, and the EEOC's arguments to the contrary are without merit. Thus, the Court will consider the third and final prong of the *McDonnell-Douglas* inquiry - the EEOC's ability to demonstrate that Cintas' rationales for not hiring Ms. Raby were a pretext for gender discrimination.

III.    The EEOC's Case for Pretext.

Cintas argues that the EEOC is unable to demonstrate that Cintas' asserted reasons for not hiring Ms. Raby are pretextual. [Def.'s Br., Doc. No. 869, p. 14]. The Court agrees, and therefore **GRANTS** Cintas' motion for summary judgment [Doc. No. 869].

The Sixth Circuit has held that pretext can be shown:

. . . in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's decision.

*Chen v. Dow Chemical Corp.*, 580 F.3d 394, 400 (6th Cir. 2009), citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004). To carry its burden in opposing summary judgment, the EEOC must produce sufficient evidence from which a jury could reasonably reject Cintas' explanation of why it chose not to hire Ms. Raby. *Id*. Further, it is not sufficient for the EEOC to simply allege fact questions regarding the pretextual nature of Cintas' actions. "A defendant's proffered reason cannot be proved to be a pretext 'unless it is shown *both* that the reason was false *and* that discrimination was the real reason.'" *Harris v. Metro. Gov't of*

14

*Nashville and Davidson County, Tennessee*, 594 F.3d 476, 486 (6th Cir. 2010), citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (quotations and emphasis in original).

The EEOC relies primarily upon statistical and anecdotal evidence of discrimination in an attempt to rebut as pretextual Cintas' decision not to hire Ms. Raby.  Relevant to this case, the Sixth Circuit has stated that when a plaintiff offers:

> . . . other probative evidence of discrimination, that evidence, taken together with the evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment.

*Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 392 (6th Cir. 2009), citing *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006).

Here, the EEOC fails to even discuss Ms. Raby's qualifications relative to those of Mr. Reed - though the EEOC does argue that Ms. Raby's qualifications were superior to those of another applicant hired in July of 2002 - Mr. William Hill.  This evidence, coupled with the statistical evidence proffered, the EEOC argues, is sufficient to rebut Cintas' rationale as pretextual. [EEOC's Br., Doc. No. 892, pp.13-15].  The Court disagrees.

In *Risch*, the Sixth Circuit considered the claims of a female police officer who was allegedly passed over for a detective position with her police department because she was a woman.  *Risch*, 581 F.3d at 385.  The police department passed over her "in favor of two male applicants who had lower scores than Risch under the promotion system used by the Department."  *Id*.  The "other probative evidence" relied upon in *Risch* was explained as follows:

> The record also contains other evidence probative of pretext.  The record indicates that male officers frequently made degrading comments regarding the capabilities of female officers, expressed the view that female officers would never be promoted to command positions, and made generally degrading remarks about women.

*Risch*, 581 F.3d at 392. These statements, the Sixth Circuit held, "evidence a discriminatory atmosphere in the Department in which male officers frequently made derogatory or discriminatory remarks about female officers." *Id*. at 393. Thus, the Sixth Circuit held, the plaintiff in *Risch* had presented enough evidence to survive summary judgment:

> In light of the above evidence of a discriminatory atmosphere in the Department, the lack of women in command positions at the Department, and the evidence that Risch was arguably better qualified than the two male applicants promoted in 2005, we conclude that Risch has produced sufficient evidence to establish a genuine issue of material fact concerning whether the Department's proffered legitimate, nondiscriminatory reason was pretextual.

*Id*. at 394.

Here, by contrast, the EEOC's "other evidence" is limited to the statistical analysis of Dr. Thomas DiPrete. [*See* EEOC's Ex. BB, Doc. No. 901]. In his expert report, Dr. DiPrete examined all SSR hirings at Cintas locations in Michigan from 1999 to 2005, and found that, of the 427 SSR hirings in the state of Michigan during that time, only 24 - or approximately 5.6% - were female. [*See* DiPrete Report, EEOC's Ex. BB, Doc. No. 901, p.5; EEOC's Br., Doc. No. 892, p.2]. Based on Dr. DiPrete's analysis, the EEOC goes on to argue as follows:

> Comparing the estimated availability with the females hired, Dr. DiPrete noted a pattern of under hiring that was statistically significant beyond the threshold of two standard deviations. That is, it is highly unlikely that the pattern of under hiring females at Cintas occurred by chance alone.

[EEOC's Br., Doc. No. 892, p.3]. The Court, however, disagrees.

In *Bowdish v. Continental Accessories, Inc.*, 1992 WL 133022 (6th Cir. June 12, 1992), the Sixth Circuit rejected that plaintiff's attempts to use anecdotal evidence as evidence of discriminatory pretext. The *Bowdish* Court then held that anecdotal or statistical evidence, on its

own, is insufficient to establish pretext:

> . . . such evidence, standing alone, still would not be sufficient to establish a case of individual disparate treatment.  An individual plaintiff in an employment discrimination case must present some evidence that demonstrates that his or her individual discharge was the result of discrimination.

*Bowdish*, 1992 WL 133022, *5.  Therefore, the EEOC's attempt in this litigation to demonstrate the pretextual nature of Cintas' failure to hire Ms. Raby by statistical or anecdotal evidence is insufficient.  Dr. DiPrete admitted as much at his deposition, when he stated that he could not express any opinion in regards to why any individual named plaintiff may not have been hired.  [*See* DiPrete Dep., Def.'s Ex. 3, Doc. No. 911, pp.67-69, 136-37].

Further, the EEOC's attempt to bootstrap a pretext finding based upon cobbled-together anecdotes from individuals commenting on other locations and times than Ms. Raby's application to Location 308, from statistics relating to the purported hiring patterns of other Cintas locations, and from the concurrently-filed cases of the other twelve named plaintiffs in this matter, each also fail to demonstrate pretext in this matter.  "Other location" and "other time" hiring decisions are irrelevant to the question of whether Location 308 refused to hire Ms. Raby because of her gender.  *See, e.g., Davis v. Hammonds*, 103 Fed. Appx. 51, 53 (8th Cir. 2004); *Shaw v. Monroe County*, 1996 WL 426483 (E.D. Mich. Apr. 18, 1996).

Finally, even if statistics alone *could* warrant consideration as evidence of pretext in this matter, the EEOC's statistics are merely "statistics without correlation," which "are indicative of no meaningful inference or conclusion."  *Shaw*, 1996 WL 426483, *8, quoting *Long v. City of Saginaw*, 911 F.2d 1192, 1201 (6th Cir. 1990).  In *Long*, the Sixth Circuit rejected statistics which purported to show the availability of minority candidates for the Saginaw Police

Department.  In that case, the "available labor pool" used to calculate the statistics was held to be *too broad in scope*, because it included all individuals identified as working in "protective services" by the U.S. Census Bureau - a classification that included "bouncers, camp guards, school-crossing guards, meter maids. . . life guards, dog catchers, [and] bodyguards[,]" to name but a few examples.  *Long*, 911 F.2d at 1200.

Here, by contrast, the EEOC's statistical analysis by Dr. DiPrete is even broader than the available labor pool utilized in *Long* - it includes census labor groupings such as human resource managers, computer support specialists, clergy, elementary and middle school teachers, artists, cooks, counter attendants and convenience store clerks, receptionists, and office clerks within its calculations of the available labor pool.  While the EEOC vigorously disputes the propriety of basing the available labor pool for SSR positions on a single census occupation code - 913, relating to driver/sales workers and truck drivers [*see* Doc. No. 833, pp.12-17] - *clearly* the EEOC's own statistics draw from far too broad an available labor pool - and thus overly inflate female availability for SSR positions.  For these reasons, the EEOC has not proffered the type of "other probative evidence" discussed in *Risch* as sufficient to survive summary judgment.

Again, save for the EEOC's statistical evidence proffered by Dr. DiPrete, the EEOC's sole evidence to demonstrate pretext on behalf of Ms. Raby is limited to the argument that Ms. Raby was more qualified for an SSR position than was Mr. Hill:

> Cintas hired William Hill on July 1, 2002 at location 308.  Raby was more qualified than Hill.  Raby had delivery and outdoor experience; Hill did not. Cintas faults Raby for some short-term employment at trucking jobs, but Hill worked only about a year at Dollar General and three months for TMI in assembly.  Hill's other two jobs were as material handler and hard count in a casino, neither of which involved sales or customer service.  Although Raby did not have much sales experience, she did have years of customer service

experience, something not true of Hill.

[EEOC's Br., Doc. No. 892, pp.13-14]. While potentially true, the Court finds this argument

unavailing. As the Sixth Circuit commented in *Bender v. Hecht's Dept. Stores*, 455 F.3d 612

(6th Cir. 2006):

> Of course, acknowledging that evidence of comparative qualifications may be probative of pretext is a far cry from holding that such evidence is itself sufficient in all cases to raise a genuine issue of fact of discriminatory motive. For we need to balance the Supreme Court's statement in *Burdine* [that qualifications evidence may be probative of whether the employer's reasons are pretexts for discrimination] with the principles that employers are generally free to choose among qualified candidates, and that the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. . . a rejected applicant must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful []discrimination, not that other reasonable decision-makers might have retained the plaintiff.

*Bender*, 455 F.3d at 626 (internal citations and quotations omitted). The *Bender* Court went on

to hold as follows:

> On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be *so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former*. In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of material fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual.

*Bender*, 455 F.3d at 627 (emphasis added).

The EEOC has failed to demonstrate that Ms. Raby's qualifications were "so

significantly better" than those of Mr. Hill - or of Mr. Reed, for that matter - that "no reasonable

employer would have chosen the latter applicant[s] over the former." *Bender*, 455 F.3d at 627.

Indeed, the EEOC's brief [Doc. No. 892] does not even include a specific argument against Mr.

19

Reed.

True, when viewed in the light most favorable to the EEOC's claims on behalf of Ms. Raby, perhaps some of the elements of her relevant experience would have looked more favorable than those of other applicants. But to allow these type of side-by-side comparisons of Ms. Raby's qualifications to those of successful applicants - absent other probative evidence of discrimination - would, in the words of the *Bender* Court:

> . . . move this court from its proper role of preventing unlawful employment practices to the illegitimate role of acting as a "super personnel department," overseeing and second-guessing employers' business decisions.

*Bender*, 455 F.3d at 628, quoting *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983). Even assuming, *arguendo*, that Ms. Raby would have appeared to be a more qualified candidate for a Cintas SSR position than either Mr. Hill or Mr. Reed, the Court holds that the EEOC has failed to demonstrate that Ms. Raby's qualifications were "so significantly better" than those of Mr. Hill or Mr. Reed that "no reasonable employer would have chosen the latter applicant[s] over the former." *Bender*, 455 F.3d at 627.

Even assuming that the EEOC could show that Cintas' purportedly legitimate, nondiscriminatory reasons for not hiring Ms. Raby were pretextual, the EEOC has failed to offer any evidence raising a genuine issue of material fact that these reasons were a pretext for gender discrimination. This evidentiary failure is fatal to the EEOC's claim on behalf of Ms. Raby in this litigation, and summary judgment in Cintas' favor is therefore proper. The EEOC's arguments to the contrary are without merit.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Cintas' motion for summary

judgment [Doc. No. 869], and **DISMISSES WITH PREJUDICE** the EEOC's claim brought on

behalf of Ms. Raby.

      **IT IS SO ORDERED.**

                            s/Sean F. Cox
                            Sean F. Cox
                            United States District Judge

Dated:  September 9, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on
September 9, 2010, by electronic and/or ordinary mail.

                            s/Jennifer Hernandez
                            Case Manager