UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                          Case Nos. 04-40132; 06-12311

        Plaintiff- Intervenor              HONORABLE SEAN F. COX
                                                     United States District Judge

v.

CINTAS CORPORATION,

        Defendant.

_____/

OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT re: GAYLE BRADSTROM [Doc. No. 859]

On December 23, 2005, the Equal Employment Opportunity Commission ("EEOC") filed

complaints as an intervening plaintiff in two cases that were consolidated for pretrial purposes -

*Mirna E. Serrano, et al. v. Cintas Corp.* [Case No. 04-40132]; and *Blanca Nelly Avalos, et al. v.

Cintas Corp.* [Case No. 06-12311] - alleging that Defendant Cintas Corporation ("Cintas")

engaged in discriminatory hiring practices against female applicants in violation of 42 U.S.C. §

2000e-5, also known as a "Section 706" action.[1]  In March of 2010, the EEOC identified Ms.

Gayle Bradstrom ("Bradstrom") as one of thirteen individuals upon whose behalf the EEOC

brought this § 706 action.  The matter is before the Court on Cintas' motion for summary

judgment [Doc. No. 859] with respect to Ms. Bradstrom's claims.  The parties have fully briefed

the issues, and the Court declines to hear oral argument pursuant to E.D. MICH. L.R. 7.1(f)(2).

For the reasons that follow, the Court **GRANTS** Cintas' motion [Doc. No. 859], and

_____

[1] For ease of reference, all further citations to document numbers in this motion will refer to the
04-40132 case unless otherwise noted.

**DISMISSES WITH PREJUDICE** the EEOC's claims brought on behalf of Ms. Bradstrom.

BACKGROUND

These causes of action have already suffered through a long, complex factual and procedural history - a history already discussed by the Court in previous orders. Therefore, only those facts of particular relevance to the instant motion are included below.

Background to this Litigation

The individual plaintiffs in the *Serrano* action filed their original charge of discrimination with the EEOC on or about April 7, 2000 - over a decade ago. [*See Serrano* Complaint, Doc. No. 1, ¶7]. Two years later, in June of 2002 - the EEOC issued a determination that reasonable cause existed to believe Cintas had engaged in discriminatory hiring practices. [*See* Doc. No. 1, Ex. A]. After two more years, in May of 2004, the EEOC formally declined to issue a right to sue letter - at which time the *Serrano* individual plaintiffs filed their lawsuit in this action. *Id*.

Roughly a year and a half after that - on December 23, 2005 - the EEOC filed suit as an intervening plaintiff in this action. [*See* Doc. No. 98]. The EEOC's first complaint brought actions under §§ 705 and 706. The EEOC also filed an amended complaint on August 20, 2009.

Since that time, the Court has denied both the *Serrano* and *Avalos* plaintiffs' motions for class-action certification [*see* Doc. No. 627] - and the Sixth Circuit has denied motions for interlocutory appeal. [*See* Doc. Nos. 632, 633]. All individual plaintiffs in the *Avalos* matter have had their cases either dismissed, settled, or otherwise resolved [*see* Case No. 06-12311, Doc. No. 647], as is also the case with all plaintiffs in the *Serrano* matter save for Mirna E.

Serrano herself.[2] [*See* Doc. Nos. 712, 722, 732]. Practically speaking, therefore, all that remains of the *Serrano* and *Avalos* matters is the EEOC's § 706 claims against Cintas.

On October 21, 2009, Cintas filed a motion [Doc. No. 662] seeking to preclude the EEOC from proceeding under the "pattern or practice" framework announced by the U.S. Supreme Court in *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). In opposition to that motion, the EEOC argued that it was entitled to pursue a "pattern or practice" action under the *Teamsters* framework - traditionally reserved for § 707 actions - in this action brought under § 706. [*See* Doc. No. 664].

On February 9, 2010, the Court granted Cintas' motion [Doc. No. 662], holding that the EEOC was precluded from advancing its § 706 claims against Cintas under the "pattern or practice" framework announced by the U.S. Supreme Court in *Teamsters*, but instead must proceed under the framework in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). [*See* Doc. No. 723, p.21]. The Court denied the EEOC's motion to certify the issue for interlocutory appeal [*see* Doc. No. 752], and then subsequently denied the EEOC's second motion to amend the complaint to add a "pattern or practice" cause of action under § 707. [*See* Doc. No. 829].

The EEOC was required to disclose the names of all individuals upon whose behalf it was bringing this § 706 suit against Cintas no later than March 23, 2010. [*See* Doc. No. 735, p.16]. Though forty-six females were initially listed by the EEOC as having claims in this action, that number has since been pared to thirteen individual females - one of whom is Gale Bradstrom, the subject of this motion - who applied for an SSR position with Cintas at its Madison Heights,

---

[2] Cintas' motion to dismiss the claims of Ms. Serrano [Doc. No. 881] is currently pending before this Court, which is unopposed by Ms. Serrano [Doc. No. 881, p.4] - though the EEOC opposes the Court granting the motion. [*See* Doc. No. 884].

Michigan facility ("Location 31").

## The SSR Position and Location 31's SSR Hiring Procedures

Cintas' SSR position is a sales and route driver position. Generally speaking, the position requires driving a truck, selling Cintas' goods and services, and servicing current Cintas accounts for laundry, uniforms and linen products. As the Court previously held in the *Avalos* matter:

> SSRs drive trucks and deliver clean uniforms, mats and supplies to specific customers on their assigned routes. . . SSRs must insure that their trucks are properly loaded with the correct uniforms and products to fulfill the needs of specific customers. As they visit each account, they are tasked with increasing sales and maintaining customer satisfaction at the highest possible level.

[Case No. 06-12311, Doc. No. 186, pp.5-6].

Though policies and procedures for each Cintas location are set by Cintas' corporate headquarters, each Cintas location engages in a decentralized hiring process for SSR applicants - in other words, each Cintas location hires its own SSRs. At all times relevant to this motion, Ms. Holly Woonton served as the Human Resources Manager for several Cintas facilities in Michigan, including Location 31. [*See* Woonton Dep., Def.'s Ex. 6, Doc. No. 859, p.8].

It was Ms. Woonton's responsibility, as HR Manager, to review and screen SSR applications and resumes. *Id*. at 10. When screening applicants, Ms. Woonton would:

> . . . see what their employment looked like, what type of experiences they had. Again. . . how many positions they had, reasons for leaving, and whether or not they had customer service or sales experience.

*Id*. at 19. Further, Mr. Robert Ferraro, the General Manager at Location 31 from January 2000 to June 2002, agreed that Cintas preferred candidates who demonstrated successful sales experience, customer service, and the ability to work without supervision. [Ferraro Dep., Def.'s Ex. 8, Doc. No. 859, p.8].

Preferring applicants with a stable job history, Ms. Woonton would examine an SSR applicant's background for their experience and to determine any significant gaps in employment. [Woonton Dep., p.15]. Honesty was considered by Cintas to be a quality needed in all successful SSR applicants [Woonton Decl., Def.'s Ex. 9, Doc. No. 859, ¶¶10-11] - a fact previously noted by the Court in prior opinions in this litigation. [*See* Doc. No. 511, p.4]. Having a college degree was a plus for an SSR candidate's application, as well as was a referral from a current Cintas employee. [Woonton Dep., p.35].

Candidates that advanced beyond the resume and application screen would be given a brief phone screening interview - usually with Ms. Woonton. *Id* at 21. Continuing applicants would then have an in-person interview, and if advanced further in the process, would likely have additional interviews with Location 31 service managers.

If still deemed a viable candidate, SSR applicants would then participate in a route ride-along with a current SSR - giving the SSR applicant an opportunity to see the job in action, as well as allowing the current SSR to evaluate the applicant on the job. [Ferraro Dep., p.33]. After the ride-along, SSR applicants would have a final interview with Mr. Ferraro, Location 31's General Manager.

Following these interviews, all those involved in the hiring process - including the SSR who accompanied the applicant on the ride-along - would engage in an information exchange where the candidate's qualifications were considered. *Id*. Following this information exchange, the General Manager would make the final hiring decision - pending, for successful candidates, a drug screen, driving records check, background check, and consultation of references. *Id*. at 34.

At all times relevant to this litigation, Cintas had in effect a company-wide policy

prohibiting unlawful discrimination on the basis of gender in hiring and other employment-related actions. [*See* Case No. 06-12311, Doc. No. 632, pp.3-4].

 Gayle Bradstrom

Ms. Bradstrom was not involved in this litigation until the EEOC sent her a solicitation letter in October of 2009. [Bradstrom Dep., Def.'s Ex. 4, Doc. No. 859, p.93]. Ms. Bradstrom submitted an application and resume to Location 31 on June 15, 2001. [*See* Bradstrom Application, Def.'s Ex. 5, Doc. No. 859]. She did not, however, receive an interview in connection with that application, and never spoke with anyone at Cintas regarding her application - with the exception of a brief conversation with the receptionist who gave Ms. Bradstrom the application form. [Bradstrom Dep., pp.30-31]. Indeed, Cintas does not even have any evidence to prove that they even *knew* Ms. Bradstrom had applied for a position in 2001.[3]

On her application for employment with Cintas, Ms. Bradstrom included the notation "(P/T)" under the area asking applicants to identify the jobs they were applying for - a notation Ms. Bradstrom admitted at her deposition stood for "part time." [*See* Bradstrom App; Bradstrom Dep., pp.84-85]. Further, at the time she was applying for the position with Cintas, Ms. Bradstrom was caring for her ailing mother and was only available to work nights. *Id*. at pp.129-30. Indeed, Ms. Bradstrom had left a previous position in 2001 due to her inability to work during the daytime. *Id*. Location 31, however, did not have any evening or part time shifts in 2001.

---

[3] While not disputing that Ms. Bradstrom submitted her application in 2001, Ms. Woonton explains that it was not uncommon for Cintas locations to review only a fraction of all applications submitted at a given time, either because there were few or no open positions or because other candidates were already progressing through the process, making it unnecessary for the particular facility to review the remaining submitted applications. [*See* Woonton Decl., Def.'s Ex. 9, Doc. No. 859, ¶8].

The bottom of Cintas' standard application form - which Ms. Bradstrom filled out in her 2001 application - contains the following statement directly above Ms. Bradstrom's signature:

> The information contained in this application is true to the best of my knowledge and belief, and I understand and agree that any misrepresentation or false or incomplete statement by me in connection with this application will constitute justifiable cause for Cintas not to employ me or, if employed, to terminate my employment at any time.

[Bradstrom App.]. Ms. Bradstrom's application, however, contained numerous representations that, by any measure, were less than forthright.

Several of these misrepresentations occurred in the educational history portion of Ms. Bradstrom's application. For instance, Ms. Bradstrom indicated that she had graduated from John F. Kennedy High School with a "B+" average - but conceded at her deposition that her grade point average was really a much lower "C" average of 2.07. [Bradstrom Dep., pp.74-75]. Ms. Bradstrom also indicated that she attended Wayne State University for "2 years" and attained a "B" average while there - though at her deposition she admitted that she attended Wayne State for only three quarters and attained a grade point average of 1.20, far below a "B" average.[4] Ms. Bradstrom also admitted at her deposition that she was aware she was exaggerating her grades on her application with Cintas in 2001:

> Q:    But you knew you were exaggerating the grades you received, didn't you?
> A:    Yes, I guess so.

[Bradstrom Dep., p.78].

---

[4] In its brief in opposition, the EEOC argues that these quarters were strung out over the course of two years, accounting for the inconsistency in the time Ms. Bradstrom attended Wayne State University. [*See* EEOC's Br., Doc. No. 885, p.14]. Even if true, this assertion does nothing to explain the rather gross discrepancy between reality - a 1.20 grade point average - and Ms. Bradstrom's assertion that she earned a "B" average during that time.

Ms. Bradstrom's 2001 application also contained several inaccuracies with respect to her prior employment history. She claimed that she had been a Route Driver for Bank One from January 1979 until December of 2000 - though, in reality, Ms. Bradstrom's employment with Bank One ended in December of 1999 and she had been receiving severance pay and unemployment benefits for nearly another year before she even began looking for another position. [Bradstrom Dep., pp.80-81]. Ms. Bradstrom also neglected to report two waitress positions she had previously held, despite disclosing other concurrent positions. *Id*. at pp.81-83.

Unlike Ms. Bradstrom's failed 2001 application, other male applicants applied for and received SSR positions in roughly the same time period. Mr. Corey Dral submitted an application to Location on June 11, 2001, and was hired on July 9, 2001. Mr. Dral had prior work experience that Cintas deemed relevant to the SSR position - including prior route sales and service experience with Cook's Pest Control. [Woonton Decl., ¶14]. Mr. Dral also had a college degree, and other prior sales and customer service experience. *Id*.

Further, Mr. Curtis Rybski submitted an application to Location 31 on June 15, 2001 and was hired on July 16, 2001. Like Mr. Dral, and unlike Ms. Bradstrom, Mr. Rybski had clear prior sales and customer service experience. *Id*. at ¶15. Mr. Rybski was also referred to Cintas by a relative who already worked for the company - which Cintas took as an indication that Mr. Rybski likely had a realistic idea about the company's expectations for the position and the positive and negative aspects of the position. *Id*.

<u>Cintas' Instant Motion for Summary Judgment</u>

Following the close of discovery in this action, Cintas filed this motion for summary judgment [Doc. No. 859] on July 14, 2010. In this motion, Cintas argues that the EEOC's claims

on behalf of Ms. Bradstrom fail on their merits as a matter of law.[5]  The EEOC opposes Cintas'

motion. [Doc. No. 885].  The matter is now ripe for decision by the Court.

STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).  The party

seeking summary judgment has the initial burden of informing the court of the basis for its

motion and identifying those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file together with the affidavits which demonstrate the absence of a genuine

issue of material fact.  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to

the nonmoving party who "must set forth specific facts showing that there is a genuine issue for

trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

ANALYSIS

In its instant motion [Doc. No. 859], Cintas argues that the EEOC's suit on behalf of Ms.

Bradstrom should be dismissed for two reasons: 1) because Ms. Bradstrom was not "qualified"

for an SSR position, and therefore cannot advance a *prima facie* case of discrimination; and 2)

because the EEOC cannot demonstrate that Cintas' decision not to hire Ms. Bradstrom in 2001

was a pretext for gender discrimination.  As the Court agrees with both of these arguments,

---

[5] In addition to summary judgment motions attacking the merits of each of EEOC's thirteen individually-named plaintiffs, Cintas has also filed an omnibus motion attacking each of these named plaintiffs for procedural reasons - namely, the EEOC's failure to exhaust administrative remedies before filing this lawsuit. [*See* Doc. No. 836].  Notwithstanding the EEOC's arguments to the contrary [*see* EEOC's Br., Doc. No. 885, n1], the Court will address the merits of Ms. Bradstrom's claims in this order, and will address the EEOC's alleged failure to exhaust administrative remedies on all named plaintiffs in a separate order.

dismissal of the EEOC's claims on behalf of Ms. Bradstrom is ultimately proper.

Section 706 permits the EEOC to sue a private employer on behalf of a "person or persons aggrieved" by an employer's unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1). The EEOC is "master of its own case" when bringing suits on behalf of aggrieved persons in a § 706 lawsuit, and may bring such suits with or without the consent of the aggrieved persons. *EEOC v. Waffle House*, 534 U.S. 279, 291-92 (2002). "Nonetheless, it is axiomatic that the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all the elements of their [discrimination] claims to obtain individual relief for them." *EEOC v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918, 929 (N.D. Iowa 2009).

Absent evidence of intentional discrimination, the EEOC must pursue § 706 claims brought on behalf of aggrieved individuals under the familiar burden-shifting scheme outlined in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998); *see also Serrano v. Cintas Corp.*, - - F.Supp.2d. - -, 2010 WL 522846 (E.D. Mich. Feb. 9, 2010). Under the *McDonnell-Douglas* framework, plaintiffs must first establish a *prima facie* case of discrimination. *McDonnell-Douglas*, 422 U.S. at 802. Once the plaintiff has established such a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the employer articulates such a legitimate, nondiscriminatory reason, the plaintiff bears the burden of proving that the employer's articulated reason is a pretext for discrimination. *Id*. The Court will consider each of these issues in turn.

I. The EEOC's *Prima Facie* Case on Behalf of Ms. Bradstrom.

To establish a *prima facie* case of discriminatory hiring practices, a plaintiff without

direct evidence of discrimination must show that 1) she belonged to a protected class; 2) she applied and was qualified for a job for which the employer was seeking applicants; 3) despite her qualifications, she was rejected; and 4) after her rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. *See McDonnell-Douglas*, 411 U.S. at 802. In this case, Cintas only disputes the second of these requirements: that Ms. Bradstrom was not "qualified" for an SSR position:

> The EEOC cannot make a *prima facie* showing in this case, however, because it cannot show that Ms. Bradstrom was objectively qualified to be an SSR. Not one of the Cintas managers who were asked about Ms. Bradstrom testified that she was qualified to be an SSR.

[Def.'s Br., Doc. No. 859, p.17]. The Court agrees.

In *Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003), the Sixth Circuit elaborated on the requirements of the "qualified" element of a *prima facie* discrimination claim. The *Wexler* Court held that, "[a]t the prima facie state, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler*, 317 F.3d at 575 (emphasis in original). To meet this burden, plaintiffs need only "present[] credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id*. at 576. The Sixth Circuit elaborates as follows:

> Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrating possession of the required skills.

*Wexler*, 317 F.3d at 576.

In support of its argument that Ms. Bradstrom was not "qualified" for a position with

Location 31, Cintas argues as follows:

> Moreover, this litigation has revealed that Ms. Bradstrom, even though she specifically certified that her application was complete, grossly exaggerated her academic achievements, failed to include at least one previous employer, and misrepresented when her employment with another previous employer actually ended. . . . This Court has already found that "basic honesty was an objective qualification for a position with Cintas" and that a claimant who "had lied on his employment application, even though the application stated several times in clear language that complete and accurate information was required. . . was not qualified for the job sought, and . . . failed to establish a *prima facie* case of discrimination." Ms. Bradstrom has admitted that she was dishonest on her application.

[Def.'s Br., Doc. No. 859, pp.17-18, citing Doc. No. 511, p.5]. The Court agrees. Though the EEOC's response brief generally denies that Ms. Bradstrom is a dishonest person [*see* Doc. No. 885, pp.13-16], the EEOC ultimately fails to explain away the discrepancies in Ms. Bradstrom's application noted *supra*.

On the facts presented, the Court holds that Ms. Bradstrom was not "qualified" for an SSR position with Cintas for purposes of prong one of the *McDonnell-Douglas* inquiry. Summary judgment on the EEOC's *prima facie* claim is therefore proper, and the EEOC's arguments to the contrary are without merit. Nevertheless, the Court will move on to consider the second prong of the *McDonnell-Douglas* inquiry - Cintas' legitimate, nondiscriminatory rationale for not hiring Ms. Bradstrom.

II.  Cintas' Legitimate, Nondiscriminatory Rationale for Not Hiring Ms. Bradstrom.

In their motion for summary judgment, Cintas argues that it has satisfied its requirement to proffer a legitimate, nondiscriminatory rationale for not hiring Ms. Bradstrom:

> Even if the EEOC could make a *prima facie* showing of discrimination, Cintas has pointed to multiple legitimate, non-discriminatory reasons for why it did not hire Ms. Bradstrom. In relation to her June 2001 application, her application

> indicated that she was seeking part-time employment (and the SSR position at
> Location 31 was a full-time position), and her work history did not include
> positions similar to that of the SSR position. For all these reasons, Ms. Bradstrom
> was an unlikely candidate to be interviewed for an SSR position. In any event. . .
> Location 31 hired candidates who were more qualified than Ms. Bradford based
> on their prior work histories.

[Def.'s Br., Doc. No. 859, p.18 (internal citations omitted)].

In their brief in opposition to Cintas' motion [Doc. No. 885], the EEOC's argument

against Cintas' legitimate, nondiscriminatory rationale, in its entirety, is as follows:

> In the instant case, Cintas has stated that no manager or employee at location 31
> has testified that he or she recalls Bradstrom, her application or any interview with
> her. Defendant thus cannot offer any nondiscriminatory reason as to why
> Bradstrom was not hired.

[EEOC's Br., Doc. No. 885, p.17 (internal citation omitted)]. This argument, however, is

unavailing. The fact that no manager or employee at Location 31 even *saw* Ms. Bradstrom's

application is - in and of itself - a legitimate, nondiscriminatory reason explaining why Ms.

Bradstrom was not hired as an SSR. It is difficult to imagine how failure to realize that an

individual *had even applied* could be seen as anything other than nondiscriminatory conduct on

Cintas' part.

Nor, on the facts of this case, is there anything wrong with Cintas's proffered argument

advancing the reasons why *it would not have hired Ms. Bradstrom had they known she applied*

*with them*. The EEOC offers no authority for its proposition that employers cannot offer

rationales for why they would not have hired an applicant had they been aware of their

application - especially where, as here, such hypothetical rationales are central to the EEOC's

ability to attempt to show pretext. For purposes of this motion, therefore, the Court holds that

Cintas' proffered rationales for not hiring Ms. Bradstrom are legitimate and nondiscriminatory,

and the EEOC's arguments to the contrary are without merit.

III.  <u>The EEOC's Case for Pretext</u>.

Cintas argues that the EEOC is unable to demonstrate that Cintas' asserted reasons for not hiring Ms. Bradstrom are pretextual.  "There is simply no evidence in the record that anyone at Cintas discriminated against Ms. Bradstrom." [Def.'s Br., Doc. No. 859, p.19].  The Court agrees, and therefore **GRANTS** Cintas' motion for summary judgment [Doc. No. 859].

The Sixth Circuit has held that pretext can be shown:

> . . . in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's decision.

*Chen v. Dow Chemical Corp.*, 580 F.3d 394, 400 (6th Cir. 2009), citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004).  To carry its burden in opposing summary judgment, the EEOC must produce sufficient evidence from which a jury could reasonably reject Cintas' explanation of why it chose not to hire Ms. Bradstrom.  *Id*.  Further, it is not sufficient for the EEOC to simply allege fact questions regarding the pretextual nature of Cintas' actions.  "A defendant's proffered reason cannot be proved to be a pretext 'unless it is shown *both* that the reason was false *and* that discrimination was the real reason.'" *Harris v. Metro. Gov't of Nashville and Davidson County, Tennessee*, 594 F.3d 476, 486 (6th Cir. 2010), citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (quotations and emphasis in original).

The EEOC relies primarily upon the following quote from a Sixth Circuit case to demonstrate pretext in this case:

> When the plaintiff offers "other probative evidence of discrimination, that evidence, taken together with the evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's

14

claim surviving summary judgment."

[EEOC's Br., Doc. No. 885, p.17, quoting *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 392 (6th Cir. 2009), citing *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006)]. Here, the EEOC argues that Ms. Bradstrom was more qualified for an SSR position at Location 31 than was either Mr. Dral or Mr. Rybski. This, coupled with the statistical evidence proffered, the EEOC argues, is sufficient to rebut Cintas' rationale as pretextual. [EEOC's Br., Doc. No. 885, p.17]. The Court disagrees.

In *Risch*, the Sixth Circuit considered the claims of a female police officer who was allegedly passed over for a detective position with her police department because she was a woman. *Risch*, 581 F.3d at 385. The police department passed over her "in favor of two male applicants who had lower scores than Risch under the promotion system used by the Department." *Id.* While the EEOC's quote from *Risch*, noted *supra*, is accurate, the "other probative evidence" relied upon in *Risch* was explained as follows:

> The record also contains other evidence probative of pretext. The record indicates that male officers frequently made degrading comments regarding the capabilities of female officers, expressed the view that female officers would never be promoted to command positions, and made generally degrading remarks about women.

*Risch*, 581 F.3d at 392. These statements, the Sixth Circuit held, "evidence a discriminatory atmosphere in the Department in which male officers frequently made derogatory or discriminatory remarks about female officers." *Id.* at 393. Thus, the Sixth Circuit held, the plaintiff in *Risch* had presented enough evidence to survive summary judgment:

> In light of the above evidence of a discriminatory atmosphere in the Department, the lack of women in command positions at the Department, and the evidence that Risch was arguably better qualified than the two male applicants promoted in

15

2005, we conclude that Risch has produced sufficient evidence to establish a
genuine issue of material fact concerning whether the Department's proffered
legitimate, nondiscriminatory reason was pretextual.

*Id*. at 394.

Here, by contrast, the EEOC's "other evidence" is limited to the statistical analysis of Dr.

Thomas DiPrete. [*See* EEOC's Ex. BB, Doc. No. 901]. In his expert report, Dr. DiPrete

examined all SSR hirings at Cintas locations in Michigan from 1999 to 2005, and found that, of

the 427 SSR hirings in the state of Michigan during that time, only 24 - or approximately 5.6% -

were female. [*See* DiPrete Report, EEOC's Ex. BB, Doc. No. 901, p.5; EEOC's Br., Doc. No.

885, p.2]. Based on Dr. DiPrete's analysis, the EEOC goes on to argue as follows:

Comparing the estimated availability with the females hired, Dr. DiPrete noted a
pattern of under hiring that was statistically significant beyond the threshold of
two standard deviations. That is, it is highly unlikely that the pattern of under
hiring females at Cintas occurred by chance alone.

[EEOC's Br., Doc. No. 885, p.3]. The Court, however, disagrees.

In *Bowdish v. Continental Accessories, Inc.*, 1992 WL 133022 (6th Cir. June 12, 1992),

the Sixth Circuit rejected that plaintiffs' attempts to use anecdotal evidence as evidence of

discriminatory pretext. The *Bowdish* Court then held that anecdotal or statistical evidence, on its

own, is insufficient to establish pretext:

. . . such evidence, standing alone, still would not be sufficient to establish a case
of individual disparate treatment. An individual plaintiff in an employment
discrimination case must present some evidence that demonstrates that his or her
individual discharge was the result of discrimination.

*Bowdish*, 1992 WL 133022, *5. Therefore, the EEOC's attempt in this litigation to demonstrate

the pretextual nature of Cintas' failure to hire Ms. Bradstrom by statistical or anecdotal evidence

is insufficient. Dr. DiPrete admitted as much at his deposition, when he stated that he could not

express any opinion in regards to why any individual named plaintiff may not have been hired. [*See* DiPrete Dep., Def.'s Ex. 3, Doc. No. 911, pp.67-69, 136-37].

Further, the EEOC's attempt to bootstrap a pretext finding based upon cobbled-together anecdotes from individuals commenting on other locations and times than Ms. Bradstrom's 2001 application to Location 31, from statistics relating to the purported hiring patterns of other Cintas locations, and from the concurrently-filed cases of the other twelve named plaintiffs in this matter, each also fail to demonstrate pretext in this matter. "Other location" and "other time" hiring decisions are irrelevant on the question of whether Location 31 refused to hire Ms. Bradstrom when she applied because of her gender. *See, e.g., Davis v. Hammonds*, 103 Fed. Appx. 51, 53 (8 Cir. 2004); *Shaw v. Monroe County*, 1996 WL 426483 (E.D. Mich. Apr. 18, 1996).

Finally, even if statistics alone *could* warrant consideration as evidence of pretext in this matter, the EEOC's statistics are merely "statistics without correlation," which "are indicative of no meaningful inference or conclusion." *Shaw*, 1996 WL 426483, *8, quoting *Long v. City of Saginaw*, 911 F.2d 1192, 1201 (6th Cir. 1990). In *Long*, the Sixth Circuit rejected statistics which purported to show the availability of minority candidates for the Saginaw Police Department. In that case, the "available labor pool" used to calculate the statistics was held to be *too broad in scope*, because it included all individuals identified as working in "protective services" by the U.S. Census Bureau - a classification that included "bouncers, camp guards, school-crossing guards, meter maids. . . life guards, dog catchers, [and] bodyguards[,]" to name but a few examples. *Long*, 911 F.2d at 1200.

Here, the EEOC's statistical analysis by Dr. DiPrete is even broader than the available

labor pool utilized in *Long* - it includes census labor groupings such as human resource managers, computer support specialists, clergy, elementary and middle school teachers, artists, cooks, counter attendants and convenience store clerks, receptionists, and office clerks within its calculations of the available labor pool. While the EEOC vigorously disputes the propriety of basing the available labor pool for SSR positions on a single census occupation code - 913, relating to driver/sales workers and truck drivers [*see* Doc. No. 833, pp.12-17] - *clearly* the EEOC's own statistics draw from far too broad an available labor pool - and thus overly inflate female availability for SSR positions. For these reasons, the EEOC has not proffered the type of "other probative evidence" discussed in *Risch* as sufficient to survive summary judgment.

Again, save for the EEOC's statistical evidence proffered by Dr. DiPrete, the EEOC's sole evidence to demonstrate pretext on behalf of Ms. Bradstrom is limited to the argument that Ms. Bradstrom was more qualified for an SSR position than were either Mr. Dral or Mr. Rybski:

> As previously stated, Bradstrom was more qualified that Dral or Rybski. Rybski did not have any route driving experience, yet he was hired into the SSR position. Dral was nothing more than a job hopper. Defendant's statements that it hired Dral and Rybski because they were more qualified than Bradstrom [are] not believable. . . .

[Doc. No. 885, p.18].

The Court disagrees. As the Sixth Circuit commented in *Bender v. Hecht's Dept. Stores*, 455 F.3d 612 (6th Cir. 2006):

> Of course, acknowledging that evidence of comparative qualifications may be probative of pretext is a far cry from holding that such evidence is itself sufficient in all cases to raise a genuine issue of fact of discriminatory motive. For we need to balance the Supreme Court's statement in *Burdine* [that qualifications evidence may be probative of whether the employer's reasons are pretexts for discrimination] with the principles that employers are generally free to choose among qualified candidates, and that the law does not require employers to make

perfect decisions, nor forbid them from making decisions that others may disagree with. . . a rejected applicant must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful []discrimination, not that other reasonable decision-makers might have retained the plaintiff.

*Bender*, 455 F.3d at 626 (internal citations and quotations omitted).  The *Bender* Court went on to hold as follows:

On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be *so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former*.  In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of material fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual.

*Bender*, 455 F.3d at 627 (emphasis added).

The EEOC has failed, however, to demonstrate that Ms. Bradstrom's qualifications were "so significantly better" than those of either Mr. Dral or Mr. Rybski that "no reasonable employer would have chosen the latter applicant[s] over the former."  *Bender*, 455 F.3d at 627.

True, when viewed in the light most favorable to the EEOC's claims on behalf of Ms. Bradstrom, perhaps her route experience would have looked more favorable than Mr. Rybski's lack of such experience.  And perhaps Ms. Bradstrom's long-term employment with Bank One would have looked more favorable than Mr. Dral's experience with multiple companies in a shorter period of time.  But to allow these type of side-by-side comparisons of Ms. Bradstrom's qualifications to those of successful applicants - absent other probative evidence of discrimination - would, in the words of the *Bender* Court:

. . . move this court from its proper role of preventing unlawful employment practices to the illegitimate role of acting as a "super personnel department,"

overseeing and second-guessing employers' business decisions.

*Bender*, 455 F.3d at 628, quoting *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983). Even assuming, *arguendo*, that Ms. Bradstrom would have appeared to be a more qualified candidate for a Cintas SSR position than either Mr. Dral or Mr. Rybski, the Court holds that the EEOC has failed to demonstrate that Ms. Bradstrom's qualifications were "so significantly better" than those of either Mr. Dral or Mr. Rybski that "no reasonable employer would have chosen the latter applicant[s] over the former." *Bender*, 455 F.3d at 627.

There is, however, one critical aspect of Ms. Bradstrom's application that is markedly less appealing to Cintas than would have been for the applications of those who were offered employment: her availability. It is undisputed that Ms. Bradstrom applied with Cintas in 2001 seeking part-time, evening work. Indeed, Ms. Bradstrom had left a previous position that same year due largely to the fact that she could not work full-time, day shifts on account of her needing to assist her ailing mother during the daytime. However, it is also undisputed that, in 2001, *Location 31 did not have any part-time or evening work available.*

Even assuming that the EEOC could show that Cintas' purportedly legitimate, nondiscriminatory reasons for not hiring Ms. Bradstrom were pretextual, the EEOC has failed to offer any evidence raising a genuine issue of material fact that these reasons were a pretext for gender discrimination. This evidentiary failure is fatal to the EEOC's claims on behalf of Ms. Bradstrom in this litigation, and summary judgment in Cintas' favor is therefore proper. The EEOC's arguments to the contrary are without merit.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Cintas' motion for summary

judgment [Doc. No. 859], and **DISMISSES WITH PREJUDICE** the EEOC's claims brought

on behalf of Ms. Bradstrom.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  September 10, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on
September 10, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager