UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,   Case Nos. 04-40132; 06-12311

      Plaintiff- Intervenor   HONORABLE SEAN F. COX
                                                            United States District Judge

v.

CINTAS CORPORATION,

      Defendant.
_____/

## OPINION & ORDER GRANTING DEFENDANT'S OMNIBUS MOTION FOR SUMMARY JUDGMENT [Doc. No. 836]

On December 23, 2005, the Equal Employment Opportunity Commission ("EEOC") filed complaints as an intervening plaintiff in two cases that have been consolidated for pretrial purposes - *Mirna E. Serrano, et al. v. Cintas Corp.* [Case No. 04-40132]; and *Blanca Nelly Avalos, et al. v. Cintas Corp.* [Case No. 06-12311] - alleging that Defendant Cintas Corporation ("Cintas") engaged in discriminatory hiring practices against female applicants in violation of 42 U.S.C. § 2000e-5, also known as a "Section 706" action.[1]  The matter is before the Court on Cintas' "Omnibus Motion for Summary Judgment" [Doc. No. 836].  The parties have fully briefed the issues, and the Court declines to hear oral argument pursuant to E.D. MICH. L.R. 7.1(f)(2).  For the reasons that follow, the Court **GRANTS** Cintas' motion [Doc. No. 836], and **DISMISSES** the EEOC's claims on behalf of all named plaintiffs **IN THEIR ENTIRETY**.

---

[1] For ease of reference, all further citations to document numbers in this motion will refer to the 04-40132 case unless otherwise noted.

1

BACKGROUND

These causes of action have already suffered through a long, complex factual and procedural history - a history already discussed by the Court in previous orders. Therefore, only those facts of particular relevance to the instant motion are included below.

The individual plaintiffs in the *Serrano* action filed their original charge of discrimination with the EEOC on or about April 7, 2000 - over a decade ago. [*See Serrano* Complaint, Doc. No. 1, ¶7]. Two years later, in June of 2002 - the EEOC issued a determination that reasonable cause existed to believe Cintas had engaged in discriminatory hiring practices. [*See* Doc. No. 1, Ex. A]. After two more years, in May of 2004, the EEOC formally declined to issue a right to sue letter - at which time the *Serrano* individual plaintiffs filed their lawsuit in this action. *Id*.

Roughly a year and a half after that - on December 23, 2005 - the EEOC filed suit as an intervening plaintiff in this action. [*See* Doc. No. 98]. The EEOC's first complaint brought actions under §§ 705 and 706. The EEOC also filed an amended complaint on August 20, 2009.

Since that time, the Court has denied both the *Serrano* and *Avalos* plaintiffs' motions for class-action certification [*see* Doc. No. 627] - and the Sixth Circuit has denied motions for interlocutory appeal. [*See* Doc. Nos. 632, 633]. All individual plaintiffs in the *Avalos* matter have had their cases either dismissed, settled, or otherwise resolved [*see* Case No. 06-12311, Doc. No. 647], as is also the case with all plaintiffs in the *Serrano* matter save for Mirna E. Serrano herself.[2] [*See* Doc. Nos. 712, 722, 732]. Practically speaking, therefore, all that remains of the *Serrano* and *Avalos* matters is the EEOC's § 706 claims against Cintas.

---

[2] Cintas' motion to dismiss the claims of Ms. Serrano [Doc. No. 881] is currently pending before this Court, which is unopposed by Ms. Serrano [Doc. No. 881, p.4] - though the EEOC opposes the Court granting the motion. [*See* Doc. No. 884].

2

On October 21, 2009, Cintas filed its motion [Doc. No. 662] seeking to preclude the EEOC from proceeding under the "pattern or practice" framework announced by the U.S. Supreme Court in *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). In opposition to that motion, the EEOC argued that it was entitled to pursue a "pattern or practice" action under the *Teamsters* framework - traditionally reserved for § 707 actions - in this action brought under § 706. [*See* Doc. No. 664].

On February 9, 2010, the Court granted Cintas' motion [Doc. No. 662], holding that the EEOC was precluded from advancing its § 706 claims against Cintas under the "pattern or practice" framework announced by the U.S. Supreme Court in *Teamsters*, but instead must proceed under the framework in *McDonnell-Douglas Corp. v. Green*, 422 U.S. 792 (1973). [*See* Doc. No. 723, p.21]. The Court denied the EEOC's motion to certify the issue for interlocutory appeal [*see* Doc. No. 752], and then subsequently denied the EEOC's second motion to amend the complaint to add a "pattern or practice" cause of action under § 707. [*See* Doc. No. 829].

The EEOC was required to disclose the names of all individuals upon whose behalf it was bringing this § 706 suit against Cintas no later than March 23, 2010. [*See* Doc. No. 735, p.16]. Though forty-six females were initially listed by the EEOC as having claims in this action, that number has since been pared to thirteen individual females - Susan Barber, Gayle Bradstrom, Christine Colfer, Gina Comiska, Kari (Denby) Kremhelmer, Tracy (Gerke) Williams, Leila (Houston) Vitale, Robin Leach, Susan (Majewski) Harrington, Diana Raby, Lori Schelske, Tanya Thompson, and Patricia Washington. As explained *infra*, the EEOC did not engage in any conciliation measures as required by § 706 before the EEOC filed suit on behalf of these named plaintiffs.

On June 25, 2010, Cintas filed its instant omnibus motion for summary judgment [Doc. No. 836], arguing that the EEOC's claims on behalf of all thirteen named plaintiffs in this action should be dismissed for failing to exhaust administrative remedies. The EEOC opposes the motion [*see* Doc. No. 876]. The matter is now ripe for decision by the Court.

Concurrent with the filing of this motion [Doc. No. 836], Cintas filed individualized motions attacking the merits of each of the thirteen named plaintiffs' claims. [*See* Doc. Nos. 848, 850, 852, 854, 856, 858, 859, 862, 864, 867, 869, 871, 873]. The Court addressed the merits of each of these individually-named plaintiffs' claims in separate opinions.

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

## ANALYSIS

In its instant motion [Doc. No. 836], Cintas argues that the EEOC's § 706 action against it should be dismissed for failure to exhaust administrative remedies. The Court agrees.

Section 706 of Title VII, 42 U.S.C. § 2000e-5, authorizes the EEOC to bring suit in its own

name to ferret out unlawful sexual harassment. Specifically, § 706 permits the EEOC to sue a private employer on behalf of a "person or persons aggrieved" by the employer's unlawful employment practice. The EEOC is "master of its own case" when bringing suits on behalf of aggrieved persons in a § 706 lawsuit, and may bring such suits with or without the consent of the aggrieved persons. *EEOC v. Waffle House*, 534 U.S. 279, 291-92 (2002). "Nonetheless, it is axiomatic that the EEOC stands in the shoes of those aggrieved persons in the sense that it must prove all the elements of their [discrimination] claims to obtain individual relief for them." *EEOC v. CRST Van Expedited, Inc.*, 611 F.Supp.2d 918, 929 (N.D. Iowa 2009).

The EEOC may file a § 706 lawsuit against a private employer, after the filing of a charge of unlawful employment discrimination with the EEOC, if the EEOC finds "reasonable cause" to believe the employer has violated Title VII *and makes a good-faith attempt to settle the matter through conciliation*. The Supreme Court explained this process in depth in *Occidental Life Ins. Co. of Calif. v. EEOC*:

> Congress established an integrated, multistep enforcement procedure culminating in the EEOC's authority to bring a civil action in a federal court. That procedure begins when a charge is filed with the EEOC alleging that an employer has engaged in an unlawful employment practice. A charge must be filed within 180 days after the occurrence of the allegedly unlawful practice, and the EEOC is directed to serve notice of the charge on the employer within 10 days of filing. The EEOC is then required to investigate the charge and determine whether there is reasonable cause to believe that it is true. This determination is to be made "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge." If the EEOC finds that there is reasonable cause it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." When "the Commission is unable to secure. . . a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge."

*Occidental Life*, 432 U.S. 355, 359-60 (1977) (footnotes, citations and alterations omitted).

The EEOC's statutory obligation to investigate, determine reasonable cause, and conciliate has been called "crucial to the philosophy of Title VII" by other federal courts. *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir. 1982) (internal quotations and citation omitted). These statutory requirements serve two important purposes: 1) ensuring that the employer is fully notified of the violations being alleged against it; and 2) allowing the EEOC the opportunity to consider the allegations and attempt to resolve any violations through conciliation and voluntary compliance. *EEOC v. American Nat'l Bank*, 652 F.2d 1176, 1185 (4th Cir. 1981).

Although a § 706 lawsuit must begin with a formal charge of discrimination, *Occidental Life*, 432 U.S. at 359, a § 706 lawsuit is not necessarily "confined to the specific allegations in the charge." *EEOC v. Delight Wholesale*, 973 F.2d 664, 668 (8th Cir. 1992). Rather, the judicially-created "reasonable investigation rule" allows the EEOC to pursue in litigation "[a]ny violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint." *General Telephone Co. v. EEOC*, 446 U.S. 318, 331 (1980). However, although broad in scope, the "reasonable investigation rule" is not without its limits. Rather, an original discrimination charge is only sufficient to support an EEOC action for:

> . . . any discrimination. . . developed during a reasonable investigation of the charge, *so long as the additional allegations of discrimination are included in the reasonable cause determination and subject to a conciliation proceeding*.

*Delight Wholesale*, 973 F.2d at 668-69 (emphasis added).

In this litigation, both Cintas and the EEOC concede that no individualized conciliation proceedings *of any kind* took place on behalf of the thirteen named plaintiffs in this § 706 suit. The EEOC did not investigate the specific allegations of any of the thirteen aggrieved persons until

6

after the *Serrano* plaintiffs' initial complaint - and even its own complaint years later - was filed. Nor did the EEOC identify any of the thirteen allegedly aggrieved persons as members of the "class" until after the EEOC filed its initial complaint - indeed, as noted *supra*, the EEOC only identified the individuals upon whose behalf it was seeking relief on March 23, 2010. Nor still did the EEOC make an individualized reasonable cause determination as to the specific allegations of any of the thirteen named plaintiffs in this action. Finally, no attempt was made by the EEOC to conciliate the individual claims of the thirteen named plaintiffs prior to the filing of the EEOC's initial complaint.

Rather, the EEOC argues that its prior conciliation proceedings on the *Serrano* matter satisfy its responsibility to conciliate the claims of these thirteen individuals. Cintas, however, argues that the prior conciliation proceedings from the *Serrano* matter are insufficient to absolve the EEOC of its requirements under Title VII. Cintas explains its argument as follows:

> Therefore, as this case stands now, more than ten years after Ms. Serrano first filed her charge and almost five years since the EEOC intervened in this litigation, the EEOC is left with only [13] discrete, individual claims of disparate treatment. The EEOC has never asserted a claim for pattern or practice discrimination or any other claim for class-wide relief. None of the [13] individuals on whose behalf the EEOC is currently pursuing claims have ever filed a discrimination charge with the EEOC concerning their application or rejection from Cintas. Furthermore, despite its statutory obligation to do so, the EEOC did not investigate any of the [13] claims prior to intervening. The EEOC never issued a reasonable cause determination as to any of the [13] individual § 706 claimants, nor did it attempt to conciliate their claims. The EEOC literally sued first and began to ask questions only years later. Title VII simply does not permit the EEOC to callously disregard its clear pre-suit mandates, and summary judgment therefore should be granted.

[Def.'s Br., Doc. No. 836, pp.8-9].

The EEOC makes two arguments in opposition to Cintas' omnibus motion for summary

7

judgment [Doc. No. 836]: 1) that judicial estoppel prevents Cintas from changing its position on this issue so late in the litigation; and 2) that the EEOC fulfilled its statutory obligation with regard to the thirteen named plaintiffs in this § 706 action. Ultimately, neither of these arguments has merit.

    I. <u>Judicial Estoppel</u>.

The EEOC argues that Cintas should be judicially estopped from arguing that the EEOC failed to exhaust administrative remedies in these proceedings. [*See* EEOC's Br., Doc. No. 876, pp.5-7]. The Court disagrees.

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contrary argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000). Where a party:

> . . .assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formally taken by him.

*Davis v. Wakelee*, 156 U.S. 680, 689 (1895). The purpose of the judicial estoppel rule is to prevent the improper use of judicial machinery. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

In support of its argument, the EEOC relies upon what it purports to be Cintas' statements in their brief in support of denying an EEOC motion for interlocutory appeal:

> The circumstances here fit squarely within the doctrine of judicial estoppel. Contesting a motion for interlocutory appeal, Cintas argued that the EEOC did not meet the "controlling question of law" standard for such an appeal because the EEOC was not limited in its "ability to bring any individual claims. *Indeed, the EEOC is free to bring a discrimination claim on behalf of any woman who it alleges was not hired as an SSR at one of Cintas' Michigan locations . . . .*" Now, Cintas has changed its position by asserting that the EEOC is not free to bring a discrimination claim on behalf of females who were not hired as SSRs. In other

words, Cintas has reversed its previous position - that interlocutory appeal was not appropriate because the EEOC could seek relief for female applicants under the *McDonnell Douglas* framework - and now takes the opposite position.

[EEOC's Br., Doc. No. 876, p.6 (internal citations omitted) (emphasis added)].

The Court, however, disagrees. In Cintas' reply brief [Doc. No. 883], Cintas rebuts the EEOC's contention that it somehow conceded that the EEOC was free to bring these claims without objection to any potential failure to exhaust administrative remedies:

> Cintas has **never** taken the position that the Commission satisfied the conditions precedent to filing suit for each of the 13 claims that it now purports to advance prior to its December 2005 intervention. In fact, in both its Answer to the EEOC's Complaint-in-Intervention (Dkt. 99) and its Answer to the EEOC's Amended Complaint (Dkt. 654), Cintas expressly denied that the Commission had fulfilled all of the conditions precedent to its intervention in the action.

[Def.'s Reply, Doc. No. 883, p.4]. The Court agrees. At no point in this litigation has Cintas conceded that the EEOC was free to do what it pleased with regard to its Title VII responsibility to investigate and conciliate potential claims. Further, at no time was the Court somehow misled by Cintas' prior filing - discussed *supra* by the EEOC - regarding the EEOC's prerogative to pursue § 706 claims on behalf of allegedly aggrieved individuals. Rather, as Cintas argues in its reply brief:

> . . . there is nothing inconsistent with Cintas' positions. In the Omnibus Summary Judgment Motion, Cintas does not take the position that the Court's *February 9, 2010 Order* prevents the EEOC from pursuing these claims; rather, as Cintas explained in its brief, it is the *EEOC's own failure* to investigate, determine reasonable cause, and conciliate the 13 claims prior to intervening that is the reason that the claims must be dismissed.

*Id*. at 5 (emphasis in original).

The Court agrees. For these reasons, the Court holds that Cintas is not judicially estopped from raising the arguments in this motion, and the EEOC's arguments to the contrary are without merit.

9

II. <u>Failure to Exhaust Administrative Remedies</u>.

In opposition to Cintas' omnibus motion for summary judgment [Doc. No. 836], the EEOC argues that it has satisfied its Title VII responsibility to exhaust administrative remedies with respect to these thirteen named plaintiffs. Specifically, the EEOC argues:

> Cintas'[] argument that the Commission had to investigate, issue a cause finding, and conciliate on an individual basis for *each of the remaining class members* finds no support in the language of Title VII and, *with the exception of one district court decision in another circuit*, has not been accepted by any court.

[EEOC's Br., Doc. No. 876, p.9 (emphasis added)]. The EEOC then argues that its conduct with respect to these thirteen individually named plaintiffs is well-supported by federal case law. *Id*. at 9-11, citing *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1101 (6th Cir. 1984); *EEOC v. Paramount Staffing, Inc.*, 601 F.Supp.2d 986, 990 (W.D. Tenn. 2009); *EEOC v. Cone Solvents, Inc.*, 2006 WL 1083406 (M.D. Tenn. Apr. 21, 2006); *EEOC v. Applegate Holdings, LLC*, 2005 WL 1189601 (W.D. Mich. May 19, 2005); *EEOC v. Mike Fink Corp.*, 1998 WL 34078445 (M.D. Tenn. July 17, 1998); *EEOC v. Chrysler Corp.*, 546 F.Supp. 54 (E.D. Mich. 1982); *EEOC v. Rhone-Poulenc*, 876 F.2d 16 (3d Cir. 1989); *EEOC v. Calif. Psychiatric Transitions*, 644 F.Supp.2d 1249 (E.D. Cal. 2009); *EEOC v. Dial Corp.*, 156 F.Supp.2d 926 (N.D. Ill. 2001); *EEOC v. American Nat'l Bank*, 652 F.2d 1176 (4th Cir. 1981).

The above-cited legal precedent the EEOC relies upon, however, all pertains to lawsuits in *a class-action*, or at the very least, were *proper class-based actions* that were instituted *from the beginning* against an employer. Despite the EEOC's continuing insistence that this lawsuit is class-based [*see* EEOC's Br., Doc. No. 876, pp.7,8], and despite the EEOC's complaint citing to "a class" of allegedly aggrieved individuals, this case is not now, nor has it ever been, a class-based

10

lawsuit.

Similar to the situation presented before the Northern District of Iowa in *EEOC v. CRST Van Expedited, Inc.*, 2009 WL 2524402 (N.D. Iowa Aug. 13, 2009), here the EEOC originally filed suit on behalf of "Mirna E. Serrano. . . *and a class of women*[,]" [EEOC's Complaint, Doc. No. 98, ¶8 (emphasis added)], seeking to pursue claims on behalf of those women through a § 706 action. In *CRST*, the Northern District of Iowa was faced with the same situation, where that court dealt with another § 706 action brought on behalf of "Starke and a class of similarly situated female employees[.]" *CRST*, 2009 WL 2524402, *8. *CRST* commented as follows:

> The vague reference in the EEOC's Complaint to "Starke and a class of similarly situated female employees" added unnecessary confusion to this case. . . [T]he phrase "Starke and a class of similarly situated female employees" *does not comport with the language or structure of Section 706*. *See* 42 U.S.C. § 2000e-5(f)(1) (referring to "[t]he person or persons aggrieved" and "the person aggrieved"). Such phrase naturally evokes the thought of Starke as the named plaintiff in a Rule 23 class action against CRST; to the contrary, *it is settled that a Section 706 federal enforcement action bears little resemblance in practice to a Rule 23 class action*.

*Id*. (emphasis added). On substantially similar - in fact, identical - procedural facts, the *CRST* court rejected the EEOC's attempts to characterize its § 706 lawsuit - there, involving sixty-seven individually named plaintiffs seeking redress for sexual harassment allegedly suffered at the hands of their employer - as somehow class-based in nature. This Court likewise declines to lend credence to the EEOC's substantially similar argument in this litigation.

The EEOC's brief [Doc. No. 876] largely downplays the relevance of the *CRST* opinion. Indeed, the EEOC's *only* mention of *CRST* by name in its entire brief occurs in a single footnote, where the EEOC states that "*CRST* cannot be squared with *General Telephone* or Title VII, is not a case decided by the Sixth Circuit, has no precedential value, and is contrary to *Keco* and its

progeny." [EEOC's Br., p.9 n.2]. The Court disagrees - as Cintas argues in both its original [Doc. No. 836], and reply [Doc. No. 883] briefs to this motion, *CRST* is on point with the issues involved in this motion.

In *CRST*, a female employee of that company filed a charge of sexual harassment with the EEOC. *CRST*, 2009 WL 2523302, *1. A year and a half later, the EEOC issued a determination finding that reasonable cause existed to believe that CRST subjected the female employee and a "class of employees and prospective employees" to sexual harassment in violation of Title VII. *Id*. Conciliation with CRST was ultimately unsuccessful, and the EEOC filed a § 706 lawsuit alleging that CRST had failed to prevent or correct the sexual harassment that the female employee and a class of other similarly-situated women experienced in the workplace. *Id*. at *7.

At no point prior to the filing of the EEOC's § 706 lawsuit did the EEOC provide CRST with any notice as to the size of the class of employees involved. "In other words, it was unclear whether the instant Section 706 lawsuit involved two, twenty, or two thousand allegedly aggrieved persons." *Id*. at *8 (internal quotations omitted). "In the initial stages of this case, it appeared the number of allegedly aggrieved persons was relatively small," *id*. at *9, but "[a]s discovery progressed. . . it became clear that the EEOC did not know how many allegedly aggrieved persons on whose behalf it was seeking relief. Instead, the EEOC was using discovery to find them." *Id*. Faced with this situation, the *CRST* court noted that:

> There was a clear and present danger that this case would drag on for years as the EEOC conducted wide-ranging discovery and continued to identify allegedly aggrieved persons. The EEOC's litigation strategy was untenable: CRST faced a continuously moving target of allegedly aggrieved persons, the risk of never-ending discovery and indefinite continuance of trial.

*Id.*

Just prior to the deadline the court set for the EEOC to name those plaintiffs upon whose behalf the EEOC was bringing its § 706 action, "CRST accused the EEOC of adopting a policy of 'naming everyone and asking questions later.'" *Id*. at *10. Indeed, in the ten days leading up to the deadline for naming plaintiffs, the EEOC added approximately two-hundred allegedly aggrieved plaintiffs to its list - many of whom the EEOC did not have addresses for, or even knowledge of the correct spelling of their names. *Id*. at *9. That number grew to 270 individuals by the deadline, only to shrink to approximately 150 after the EEOC did not make the remainder of the women available for deposition. *Id*. at *11. The Court then dismissed the majority of those remaining on the merits of their claims, leaving a total of sixty-seven plaintiffs. *Id*. The EEOC contended that all sixty-seven of these women fell within the "class" described in the original discrimination charge - though the EEOC had not even been *aware* of the majority of the plaintiffs at that time. *Id*.

As is the case in this litigation, the *CRST* court noted as follows:

> . . . the case at bar is one of those exceptionally rare § 706 cases in which the record shows that the EEOC did not conduct *any* investigation of the specific allegations of the allegedly aggrieved persons for whom it seeks relief at trial before filing the Complaint - let alone a reasonable cause determination as to those allegations or conciliate them.

*Id*. at *16. Faced with this litigation posture - the *exact same scenario which faces this court in the instant motion* - the *CRST* court noted that:

> The EEOC cites no binding legal authority that allows it to do what it is attempting to do in this case, *i.e.*, boot-strap the investigation, determination and conciliation of the allegations of Starke and a handful of other allegedly aggrieved persons. *The mere fact that Starke and a handful of other women allege they were harassed while working for CRST provides no basis for the EEOC to litigate the allegations of 67 other women in this lawsuit*. To the contrary, when presented with analogous facts, the courts have largely resisted the EEOC's attempts to

perfect an end-run around Title VII's statutory prerequisites to suit.

*Id*. (footnoted material omitted) (emphasis added).

As such, the *CRST* court dismissed the claims of all sixty-seven remaining named plaintiffs in that action:

> To rule to the contrary would severely undermine if not completely eviscerate Title VII's "integrated, multistep enforcement procedure, *Occidental Life*, 432 U.S. at 355, expand the power of the EEOC far beyond what Congress intended and greatly increase litigation costs.

*Id*. at *17. *CRST* also noted that accepting the EEOC's arguments "might avoid administrative proceedings for the vast majority of allegedly aggrieved persons," *id*. at *18, and that such power was clearly beyond Congressional intent in granting the EEOC powers under Title VII:

> Congress surely did not intend that employers, even ones whose workplaces might be rife with sexual harassment, face the moving target of allegedly aggrieved persons that CRST faced in both the administrative and legal phases of this dispute.

*Id*. That the EEOC had placed CRST on notice of a "class" of allegedly aggrieved individuals was beside the point:

> The EEOC's insistence that the 67 allegedly aggrieved persons for whom it now seeks relief are truly part of the "class" of persons it referenced in the Letter of Determination is not well taken. This argument does nothing more than trade on the inherent ambiguity in the term "class" to the EEOC's own advantage. . . . It is, after all, *the EEOC's duty* to put Defendants on notice of the scope of the charges against them in order to give every incentive and allowance for settlement of the claims prior to filing the suit in court.

*Id*. (internal citations and quotations omitted) (emphasis in original).

Though admitting that the ultimate remedy - outright dismissal - was "severe," *CRST* nonetheless found it appropriate on the facts of the case presented to it:

> Although dozens of potentially meritorious sexual harassment claims may now

14

>never see the inside of a courtroom, to rule to the contrary would work a greater evil insofar as it would permit the EEOC to perfect an end-run around Title VII's integrated, multistep enforcement procedure. It would ratify a "sue first, ask questions later" litigation strategy on the part of the EEOC, which would be anathema to Congressional intent. The Court cannot ignore the law as it is written by Congress. . . .

*Id*. at *19 (internal citations and quotations omitted).

The facts of the instant case are exactly on point with *CRST* - and this Court adopts the well-reasoned central holding of the *CRST* court. Here, the EEOC filed a charge of discrimination in the original *Serrano* matter, on behalf of Ms. Serrano and a "class" of women. The EEOC freely admits that it pursued no individual investigation on conciliation proceedings on the thirteen individuals involved in this § 706 action before it filed suit as an intervenor.

Years after the EEOC filed its initial Complaint in this matter, Cintas still had no idea as to the identities of those allegedly aggrieved individuals upon whose behalf this § 706 action was brought. Indeed, the EEOC was using discovery in the *Serrano* and *Avalos* class-action proceedings in large part to find these individuals. It was only on March 23, 2010 - by order of the Court, no less - that the EEOC finally disclosed the identities of its named plaintiffs to Cintas. At that time, forty-six individuals were originally named by the EEOC - though, as in *CRST*, that number quickly dwindled, first to fifteen claimants, and then to the thirteen before the court in this motion. *None of these thirteen allegedly aggrieved individuals were the subject of any pre-suit investigation or conciliation procedures*.

On these facts, the Court holds that the EEOC's failure to engage in the required "integrated, multistep enforcement procedure," *Occidental Life*, 432 U.S. at 355, mandated by Title VII before filing a Section 706 action, is fatal to the EEOC's claims on their behalf in this

lawsuit. As was noted in *CRST*, dismissal, while a severe penalty, is nonetheless the appropriate remedy in this instance. As the *CRST* court noted:

> The government, like its citizens, must follow the law. The EEOC must respect Title VII's administrative scheme and follow the clearly delineated paths to justice that Congress has created. Seeking shortcuts to these paths does nothing more than undermine their valuable function and erode the meaning of the rights they are designed to protect. It is no less good morals and good law that the Government should turn square corners in dealing with the people than that the people should turn square corners in dealing with their government.

*CRST*, 2009 WL 2524402, *19 (internal quotations and citations omitted). The Court agrees, and the EEOC's arguments to the contrary are without merit.

CONCLUSION

For the reasons explained above, the Court **GRANTS** Cintas' omnibus motion for summary judgment [Doc. No. 836], and **DISMISSES WITH PREJUDICE** the EEOC's claims on behalf of Susan Barber, Gayle Bradstrom, Christine Colfer, Gina Comiska, Kari (Denby) Kremhelmer, Tracy (Gerke) Williams, Leila (Houston) Vitale, Robin Leach, Susan (Majewski) Harrington, Diana Raby, Lori Schelske, Tanya Thompson, and Patricia Washington.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 20, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 20, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager